1

HON. ROBERT S. LASNIK

2

3

4

5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
6
**TACOMA DIVISION**

7

WILL CO. LTD. a limited liability company
8    organized under the laws of Japan,
     Plaintiff,

9
vs.
10

KAM KEUNG FUNG, aka 馮錦強, aka
11   FUNG KAM KEUNG, aka FUNG
     KAMKEUNG, aka KUENG FUNG, aka
12   KEUNG KAM FUNG, aka KAM-KEUNG
     FUNG, aka KEVIN FUNG, an individual;
13   FELLOW SHINE GROUP LIMITED, a
     foreign company, and DOES 1-20, d/b/a
14   AVGLE.COM,

15

16

17

18

19

20

21

22

23

24

Case No.
**3:20-cv-05666-RSL**

**DEFENDANTS' MEMORANDUM IN**
**SUPPORT OF MOTION TO DISMISS**

**Note on Motion Calendar:**
**January 15, 2021**

**Oral Argument Requested**

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>
<u>**FOR LACK OF PERSONAL JURISDICTION**</u>

**(HEARING REQUESTED)**

1 <u>**Introduction**</u>

2    In the present case, Plaintiff, a private *Japanese* limited liability company headquartered in

3 *Tokyo* brings this action against a *Chinese*-born individual (who is a permanent resident of *Hong*

4 *Kong*) and a foreign corporation based in the *British Virgin Islands*, concerning a website that is:

5 managed out of *Taiwan;* supported by ads placed on the website by a *Canadian* ad broker (that

6 was engaged from *Hong Kong*)*;* hosted on servers located in the *Netherlands*; displaying user-

7 generated videos with *Japanese* titles that are primarily in the *Japanese* language. What is entirely

8 lacking in the present action, however, is any relevant, continuing, or substantial connection to

9 *Washington* or to the *United States* as a whole.

10    Undeterred by this complete lack of facts necessary to make jurisdiction in this Court

11 proper or even remotely plausible, Plaintiffs instead pepper their complaint with technical jargon

12 intended to obfuscate the lack of minimum contacts between the Defendants and the forum and

13 leave the Court with the vague impression that "there must be something there."  There is not.

14    Accordingly, pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Kam Keung Fung ("Mr.

15 Fung") and Fellow Shine Group Limited ("FSG") move for the dismissal of Plaintiffs' Complaint.

16 In support of their Motion, Defendants state as follows.

17 <u>**Facts**</u>

18 **A. <u>Fellow Shine Group Limited and Avgle.com</u>**

19    Fellow Shine Group Limited ("FSG") is a limited company registered in the British Virgin

20 Islands. Declaration of Ming Chung Wu on behalf of FSG ("MCW Decl."), ¶1. FSG is the owner

21 and operator of the website Avgle.com. *Id.*, ¶2. FSG operates in, and is completely based out of,

22 the Republic of China, (formally known as Taiwan) ("Taiwan"). *Id.*, ¶3.  FSG owns and operates

23 the website "Avgle.com" (the "website") wholly out Taiwan. *Id.*, ¶¶2-3.

24    Avgle.com is an adult video website that displays adult videos uploaded by users of the

1    website. *Id.*, ¶4.  As of November 30, 2020, there were a total of 460,722 videos on Avgle.com.

2    *Id.*, ¶5. Neither FSG nor Avgle.com create or upload any of the videos on Avgle.com, rather, all

3    videos on Avgle.com are uploaded by visitors to the website. *Id.*, ¶4.  Users are not paid for

4    uploading videos to Avgle.com; FSG does not have a commercial relationship with users. *Id.*, ¶9.

5           Avgle.com is free to use: no users from the United States (including Washington), or

6    anywhere else for that matter, make any payments to FSG for viewing any videos on the website.

7    *Id.*, ¶32. The vast majority of the videos on Avgle.com have titles written in the Japanese alphabet

8    and are themselves in the Japanese language. *Id.*, ¶6. Avgle.com is not targeted at the United

9    States, or any country in particular, but rather the entire world of Internet users. *Id.*, ¶¶28-29.

10          All of the work that FSG performs in operating Avgle.com is performed out of Taiwan. *Id.*,

11   ¶¶3, 12.  FSG has not engaged in any persistent course of conduct (or any conduct at all) in

12   Washington or the United States. *Id.*, ¶¶11-12, 18, 20-29, 32, 37, 42-43, 45.  FSG has never done

13   business in the United States nor in Washington. *Id.*  FSG has ho employees in the United States

14   or Washington, nor does it have employees that visit the United States or Washington for business

15   purposes. *Id.*, ¶¶20-21. FSG has never paid taxes in or to the United States. *Id.*, ¶25. FSG does not

16   have a bank account in the United States. *Id.*, ¶22.  FSG has never owned or leased real estate in

17   the United States (including Washington). *Id.*, ¶23.

18          FSG contracted with a software development company based out of Hong Kong, Awesapp

19   Ltd., to provide software development services in connection with the Avgle.com website.

20   Declaration of Kam Keung Fung ("Fung Decl.") at ¶¶6-7; *see* MCW Decl., ¶31.

21          The servers for Avgle.com (which store all the files displayed on the Avgle.com website,

22   including the files that Plaintiff alleges infringe on its copyrights) are located in the Netherlands,

23   and have been located in the Netherlands since the launch of Avgle.com. MCW Decl., ¶11. The

24   website hosing company that presently hosts Avgle.com is a company named Novogara BV,

1   which is located in Amsterdam, Netherlands. MCW Decl., ¶13. Novogara BV has hosted

2   Avgle.com since July 2018 and prior to Novogara BV, a different hosting company, also located

3   in the Netherlands, hosted Avgle.com. *Id*.  Kam Keung Fung ("Mr. Fung"), in his role with

4   Awesapp, engaged Novogara BV to provide website hosting services for Avgle.com. Fung Decl.,

5   ¶11, *see also*, MCW Decl., ¶14.  Mr. Fung engaged Novogara BV for these services from his

6   workspace in Hong Kong. Fung Decl., ¶11.

7         Avgle.com utilizes Cloudflare.com to provide domain name resolution services, content

8   delivery networks, and DDoS protection (distributed denial of services attack). MCW Decl., ¶15.

9   Mr. Fung engaged Cloudflare to provide these services for Avgle.com, using the self-service

10  options on Cloudflare's website from his workspace in Hong Kong. Fung Decl., ¶10.

11         Cloudflare does not provide an account manager for Avgle.com's account. MCW Decl.

12  ¶15. FSG uses Cloudflare's services for Avgle.com's worldwide use (the vast majority of which is

13  related to users outside of the United States). *Id.* To the extent that Cloudflare uses servers in the

14  United States in connection with Avgle.com, it is not at the direction of FSG, and rather is the

15  result of Cloudflare's own internal deliberation or processes. *Id.*

16         Avgle.com's website's layout was derived from a template and source code provided by

17  adultvideoscript.com ("AVS"). *Id.*, ¶31. AVS is based out of Romania, and AVS's services were

18  obtained by FSG's developer operating out of Hong Kong. *Id.*; Fung Decl. ¶7. This generic

19  website template from AVS contains boilerplate language and reference to "DMCA" and "2257"

20  as found on the bottom of Avgle.com's site. MCW Decl. ¶31.

21         All of Avgle.com's revenue comes from advertisements. *Id.*, ¶33. Almost all of

22  Avgle.com's advertisements have come from FSG's relationship with a single advertising broker,

23  Tiger Media, Inc. d/b/a JuicyAds, a Canadian corporation registered in Saskatchewan

24  ("JuicyAds"). *Id.*, ¶34.  Mr. Fung contracted with JuicyAds for Avgle.com from his workspace in

1    Hong Kong. *Id.*, ¶35; Fung Decl. ¶13. FSG does not sell the advertisements itself and does not

2    have any direct relationship with or interactions with the end-clients (the advertisers whose ads

3    actually appear on Avgle.com). MCW Decl. ¶34.  Instead, Avgle.com makes available to the

4    broker (JuicyAds) "space" on Avgle.com, and the broker then sells that space as it sees fit to its

5    own clients. *Id.*, ¶36. A client buys (from the broker) the right to display advertisements in the

6    space provided on Avgle.com so long as they comply with the law and the broker's own rules. *Id.*

7          FSG does not cause any specific advertisements to be directed to visitors from specific

8    locations (such as Washington or the United States). *Id.*, ¶37. To the extent that advertisements are

9    directed to specific locations at all (a process called "geolocation"), that is done at the sole

10   discretion of Juicy Ads. *Id.*, ¶¶37-42.

11         Avgle.com does have a link on its website which allows for direct advertisement inquiries.

12   *Id.*, 44.  Even so, Avgle.com has only reached direct advertising agreements with two advertisers

13   using this method, both of which were located in China. *Id*.

14         Because FSG plays no role in the selection of advertisements (with the sole two exceptions

15   of Chinese advertisers described above), FSG does not target the residents of any given location

16   through the use of advertisements, it does not direct the advertisements themselves, and certainly

17   does not itself take any steps to target the residents of either Washington or the United States. *Id.*,

18   ¶¶36-43. Moreover, to the extent that advertising links on Avgle.com redirect to companies based

19   in the United States, FSG does not have direct relationships with these companies. *See, id.*  For

20   example, FSG does not have contractual relationships with with StackPath, LLC, Multi Media

21   LLC, Abudantia LLC, Mile High Glass Pipes, or Google Display Network Ads. *Id.*, ¶45.

22         Avgle.com has visitors from over 200 distinct countries around the world. *Id.*, ¶46.

23   From April 1, 2020 through June 30, 2020, (the "Time Period"), approximately 6.00% of

24   Avgle.com's traffic came from the United States, and only 0.11% of its traffic came from

1   Washington state. *Id.*, ¶47. The vast majority of users of Avgle.com come from countries outside

2   of the United States.  On average, during the Time Period, Japan (49.79%), Taiwan (13.75%), and

3   Hong Kong (8.75%) generated significantly more traffic to Avgle.com than the United States. *Id.*,

4   ¶48. Indeed, approximately 94% of Avgle.com users came from outside the United States during

5   the Time Period. *Id.*, ¶49. Users of Avgle.com do not need to create an account, register, or sign in

6   to view videos on Avgle.com. *Id.*, ¶51.

7         FSG operates entirely out of Taiwan and it would be extremely burdensome and costly for

8   representatives of FSG to travel to Washington for proceedings in this case. *Id.*, ¶¶3, 54.

9   **B.  <u>Kam Keung Fung</u>**

10        Mr. Fung was born in in Mainland China. Fung Decl., ¶2. Mr. Fung currently lives in

11   Hong Kong, where he been a permanent resident for over thirty years. *Id.* Mr. Fung does not work

12   for FSG, nor, nor has he held any sort of officer position in FSG. *Id.*, ¶3. Mr. Fung has no

13   ownership interest in FSG or the Avgle.com website. *Id.*, ¶¶3-4. Mr. Fung is not the operator of

14   Avgle.com. *Id.*, ¶4.  Mr. Fung is the Director of a Hong Kong firm, Awesapp Ltd. *Id.*, ¶6.

15        Awesapp was hired by FSG to provide website development services for Avgle.com,

16   including adapting source code from AVS to develop the layout of Avgle.com. *Id.*, ¶7.  Mr. Fung

17   (in his role with Awesapp) was also involved in deploying and launching the Avgle.com website,

18   including procuring content delivery networks, web hosting, advertising networks, analytics, and

19   domain name registration, among other things. *Id.*  All expenses that Mr. Fung and Awesapp

20   incurred on behalf of FSG and Avgle.com were reimbursed by FSG. *Id.*, ¶16.  Mr. Fung and

21   Awesapp performed all work for FSG and Avgle.com from Hong Kong. *Id.*, ¶15, 20.  For

22   instance, he engaged with Cloudflare, Inc. from Hong Kong; arranged for Avgle.com to be set up

23   with the advertising broker, JuicyAds, from Hong Kong; engaged with histats.com to obtain

24   website visitor analytics for Avgle.com by using histats.com's self-service option without

1   contacting anyone from histats.com, and engaged with Novogara BV to provide website hosting

2   services for Avgle.com – all from Hong Kong. *Id.*, ¶¶10-13.  Mr. Fung has no commercial

3   relationships with users of Avgle.com, nor entities whose ads appear on Avgle.com. *Id.*, ¶19.

4          Mr. Fung has not engaged in any persistent course of conduct (or any conduct at all) in

5   Washington or the United States. *Id.*, ¶¶21-27.  Indeed, Mr. Fung has only traveled to the United

6   States on one occasion in 1998, when he was a child. *Id.*, ¶21.  Mr. Fung does not have any

7   business dealings in the United States, does not have employees who live in or regularly visit the

8   United States, does not have a bank account in the United States, and does not have a United

9   States telephone number. *Id.*, ¶¶21-27. Mr. Fung has never paid taxes in the United States, nor

10  owned or leased real property in the United States. *Id.*, ¶¶25, 27.  Mr. Fung does not have a visa to

11  visit the United States, and it would be extremely burdensome and costly for him to travel to

12  Washington or the United States for trial or other proceedings in this case. *Id.*, ¶¶28-29.

13                                          **Argument**

14  **I.      Legal Standard Under Rule 12(b)(2)**

15         "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

16  plaintiff bears the burden of demonstrating that jurisdiction is appropriate. …A plaintiff cannot

17  simply rest on the bare allegations of his Complaint, but rather is obligated to come forward with

18  facts, by affidavit or otherwise, supporting personal jurisdiction." *Microsoft Corp. v. Gulfcoast*

19  *Software Sols., LLC*, 2016 U.S. Dist. LEXIS 121794, at *5 (W.D. Wash. Jan. 4, 2016)(citations

20  omitted). In making its determination, the Court must analyze whether personal jurisdiction exists

21  over each defendant separately. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d

22  1122, 1130 (9th Cir. 2003).

23         Additionally, this Court must take extra care before exercising jurisdiction over foreign

24  defendants. As the Supreme Court and the Ninth Circuit have cautioned, "Great care and reserve

1   should be exercised when extending our notions of personal jurisdiction into the international

2   field." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987). *See also*

3   *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir. 1988) ("The Supreme Court, though,

4   has cautioned against extending state long arm statutes in an international context.... This circuit

5   has also stated that litigation against an alien defendant creates a higher jurisdictional barrier than

6   litigation against a citizen from a sister state because important sovereignty concerns exist.");

7   *Daimler AG v. Bauman*, 571 U.S. 117, 141-42 (2014)("Other nations do not share the uninhibited

8   approach to personal jurisdiction advanced by the Court of Appeals in this case.... The Solicitor

9   General informs us, in this regard, that 'foreign governments' objections to some domestic courts'

10   expansive views of general jurisdiction have in the past impeded negotiations of international

11   agreements on the reciprocal recognition and enforcement of judgments.'")

12        Although the "uncontroverted allegations in the complaint must be taken as true and

13   '[c]onflicts between parties over statements contained in affidavits must be resolved in [Plaintiff's]

14   favor,' …disputed allegations in the complaint that are not supported with evidence or affidavits

15   cannot establish jurisdiction…" *AMA Multimedia, Ltd. Liab. Co. v. Wanat,* 970 F.3d 1201, 1207

16   (9th Cir. 2020). *See also Nextune, Inc. v. McKinney*, 2013 U.S. Dist. LEXIS 75478, at *7 (W.D.

17   Wash. May 29, 2013)("only the 'well pled facts of plaintiff's complaint, as distinguished from

18   mere conclusory allegations, must be accepted as true.'")

19   **II.    The Court Lacks Personal Jurisdiction Over Either Fung, a Hong Kong Permanent
          Resident or FSG, a British Virgin Islands Company.**

20        Although a determination of personal jurisdiction under a state's long-arm statute is often a

21   two-step process – consideration of whether the state statute authorizes an exercise of jurisdiction,

22   followed by a constitutional due process analysis – where, as here, the state's long-arm statute

23   extends to the limits of the United States Constitution's Due Process Clause, the two inquiries

24

1    merge into one. *Easter v. Am. W. Fin*., 381 F.3d 948, 960 (9th Cir. 2004). "The due process

2    analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one

3    significant difference: rather than considering contacts between the [defendants] and the forum

4    state, we consider contacts with the nation as a whole." *Holland Am. Line, supra* at 462.

5          "Thus, the only question remaining for a Washington district court is whether the Court's

6    exercise of jurisdiction comports with the limitations imposed by due process. …A court may not

7    exercise jurisdiction over a defendant if that exercise of jurisdiction 'offend[s] traditional notions

8    of fair play and substantial justice.'  Fair play and substantial justice mandate that a defendant has

9    minimum contacts with the forum state before it may be hailed into a court in that forum. …The

10   extent of those contacts can result in either general or specific jurisdiction." *Estate of Kekona*,

11   *supra* at *2-3 (citations omitted).  A similar analysis occurs with respect to federal long arm

12   jurisdiction under Fed. R. Civ. P. 4(k)(2). Under Rule 4(k)(2), "a court may exercise jurisdiction

13   when three requirements are met. First, the claim against the defendant must arise under federal

14   law.... Second, the defendant must not be subject to the personal jurisdiction of any state court of

15   general jurisdiction.... Third, the federal court's exercise of personal jurisdiction must comport

16   with due process." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir.

17   2007).  In the present case, WillCo has failed to allege facts sufficient to subject either of the

18   defendants to general or specific jurisdiction in either Washington or the United States as a whole.

19         **A.    <u>General Jurisdiction</u>**

20         The question of general jurisdiction need not detain the court for long as the Complaint is

21   devoid entirely of a single allegation that could result in an exercise of general jurisdiction over

22   either defendant. "To establish general personal jurisdiction, the plaintiff must demonstrate the

23   defendant has sufficient contacts to 'constitute the kind of continuous and systematic general

24   business contacts that 'approximate physical presence.'" *Glencore Grain Rotterdam B.V. v.*

1   *Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002); *Microsoft Corp. v. Gulfcoast*

2   *Software Sols., LLC*, 2016 U.S. Dist. LEXIS 121794, at *7 (W.D. Wash. Jan. 4, 2016)("[g]eneral

3   jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum

4   state 'are so constant and pervasive as to render it essentially at home' in the state."). "[A]

5   defendant whose contacts are substantial, continuous, and systematic is subject to a court's general

6   jurisdiction even if the suit concerns matters not arising out of his contacts with the forum."

7   *Glencore Grain*, 284 F.3d at 1123 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

8   U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L. Ed. 2d 404).

9        In the present case, Mr. Fung has no connections whatsoever with either Washington or the

10   United States. Born in mainland China, Mr. Fung has been a permanent resident of Hong Kong for

11   the last thirty (30) years. Fung Decl., ¶2.  Other than a single visit as a young boy 22 years ago,

12   Mr. Fung has not visited the United States. *Id*., ¶21. He owns no real estate in the United States;

13   has no bank account in the United States; does not have a U.S. telephone number; does not pay

14   taxes in the United States; and performs no services within the United States.   Fung Decl., ¶¶22-

15   27. Similarly, FSG lacks any connection to Washington or the United States. It has no offices in

16   the United States; no employees in the United States; no real estate in the United States; and pays

17   no taxes in the United States. MCW Decl., ¶¶3, 21, 23, 25.

18        Far from the Defendants having "substantial, continuous, and systematic" contacts with

19   Washington or the United States, the Defendants lack *any* such contacts and, as such, the Court

20   cannot exercise general jurisdiction over either defendant.

21        **B.**      **Specific Jurisdiction**

22        To establish specific jurisdiction consistent with the limitations of the Due Process Clause

23   of the United States Constitution, the plaintiff must show that: (1) defendant purposefully directed

24   its activities at the forum; (2) plaintiff's claims arise out of defendant's forum-related activities;

1    and (3) the exercise of jurisdiction would be reasonable." *Microsoft Corp. v. Gulfcoast Software*

2    *Sols., LLC,* 2016 U.S. Dist. LEXIS 121794, at *7 (W.D. Wash. Jan. 4, 2016).

3           The Supreme Court has reaffirmed that this due process inquiry must focus "'on the

4    relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, 571 U.S. 277,

5    283 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). As the *Walden*

6    court explained:

7           For a State to exercise jurisdiction consistent with due process, the defendant's suit-
            related conduct must create a substantial connection with the forum State. Two
8           related aspects of this necessary relationship are relevant in this case.

9           First, the relationship must arise out of contacts that the 'defendant *himself*' creates
            with the forum State.... We have consistently rejected attempts to satisfy the
10          defendant-focused 'minimum contacts' inquiry by demonstrating contacts between
            the plaintiff (or third parties) and the forum State....

11
            Second, our 'minimum contacts' analysis looks to the defendant's contacts with the
12          forum State itself, not the defendant's contacts with persons who reside there.

13   *Id.* at 284-85.

14          Additionally, in conducting its analysis, the Court is not concerned with a defendant's non-

15   suit contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781

16   (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an

17   affiliation between the forum and the underlying controversy, principally, [an] activity or an

18   occurrence that takes place in the forum State. ... When there is no such connection, specific

19   jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the

20   State.")(citations and internal quotation marks omitted)).

21          As the Court will see, Plaintiff's allegations fail to satisfy *any* of the required three prongs,

22   much less *all* three as is required for an exercise of jurisdiction to be proper.

23          **1.     Purposeful Direction**

24          Where, as here, Plaintiff's claims sound in copyright, a tort, the Court applies a purposeful

1   direction analysis and asks whether Defendants have purposefully directed their activities at the

2   forum (here, either Washington or the United States). *See*, *e.g.*, *AMA Multimedia, Ltd. Liab. Co. v.*

3   *Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). "Where allegedly tortious conduct takes place

4   outside the forum and has effects inside the forum, our circuit has examined purposeful direction

5   using an 'effects test' based on *Calder v. Jones*…. Under this test, 'the defendant allegedly must

6   have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

7   the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1208-09. If Plaintiff cannot

8   prove each prong, jurisdiction is lacking and the complaint must be dismissed.

9           A.     Intentional Acts

10          Although the Ninth Circuit has found that owning and operating a website is an

11  "intentional act," which would be sufficient to meet the first prong of the purposeful direction test

12  (*AMA Multimedia, Ltd. Liab. Co.* at 1209) with respect to FSG, in the present case, there are no

13  similar facts with respect to Defendant Fung that could qualify as an "intentional act" for

14  jurisdictional purposes. Indeed, to the extent that Mr. Fung took *any* actions whatsoever, he did so

15  as the sole proprietor of Awesapp, Ltd. ("Awesapp"), the company hired by FSG to assist with

16  certain aspects of building its website. *See generally,* Fung Decl. Mr. Fung neither owns nor

17  operates AVGLE.com and, as such, he has taken no intentional act that would support an exercise

18  of personal jurisdiction. *See*, *id.* ¶3-5.

19          B.     Expressly Aimed at the Forum

20          Plaintiffs' Complaint alleges three broad categories of actions which it suggests constitute

21  express aiming at Washington or the United States: (1) the operation of a popular website that

22  receives between six and seven percent of its traffic from the United States; (2) the use of ad

23  brokers to place "geolocated" advertisements on the website, and (3) a vast hodgepodge of

24  irrelevancies mashed together in an attempt to persuade the Court that significant connections to

1   the United States exist when they do not.

2       With respect to the first two categories, the Ninth Circuit has recently decided a case

3   directly on point with near-identical facts, *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d

4   1201 (9th Cir. 2020). Indeed, as the Court will see, to the extent the facts between the two cases

5   differ at all, they are only in ways that would have made an exercise of personal jurisdiction *more*

6   compelling in the *AMA Multimedia* case and yet the Ninth Circuit there nonetheless affirmed the

7   District Court's dismissal of the action for a want of personal jurisdiction. The present case

8   presents a markedly weaker argument for personal jurisdiction and, as such, Plaintiff's case must

9   be dismissed.

10              1.       The Operation of a Universally Accessed Website.

11      Plaintiff makes much of the fact that between 6 and 7 percent of the website's visitors

12   come from the United States, arguing that the raw number of visitors to the website from the

13   United States supports an exercise of jurisdiction over the owners and operators of the website.

14      Preliminarily, as a factual matter, it should be noted that – although Plaintiff makes a close

15   estimate as to the number of visitors to the website come from the United States (Plaintiff alleges

16   7.32% while the actual number is 6.00%), this means that a full 93% of the website's visitors

17   come from someplace other than the United States.  Specifically, 49.79% of the website's visitors

18   come from Japan, 13.75% come from Taiwan, and another 8.75% come from Hong Kong. MCW

19   Decl. ¶¶47-48. In any event, though, focusing on the raw number of visitors to the website – as

20   opposed to the number of visitors to the website who allegedly viewed or downloaded Plaintiff's

21   content (50 videos out of more than 460,700 hosted on the AVGLE website) – improperly focuses

22   on contacts that are wholly unrelated to Plaintiff's claims.

23      On this point, the Supreme Court's recent decision in *Bristol-Myers Squibb* is particularly

24   instructive. In that case there were "more than 600 plaintiffs, most of whom are not California

1    residents," who "filed [a] civil action in a California state court against Bristol-Myers Squibb

2    Company (BMS), asserting a variety of state-law claims based on injuries allegedly caused by a

3    BMS drug called Plavix."  137 S.Ct. at 1777. The Supreme Court noted that "BMS does sell

4    Plavix in California. Between 2006 and 2012, it sold almost 187 million Plavix pills in the State

5    and took in more than $900 million from those sales."  *Id.* Nevertheless, the Supreme Court

6    rejected the argument that Defendants' substantial contacts with California should be considered

7    for specific jurisdiction purposes because those contacts did not relate directly to the claims

8    actually brought by the non-resident plaintiffs:

9           Our settled principles regarding specific jurisdiction control this case. In order for a
            court to exercise specific jurisdiction over a claim, there must be an "affiliation
10          between the forum and the underlying controversy, principally, [an] activity or an
            occurrence that takes place in the forum State." ...When there is no such
11          connection, specific jurisdiction is lacking regardless of the extent of a defendant's
            unconnected activities in the State....

12   *Id.* at 1781 (internal citations omitted).

13          In other words, considering a defendants' non-suit contacts with a forum (such as the

14   number of visitors to the website who did *not* allegedly access Plaintiff's copyrighted materials)

15   would be improper. Indeed, the Ninth Circuit recently considered – and flatly rejected – Plaintiff's

16   position in *AMA Multimedia.* There, the Court was similarly faced with foreign defendants who

17   operated a popular adult entertainment website that had allegedly infringed on Plaintiff's

18   copyrighted videos. There, as here, the defendants operated "an internationally available website

19   which hosts adult videos and allows users to search for, select, and watch them."  *Id.* at 1204.

20   Unlike the present case, in *AMA Multimedia,* the videos at issue were American-produced, in

21   English, and accounted for 19.21% of the defendant website's overall traffic, making the United

22   States its largest market."  *AMA Multimedia,* 970 F.3d at 1204-05.

23          Nevertheless, the Ninth Circuit found personal jurisdiction to be lacking:

24

1    although, according to AMA, ePorner "features a significant portion of U.S.-based content
     from producers like AMA and U.S.-based models," this does not mean ePorner's subject
2    matter is aimed at the U.S. market… ePorner's content is primarily uploaded by its users,
     and the popularity or volume of U.S.-generated adult content does not show that Wanat
3    expressly aimed the site at the U.S. market. …Although Wanat may have foreseen that
     ePorner would attract a substantial number of viewers in the United States, this alone does
4    not support a finding of express aiming.

5    …Here, nearly 20% of ePorner's traffic comes from U.S. users. But this does not establish
     that Wanat expressly aimed at the U.S. market…

6
     … ePorner's forum-based traffic, absent other indicia of Wanat's personal direction, does
7    not establish that Wanat tailored the website to attract U.S. traffic.

8    *Id.* at 1210-11.

9          Here, even if the sheer number of visitors to the website were an appropriate factor for

10   consideration, the number of visitors to the AVGLE website is even less persuasive than those

11   presented to the Ninth Circuit in *AMA Multimedia.* Unlike the facts in *AMA Multimedia*, the

12   United States is *not* AVGLE's biggest source of visitors, but rather represents only 6 or 7%

13   percent of AVGLE's overall traffic, with Washington State accounting for only 0.11% percent of

14   AVGLE's overall traffic.  *See* MCW Decl. ¶47-48. Instead, AVGLE's largest source of traffic is

15   Japan with 49.79% percent of overall traffic, something that is not surprising given that AVGLE's

16   videos are overwhelmingly in Japanese.  *See, id.* ¶¶6, 48.

17        Ultimately, the sheer number of visitors to the website from Washington and the United

18   States fails to demonstrate that the website is expressly aimed at the United States or Washington.

19            2.    <u>Geolocation of Ads By Third-Party Advertising Broker</u>

20        Plaintiff also contends that jurisdiction over the defendants is appropriate in this case

21   because the website presents visitors with geolocated ads. This argument, too, was specifically

22   rejected by the Ninth Circuit under identical circumstances:

23   ePorner does not charge visitors; instead it generates revenue solely through advertising.
     ePorner contracts with a third-party advertising company that chooses the advertisements.
24   The advertiser then "geolocates" the advertisements, meaning visitors to ePorner.com see

1   advertisements based on their perceived location. For example, visitors thought to be in the
    United States see selected advertisements in English, while visitors thought to be in France
2   see selected advertisements in French.

3   970 F.3d at 1204-05.

4       Nevertheless, the Ninth Circuit found personal jurisdiction lacking:

5       AMA alleges, and Wanat's expert agreed, that ePorner uses geo-located advertisements,
        which tailor advertisements based on the perceived location of the viewer. This tailoring
6       does not establish that Wanat *expressly aimed* ePorner at the United States. ePorner's geo-
        located advertisements, provided by a third-party advertising company ... are always
7       directed at the forum: a viewer in the United States will see advertisements tailored to the
        United States while a viewer in Germany will see advertisements tailored to Germany....
8       If such geo-located advertisements constituted express aiming, ePorner could be said to
        expressly aim at *any* forum in which a user views the website... As a feature of the geo-
9       located advertisements on ePorner's website, all users in every forum received
        advertisements directed at them. To find specific jurisdiction based on this would run afoul
10      of the Supreme Court's directive in *Walden* and "impermissibly allow[] a plaintiff's
        contacts with the defendant and forum to drive the jurisdictional analysis."
11
    *Id.* at 1211.
12
13      Under similar facts, the D.C. Circuit Court also rejected personal jurisdiction based on the

14  placement of geotargeted ads by a third-party ad broker, finding that such ads did not constitute

15  purposeful availment:

16      Triple Up argues that Youku purposefully availed itself of the United States forum
        by passively permitting the videos to be streamed in the United States along with
17      "geographically targeted" advertisements. Youku indisputably derives revenue
        from advertisements that accompany its videos, but Triple Up has not shown that
18      Youku was in control of the advertisements' placement with particular films or
        "purposefully directed" them toward United States viewers.... Advertisers purchase
19      Youku's online advertising services through third-party agencies. So while Youku
        "act[s] to maximize usage of [its] websites," ... Triple Up has not alleged facts
20      plausibly showing that Youku played a material role in pairing advertisements with
        specific videos based on viewership....

21  *Triple Up, Ltd. v. Youku Tudou, Inc.,* 2018 U.S.App.LEXIS 19699 (D.C. Cir. July 17, 2018) at *7-

22  8. *See, also, Mireskandari v. Daily Mail & Gen. Trust PLC,* 2020 Va.Cir.LEXIS 104 (Fairfax Cir.

23  Ct. July 27, 2020) (rejecting geotargeted ads as a basis for personal jurisdiction, particularly where

24  such ads did not form the basis of plaintiffs' complaint).

1    The same result should obtain here: ads are placed on the AVGLE website by a third-party

2  advertising broker located in Canada. MCW Decl. ¶34. Neither defendant has any say in what ads

3  are displayed to a visitor, nor do they target ads towards visitors from any specific location. *Id.*,

4  ¶¶34-42. To the extent that geolocation takes place, it takes place because the advertising broker

5  chooses to display its customers' ads to specific visitors. *Id.*, ¶¶36-41. And, to the extent that ads

6  are geolocated, they are geolocated across the globe – just as they were in the *AMA Multimedia*

7  case – evidencing no attempts to target the United States or Washington.

8         3.    Utter Piffle.

9    Finally, Plaintiff tosses around internet jargon and acronyms with the apparent intent that

10  the Court be fooled into affording relevance to the absolutely irrelevant. Lest the Court be tempted

11  to follow Plaintiff through this looking-glass, Defendants will attempt to briefly untangle that

12  which Plaintiffs seek to tangle.

13         a.    Cloudflare – CDN and DNS

14    Plaintiff points to the website's use of Cloudflare to provide Content Delivery Network

15  ("CDN") and Domain Name System ("DNS") as if it had any relevance with respect to an intent to

16  target the United States. It does not. In the simplest terms, Cloudflare provides services (such as

17  CDN and DNS) that make websites respond more quickly by shuttling information through

18  servers located closer to the user. This is true no matter where in the world the user may be

19  located.  Indeed, according to Cloudflare's website, the company provides such services to more

20  than "25 million internet properties" and it "serve[s] data from 200 cities in over 100 countries

21  around the world."  *See* Declaration of Frank Scardino ("Scardino Decl."), ¶2. According to

22  Cloudflare's website, it has dozens of servers located throughout cities in Asia, including Tokyo,

23  Hong Kong, Osaka, Taipei, Shanghai, and Guangzhou.  *Id.*, ¶3.

24    Mr. Fung signed AVGLE.com up for Cloudflare's services from Hong Kong and his only

1   connection to Cloudflare was through the automated processes on their website. Neither of the

2   defendants have anything to do with how Cloudflare allocates website traffic to optimize speed,

3   but rather that is a function of Cloudflare's operations. MCW Decl. ¶¶15-16; Fung Decl. ¶10.

4         The Ninth Circuit addressed an identical argument in *AMA Multimedia* and found that a

5   website's utilization of a company that provided local servers to speed traffic did not demonstrate

6   an intent to target the United States. *AMA Multimedia, Ltd. Liab. Co*., 970 F.3d at 1212 ("the use

7   of Tiggee to register certain domain names related to the website does not show targeting of the

8   U.S. market. AMA contends that the use of Tiggee, which advertises itself as one of the fastest

9   DNS providers in the United States, evidences targeting of the United States because of the speed

10   such companies provide to U.S. website visitors. Use of a company that offers fast speeds in the

11   United States could be consistent with the desire to appeal to the U.S. market. But AMA has not

12   provided evidence to suggest that Wanat chose this vendor or was motivated by a desire to appeal

13   to the U.S. market or generate more U.S. users, as opposed to more users globally.")

14         So too here. FSG utilizes Cloudflare's services (as do 25 million others worldwide) to

15   enhance the AVGLE's website's performance no matter where a user (including the 93% of users

16   located outside the United States) may be located. This is the polar opposite of expressly aiming

17   activities at the United States.

18        b.    <u>Histats</u>

19         Few of Plaintiff's allegations are designed to mislead quite as much as its suggestion that

20   there is jurisdictional relevance to FSG's use of histats.com to track the traffic to the AVGLE

21   website. First Amended Complaint, ¶15. Plaintiff alleges that the highstat.com website is hosted in

22   the United States. *Id.* Preliminarily, histats.com allows any website to automatically track (for

23   free) the number of visitors to the site. *See* Scardino Decl., ¶4. Here, too, Mr. Fung signed up for

24   the service for the AVGLE website from his offices in Hong Kong. Fung Decl., ¶12. And, other

1   than accessing the histats.com website, he has had no contact with anyone at histats. *Id.* Moreover,

2   while defendants neither know (nor care) if the histats.com website is actually hosted in the United

3   States, a review of the histats.com website shows that it is not even an American company, but

4   rather is owned by Wisecode SRL, an Italian company. Scardino Decl., ¶5. The use of an

5   automated counter to track the number and location of users worldwide does not demonstrate any

6   intent to target a US audience.

7          c.      <u>Social Media Traffic</u>

8          As if trying to prove that no matter how silly an argument Plaintiff has made, it can always

9   make a sillier one, Plaintiff cites a number of social media sites from which the AVGLE.com

10  website receives traffic, noting that some of the referring sites are U.S.-based, such as Twitter and

11  Youtube. First Amended Complaint, ¶14. In other words, Plaintiff claims that it is somehow

12  jurisdictionally relevant that an individual who was looking at a tweet on U.S.-based Twitter

13  clicked a link that then brought that person to the AVGLE website. This is a lot like suggesting

14  that it would be relevant that a *Japanese* visitor to the AVGLE website was using Google's

15  chrome browser to surf the web when he visited the AVGLE website since Google is

16  headquartered in California.

17         And, although it should not need to be said, the location of the owner of the website that a

18  person was browsing **before** coming to the AVGLE website is not only irrelevant, but is precisely

19  the type of "fortuitous" and "unilateral activity of a third part" that cannot form the basis of

20  personal jurisdiction. *See, e.g., N. Coast Indus. v. K-Mart Corp*., 1990 U.S. App. LEXIS 21074, at

21  *3 (9th Cir. Dec. 4, 1990)("This 'purposeful availment' requirement ensures that a defendant will

22  not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts

23  or of the 'unilateral activity of another party or a third person.'")(quoting *Burger King Corp. v.*

24  *Rudzewicz*, 471 U.S. 462, 475 (1985)); *Kosta Int'l v. Brice Mfg. Co.,* 2014 U.S. Dist. LEXIS

1    107837, at *11 (W.D. Wash. Aug. 5, 2014).

2          d.      Terms of Service in English

3          Plaintiff also contends that because the AVGLE website's Terms of Service are in

4    English," the website is aimed at the United States. Presumably, England and the entirety of the

5    United Kingdom would be surprised to learn that this is so, as would: Canada, Australia, New

6    Zealand, Ireland, Jamaica, Trinidad and Tobago, Guyana, The Bahamas, Belize, Grenada,

7    Barbados, the United States Virgin Islands, the Channel Islands, Antigua and Barbuda, Dominica,

8    Bermuda, Saint Vincent and the Grenadines, the Isle of Man, the Turks and Caicos Islands, Saint

9    Kitts and Nevis, the Cayman Islands, Guam, Gibraltar, the British Virgin Islands, Anguilla, the

10   Falkland Islands, Montserrat, Saint Helena, Ascension and Tristan da Cunha, the British Indian

11   Ocean Territory, the Pitcairn Islands, and South Georgia and the South Sandwich Islands, all of

12   which have English as their primary spoken language.  *See* Scardino Decl., ¶6.

13         e.      Passing References on the Website to U.S. Statutes

14         Finally, Plaintiff contends that passing reference to 18 U.S.C. §2257 (prohibiting underage

15   models) demonstrates express aiming. It does not. Preliminarily, the reference exists because the

16   AVGLE website was built using a template and source code provided by adultvideoscript.com

17   ("AVS") that contained such language. AVS is based out of Romania, and AVS's services were

18   obtained by FSG's developer operating out of Hong Kong. Fung Decl. ¶7; MCW Decl. ¶31.

19   Moreover, Plaintiff's claims do not arise out of the §2257 reference (or any passing reference to

20   U.S. laws that might appear on the website) and, as such, those references are irrelevant to the

21   jurisdictional analysis.

22         C.      Harm in the Jurisdiction

23         The final prong necessary for the Court to find that Defendants purposefully directed their

24   conduct at the jurisdiction is proof that Defendants caused jurisdictionally significant harm, which

1   was felt within the United States and which the Defendants knew would be felt within the United

2   States. *See, e.g., Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1486 (9th Cir. 1993);

3   *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000); *Panavision*

4   *Int'l, Ltd. P'ship v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998). *See also Calder v. Jones,* 465 U.S.

5   783, 789-90 (1984).

6         To appreciate just how completely Plaintiff misses the mark here, these factors need to be

7   broken down. As the Court will see, Plaintiffs have failed to show: (1) that they suffered *any* harm

8   related to Defendants' alleged actions; (2) that they suffered "jurisdictionally significant" harm in

9   the United States; or (3) that defendants *knew* that the brunt of such harm would be felt within the

10  United States.

11        Preliminarily, it should be noted that the Complaint does not actually allege *any* actual

12  injury, as opposed to hypothetical injury. The Complaint alleges that certain of Plaintiffs' videos

13  appeared on the AVGLE website without permission. The Complaint also alleges that the website

14  itself is popular and visited by many people worldwide. The Complaint does not, however, even

15  allege that *any* visitors to the AVGLE website from the United States actually viewed or

16  downloaded any of the 50 videos that Plaintiff alleges were uploaded to the AVGLE website, a

17  website that contains more than 460,700 different videos. Nor does the Complaint allege that some

18  individual downloaded or accessed Plaintiff's content from the United States who would

19  otherwise have purchased the content from Plaintiff.

20        Indeed, according to Plaintiffs' Complaint, Plaintiff does not even distribute its own videos

21  within the United States, but rather it has an "exclusive digital licensing with Digital Commerce

22  Inc. (Fanza)" and that it receives a revenue share from Fanza under that agreement. First Amended

23  Complaint, ¶37. According to Digital Commerce Inc.'s website, that company, too, is

24  headquartered in Tokyo, Japan. *See* http://digitalcommerce.co.jp/en/, last accessed Dec. 19, 2020.

1    Nevertheless, even if the Court could assume that Plaintiff suffered *some* measure of

2  damage in the United States, it would be impossible for the Court to find that Plaintiffs had

3  suffered *jurisdictionally significant* harm within the United States.

4    The Ninth Circuit and this Court have held that a corporation can suffer jurisdictionally

5  significant harm both where the corporation has its principal place of business and where the

6  alleged bad acts occurred. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002)("in

7  appropriate circumstances a corporation can suffer economic harm both where the bad acts

8  occurred and where the corporation has its principal place of business"); *Stewart v. Kroeker*, 2005

9  U.S. Dist. LEXIS 56194, at *12 (W.D. Wash. Feb. 3, 2005)("The Ninth Circuit has recognized

10  that the question of where a corporation suffers economic harm is 'somewhat metaphysical,' but

11  recognized that 'a corporation can suffer economic harm both where the bad acts occurred and

12  where the corporation has its principal place of business'"); *Fortress Secure Sols., Ltd. Liab. Co.*

13  *v. Alarmsim, Ltd. Liab. Co.,* 2017 U.S. Dist. LEXIS 227298, at *15 (E.D. Wash. Nov. 29, 2017).

14    In the present case, Plaintiff readily acknowledges that its principal place of business is in

15  Tokyo. *See* First Amended Complaint, ¶31. And, although Defendants deny that there were any

16  "bad acts," any acts that Defendants took were indisputably taken in Hong Kong or Taiwan. *See*

17  MCW Decl. ¶¶3, 12; Fung Decl. ¶15.

18    Finally, it would be absurd to think that Defendants (or anyone for that matter) could have

19  *known* that a Japanese-headquartered company that (apparently) distributes its Japanese-language

20  films through another Japanese company would have necessarily suffered harm within the United

21  States as a result of unknown visitors posting videos to a universally-accessible predominantly

22  Japanese-language website run out of Hong Kong and Taiwan, hosted on servers in the

23  Netherlands. Given that it is legally insufficient for a Plaintiff to simply allege that a Defendants'

24  actions had foreseeable consequences in a forum, an allegation of *unforeseeable* consequences

1   surely fails the required legal test. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064,

2   1070 (9th Cir. 2017)("The foreseeability of injury in a forum 'is not a 'sufficient benchmark' for

3   exercising personal jurisdiction'");  *Nextune, Inc. v. McKinney,* 2013 U.S. Dist. LEXIS 75478, at

4   *16-18 (W.D. Wash. May 29, 2013) ("Committing a 'foreign act with foreseeable effects in the

5   forum state' is insufficient to support personal jurisdiction in the Ninth Circuit"); *Haugaard v.*

6   *Fiskars Brands, Inc.,* 2014 U.S. Dist. LEXIS 65252, at *13 (W.D. Wash. May 12, 2014)(rejecting

7   personal jurisdiction where "All of the evidence before the court points to one conclusion: that Mr.

8   Orzeck did not know who Mr. Haugaard was or where he lived… and that he therefore did not aim

9   any wrongful conduct at Washington"); *Port Graham Packing Co. v. Port Graham Corp.,* 2006

10  U.S. Dist. LEXIS 14322, at *6 (W.D. Wash. Mar. 14, 2006)(" any impact defendant's conduct

11  may have had on plaintiff's Washington office was indirect. Neither common sense nor the facts of

12  this case suggest that defendant expressly aimed its acts at Washington.")

13       Because the facts *disprove*, rather than *support* a finding that Plaintiff suffered

14  jurisdictionally significant harm in the US, which Defendants knew would be felt within the US,

15  Plaintiff's complaint must be dismissed for a lack of personal jurisdiction.

16            **2.      Forum Related Activities**

17       Even if Plaintiff had been able to prove that Defendants' activities were aimed at the

18  forum, it would next have to show that Defendants' forum-related activities caused them harm,

19  which it cannot do. This is so for two basic reasons: as is discussed in detail above, (1) Plaintiff

20  has failed to allege any forum-related activities and (2) Plaintiff has failed to allege any harm

21  arising out of those non-existent activities.

22            **3.      An Exercise of Personal Jurisdiction Would Be Unreasonable**

23        "For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.'

24  …In addressing the question of reasonableness, we consider seven factors: (1) the extent of a

1    defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3)

2    the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

3    adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

4    importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

5    existence of an alternative forum."  *Panavision Int'l, Ltd. P'ship v. Toeppen*, 141 F.3d 1316, 1322

6    (9th Cir. 1998).  Plaintiff fails each of the seven factors:

7              (1)    As is discussed in greater detail above, Defendants have done nothing in

8    this case to interject themselves into the United States. The operation of a universally-accessible

9    website from Taiwan and Hong Kong, utilizing ad brokers in Canada and servers in the

10   Netherlands demonstrates no "interjection" at all.

11             (2)    The burden on the Defendants to defend an action in Washington or the

12   United States would be great: Mr. Fung, who lives in Hong Kong does not even have a visa that

13   would allow him to travel to the United States and FSG, which operates entirely out of Taiwan,

14   does not have any employees in Washington or the United States. *See* Fung Decl., ¶¶2, 28-29;

15   MCW Decl., ¶3, 20-21.

16             (3)    Exercising jurisdiction over the defendants would seriously impinge the

17   sovereignty of China, Hong Kong, and Taiwan. As the district court in *AMA* held (and the Ninth

18   Circuit affirmed): "subjecting Wanat to suit anywhere in the United States would constitute a

19   substantial intrusion on Poland's sovereignty. Wanat has no meaningful relationships with

20   individuals or entities in the United States. Based on that, sovereignty concerns are particularly

21   weighty. …The prospect that any individual in Poland can be sued anywhere in the United States

22   because he is operating a website with advertising aimed at individuals in the United States would

23   constitute a substantial exercise of power over Polish citizens. Sovereignty concerns weigh against

24   jurisdiction being reasonable."  *AMA*, 2017 U.S. Dist. LEXIS 228078, at *26.

1          (4)     In the present case, neither Washington nor the United States have any

2  interest in providing a forum for the adjudication of the intellectual property claims of a Japanese

3  company distributing its works through another Japanese company, which arise out of actions

4  taken (if at all) in Taiwan and Hong Kong.

5          (5)     It would be laughable to contend that either Washington or the United

6  States would be the most efficient locale for the resolution of a dispute between a company located

7  in Japan and Defendants located in China and the British Virgin Islands, concerning a website run

8  out of Taiwan. Not a single witness or relevant piece of evidence is likely to be found within

9  Washington or the United States as a whole.

10         (6)     Finally, "The sixth and seventh factors can be considered together as

11  'whether an alternate forum exists, as well as the convenience and effectiveness of relief for the

12  plaintiff. …Plaintiff 'bears the burden of proving the unavailability of an alternative forum.'"

13  *AMA Multimedia LLC*, 2017 U.S. Dist. LEXIS 228078, at \*27-28, citing *Core-Vent, supra.* Here,

14  Plaintiff has provided no facts from which the Court could conclude that Plaintiff could not litigate

15  its claims in Japan, China, or the British Virgin Islands.

16     Because each of the seven factors favor the Defendants, an exercise of personal jurisdiction

17  would not be reasonable. Accordingly, Plaintiff's claims must be dismissed for a lack of personal

18  jurisdiction.

19                                     **<u>Conclusion</u>**

20     For the reasons stated hereinabove, Defendants' Motion to Dismiss for lack of personal

21  jurisdiction should be allowed.

22

23

24

1  **Respectfully Submitted:**

2
   /s/ Philip P. Mann
3  Philip P. Mann, Esq. (WSBA No. 28860)
   Mann Law Group PLLC
4  107 Spring Street
   Seattle, Washington 98104
5  Tel: 206-463-0900
   Email: phil@mannlawgroup.com

6
   /s/ Valentin Gurvits
7  Valentin D. Gurvits (*pro hac vice pending*)
   Frank Scardino (*pro hac vice pending*)
8  BOSTON LAW GROUP, PC
   825 Beacon Street, Suite 20
9  Newton Centre, Massachusetts 02459
   Telephone: 617-928-1804
10 Facsimile: 617-928-1802
   vgurvits@bostonlawgroup.com
11 frank@bostonlawgroup.com

12 /s/ Evan Fray-Witzer
   Evan Fray-Witzer (*pro hac vice pending*)
13 CIAMPA FRAY-WITZER, LLP
   20 Park Plaza, Suite 505
14 Boston, Massachusetts 02116
   Telephone: 617-426-0000
15 Facsimile: 617-423-4855
   Evan@CFWLegal.com

16
   *Attorneys for Defendants*

17

18 Dated: December 24, 2020

19

20

21

22

23

24

1

## <u>CERTIFICATE OF SERVICE</u>

2

        I hereby certify on the date indicated below, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

parties who have appeared in this matter.

5

DATED:  December 24, 2020           <u>/s/ *Philip P. Mann*       </u>

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION