1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

WILL CO. LTD. a limited liability company
organized under the laws of Japan,

          Plaintiff,

   vs.

KAM KEUNG FUNG, aka 馮 錦 強, aka
FUNG KAM KEUNG, aka FUNG KAM-
KEUNG, aka KUENG FUNG, aka KEUNG
KAM FUNG, aka KAM-KEUNG FUNG, aka
KEVIN FUNG, an individual; FELLOW
SHINE GROUP LIMITED, a foreign
company, and DOES 1-20, d/b/a
AVGLE.COM,

          Defendants.

**Case No.:  3:20-cv-05666-RSL**

**PLAINTIFF WILL CO. LTD**
**OPPOSITION TO MOTION TO**
**DISMISS FOR LACK OF PERSONAL**
**JURISDICTION**

NOTE FOR MOTION:
January 29, 2021

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
 - 1

Plaintiff Will Co. Ltd (hereinafter "Will Co" or the "Plaintiff"), through its counsel of record Spencer D. Freeman, The Freeman Law Firm, Inc., files this Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## I.    INTRODUCTION

In the age of the Internet, the fact that someone has never set foot in the United States, acted from inside the United States, or contracted directly in the United States, does NOT mean their business is not targeted here.

Defendants assert that with residence and operations of Avgle.com outside the United States they cannot be brought before Courts in the United States. They are wrong. Defendants operate Avgle.com to ensure fast and efficient delivery of videos to United States viewers, actively choose United States IP addresses via virtual private networks to maintain the site, cite only United States law on Avgle.com, and actively advertise specifically to United States viewers. Defendant purposefully directs their business efforts to the United States, and it is reasonable for them to account for their unlawful actions in United States Courts.

Make no mistake, Defendants are knowingly and intentionally taking advantage of and earning money from the United States' market. Such is not happenstance, as they would have the Court believe. They are hiding in other jurisdictions while earning money here. Pirates need to know that if they target the United States market, they will be held accountable here.

## II.    FACTUAL BACKGROUND

Will Co. is an award-winning Japan based entertainment company which includes a vast library of full-length adult entertainment movies offered for viewing in a fee-based model. The company is comprised of nearly 100 employees who manage over 37 registered trademarks and 50 brands, each of which explore and deliver sensuality and sexuality through artistic photography, video, and erotic stories. Based in Japan Will Co. produces content that is specific to Japanese models, environment, and stories. Will Co. is the producer and exclusive licensor of its own motion pictures/content. *Declaration of Katsuhisa Aoyagi ISO Opposition to Motion*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 2

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

*to Dismiss ("Decl. K. Aoyagi")*, p 2. ¶¶ 3-6.

Since 2016, Will Co. has grown its video library to over 50,000 full length adult entertainment movies, featuring over 5000 models shot by over 300 photographer/directors. Its brands have grown into a globally recognized leader of Japanese sensual art garnering numerous industry awards through the use of studios in Japan, exotic locations, high budget productions, engaging storylines, famed photographers, directors and models coupled with the dedication from its artists and technicians. *Id.* at p 2, ¶¶ 7-8.

Japanese erotica is a significant niche in the United States market with high demand. For instance, on Pornhub.com (arguably the most popular adult entertainment web site in the world) Japanese content stood near the top of most searched content in 2018 and in the top 3 in 2017, and number two in 2019. Its popularity equates to the potential to earn significant money in the United States market. *Declaration of Jason Tucker ISO Opposition to Motion to Dismiss ("Decl. J. Tucker")*, p 3, ¶¶ 12-16. Unfortunately, it also raises the probability of piracy of Japanese content.

Will Co.'s venture into the United States market is significant. Will Co. has an exclusive agreement with Digital Commerce Co., Ltd. (brand name Fanza), one of the largest distributor's adult content in the World, for the worldwide distribution of Will Co.'s content. Through Fanza, Will Co.'s content is sold on the web site r18.com.[1] R18.com's largest viewer base is the United States, a major reason Will Co. maintains its exclusive contract with Fanza. Fanza solely distributes Will Co.'s content on its websites for paid on-demand viewing. *Decl. K. Aoyagi*, p 2-3, ¶¶ 11-14. R18.com utilizes Cloudflare in the United States to serve and display content to United States viewer. Will Co., through the agreement with Fanza, has intended to and continues to intend to capitalize on and earn money from the United States market. Will Co. earns a

---

[1] R18.com is ranked the 1,674 most popular web site globally. United States is the largest viewer base at 27%, with the next largest Taiwan at 10.3%

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 3

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

revenue share from each transaction.  Annually, Will Co. earns in excess of $1M from United States viewers based upon efforts to target the United States market.  *Id.*, p 3, ¶¶15-16.

Will Co. expressly and intentionally markets its content to the United States market, to take advantage of the Japanese niche in the United States. *Id.*, p 2, ¶¶ 9-10.  Aware of the prevalence of Internet piracy of adult content and its desire and success in marketing in the United States, Will Co. has sought protection in the United States for the products sold and displayed in the United States through copyright registrations with the United States Copyright Office.  *Id.*, p 3, ¶ 17.

That United States viewers have access to Will Co.'s Japanese erotica movies for free on web sites (such as Avgle.com) means that those interested in this niche market will not pay fees to view Will Co.'s movies.  *Id.*, p 3, ¶ 18.

Will Co. protects its market share in the United States by investigating and reviewing sites that display Japanese erotica for free, looking for instances of copyright infringement – where the video streaming sites are displaying Will Co.'s movies for free with authorization.  *Id.*, p 3, ¶ 19.  These sites earn money by selling advertising space on the web site.  The higher quality and higher quantity of the videos displayed on the video streaming sites, more advertising revenue will be generated.  *Decl. J. Tucker*, p 4, ¶¶ 14-15.  Advertising revenue in the United States is among the highest in the world, so generating viewers in the United States for these videos streaming sites is important and profitable.  *Id.*, p 4, ¶ 16.

50 of Will Co.'s Japanese erotica movies registered with the United States Copyright Office were discovered to be displayed without authorization on 167 separate and distinct Uniform Resource Locators (URLs, the unique address of each page displayed on the Internet) on the web site Avgle.com.  *Id.*, p 4, ¶ 18.  Defendants Kam Keung Fung ("Fung") and Fellow Shine Group Limited ("FSG") are owners and/or operators of Avgle.com.  The owners/operators of Avgle.com expressly provide for a video/content take-down procedure, stated to be consistent with the DCMA (Digital Millennium Copyright Act, which provides in part for take-down

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 4 -

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

procedures for copyright infringement on web sites, providing protection for the site owner from liability).  *Id.*, p 4-5, ¶¶ 19, 21.  Will Co. submitted DMCA compliant take down notices to Avgle.com in April, May, June, and July 2020 pursuant to the procedures stated on the Avgle.com web site.  Will Co's movies were not removed from Avgle.com.  *Id.*, p 5, ¶ 22.

Avgle.com is clearly targeted at the United States market.  While the majority of the web site is in Japanese, such is consistent with the desire of those participating in the niche market of Japanese erotica.  The viewers/users of the niche desire an immersive experience in the Japanese experience, which includes most of the text on the site to be in Japanese.  *Id.*, p 5, ¶ 23.  However, key crucial pages of the Avgle.com are in English, including (1) Terms and Conditions; (2) Privacy Policy; (3) DMCA; (4) 2257; (5) Advertise; (6) Notice; (7) FAQ; and Support/Feedback.[2]  *Id.*, p 5-6, ¶¶ 24-33, Exs. A-H.

Information on how Avgle.com works and how one can earn money on Avgle.com are all presented in English.  Quite importantly, several key pages *are specific to only the United States.*  The "DMCA" page expressly refers to the Digital Millennium Copyright Act, a statutory scheme governing copyright infringement liability and safe harbors applicable only in the United States. *Id.*, p 6, ¶ 36.  The "2257" page expressly refers to 18 U.S.C. § 2257, which imposes in part certain and specific records keeping requirements regarding models, which may be investigated by law enforcement.   Defendants also refer to § 2257 in the various upload options (regular, Facebook, and Telegram), advising the uploader that they could be requested to produce § 2257 records upon request.  Simply, there is no reason to refer to DMCA or § 2257 on Avgle.com unless expressly aiming at the United States market.  *Id.*, p 6-7, ¶¶ 36-38, Exs. I-K.

The "Advertise" page provides links to information relevant to a decision to enter into an affiliate relationship with Avgle.com, including relevant Internet traffic statistics for the web site

---

[2]   In addition, categories of content on Avgle.com is in English, including "Videos," "Dating," "VR," "Categories," "Live Sex," and "R18 Games" are all presented in English.  *Decl. J. Tucker,* p 5, ¶ 31.

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1  – all presented in English.  *Id.*, p 7, ¶ 39.

2      In addition to presenting key information *only* relevant to the United States market,

3  Defendants operate Avgle.com so that display to the United States viewer specifically is as fast

4  and efficient as possible.  Avgle.com is hosted on a server in the Netherlands.  To account for

5  any delays in displaying videos in the United States, Defendants have a contractual relationship

6  with United States company Cloudflare, Inc. as a Content Delivery Network ("CDN"), including

7  cached edge delivery in the United States.  *Id.*, p 7, ¶¶ 40-41, Ex. L.

8      A CDN is used to deliver content over the Internet in a fast and efficient manner when

9  the originating servers (where the web site is hosted) is far away.  It is a highly-distributed

10 platform of servers that helps minimize delays in loading web page content by reducing the

11 physical distance between the server and the user.  This helps users around the world view the

12 same high-quality content without slow loading times.   The CDN server is geographically local

13 to the intended audience.  Speed is everything to end users seeking video on the Internet.  The

14 closer the content to the end user, the faster the content can be delivered.  *Id.*, p 7-8, ¶¶ 42-44.

15     Cloudflare provides Avgle.com cached edge delivery.  Cached edge delivery reduces the

16 number of requests to an origin server by serving static content from a Cloudflare data center.

17 The only benefit of cached edge delivery is speed of delivery of content local to the CDN servers.

18 By caching web site content on servers closest to the end users, Cloudflare helps further improve

19 load speeds.  Whether Cloudflare caches static content depends on where visitors come from,

20 which Cloudflare data center is reached, and how often visitors request a resource or data at a

21 specific center.   Contrary to Defendants' assertions, only Cloudflare's Asian and North

22 American servers are used by Avgle.com.  *Id.*, p 8, ¶¶ 45-48, Ex. M.

23     The Avgle.com CDN is not a passive account or service.  Between 2017 and 2020, the

24 network was managed from *United States IP addresses* on 616 occasions, including 150 times

25 from IP addresses in the State of Washington in 2018 and 2019. (This directly conflicts with

26 Defendants assertion that no conduct has occurred in the United States.)  One user identification,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 6

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

No. 6062538, is specifically associated with Fung.  Using that login ID, 17 changes were made to the Cloudflare account between 2017 and 2020.  Two of those logins were from IP Addresses in the United States, Los Angeles, California, and Cheyenne, Wyoming.  *Id.*, p 9, ¶¶ 48-58, Ex. N.

Changes to a CDN are made when the site operators are looking to modify how the site operates so as to optimize an experience for end users.  Logins and controlling Cloudflare CDN servers utilizing United States IP addresses illustrates optimization efforts to increase United States users.  *Id.*, p 10, ¶¶ 59-61.

Avgle.com earns money from the sale of advertisement space on the site.  The owners and operators of the site contract with ad broker Tiger Media (a.k.a. Juicy Ads).  Tiger Media is headquartered in Canada and operates servers located in the United States.  All advertisements displayed to end users are displayed from those United States servers.  There are clearly United States vendors that advertise on Avgle.com, including Multi Media, d/b/a Chaturbate.  Defendants have earned in excess of $300,000 from ads through Tiger Media, $100,000 paid through United States based PayPal, Inc.  *Id.*, p 4, ¶ 20; p 10-11, ¶¶ 62-67.

Advertising on Avgle.com is geo-targeted to United States viewers.  Geo-targeting means that when a viewer is known to be from the United States, advertisements for United States vendors or providers are displayed to the viewer.  *Id.*, p 10, ¶¶ 64-65.  Geo-targeting is *not* applied for all viewers of Avgle.com regardless of location in the world.  Based on testing of six countries, there are no geo-targeted ads in France, Taiwan, Australia, Canada, or Germany.  *Id.*, p 11, ¶ 68.

Avgle.com's targeting of United States viewers is working to grow a viewer base here.  In from April 2020 through June 2020, the United States was the fifth largest viewer base for the site, making up 7.32% of the site's viewers (trailing Japan at 43.51%, Taiwan at 9.89%, Korea at 8.49%, and Hong Kong at 7.61%).  Currently, the United States is the third largest view base,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
 - 7

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

increasing to 8.1% of the viewer base.[3]   *Id.*, p 11, ¶¶ 69-70, Exs. O, P.

FSG is an admitted owner of Avgle.com.  Fung, per his declaration, set up virtually every aspect of Avgle.com.  Further, he has continued maintain the site, even from United States IP addresses.

### III.   ARGUMENT

Defendants request the Court to dismiss Will Co.'s claims for copyright infringement on the ground of lack of personal jurisdiction.  Based upon Avgle.com interjection into the United States forum, Defendants are wrong.

### A.   Legal Standard

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

If a court decides to rule on personal jurisdiction without an evidentiary hearing, a plaintiff must make only a *prima facie* showing of jurisdictional facts to survive the motion.  *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 919 (9th Cir. 2011).   The "uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor" to determine if Plaintiff has established a *prima facie* showing.  *See*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

\

---

[3]  As admitted by Defendants in their Motion, Defendants retained and use the services of histats.com to obtain visitor analytics for Avgle.com.  Thus, they *know* the traffic/visitor patterns on the site.  There is only one reason to seek out such information, and that is to be able to influence it.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 8

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

**B.      Personal Jurisdiction**

Defendants Fung and FSG are subject to specific personal jurisdiction under FRCP 4(k)(2), often referred to as the federal long-arm statute.[4]  *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006).  FRCP 4(k)(2) provides for jurisdiction over a foreign defendant if the defendant is not subject to jurisdiction in any state's court and exercising jurisdiction is consistent with the United States Constitution and law.

A court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).  Will Co.'s claims here arise under federal law, and Defendants are not subject to personal jurisdiction of any state court.  The only dispute is whether the exercise of personal jurisdiction comports with due process.

Due process requires a nonresident defendant to have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Data Disc*, *Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir. 1977).  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462.

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the forum court to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 30 1-02 (9th Cir.

---

[4]  Will Co. does not assert general jurisdiction over Defendants, but only specific jurisdiction.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 9

1986).  The Ninth Circuit Court of Appeals articulated the following three-prong test for finding personal jurisdiction:

> (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

### 1.     Purposeful Direction

First, Will Co. must establish the Defendants purposefully availed themselves of the privilege of conducting activities here *or* purposefully directed activities toward the forum.  *Id.* These two inquiries are often equated to "'purposeful availment,' . . . but availment and direction are, in fact, two distinct concepts." *Id.* (citations omitted). An analysis of purposeful availment of privileges of the forum state typically centers on the defendant's actions in the forum state and is usually analyzed in connection with contract disputes.  *Id.*  An analysis of purposeful direction, on the other hand, is typically used in tort suits and normally centers on actions performed outside the forum that are directed toward the forum. *Id.* at 802-03.

For intentional torts, the Ninth Circuit Court applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum.  *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  Here, Will Co.'s copyright infringement claims are properly analyzed under *Calder* test.  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Rio*, 284 F.3d at 1019-20.

Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have

1   1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the

2   defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803.

3                      **a.**    **Intentional Act**

4           Intent under the *Calder* effects test is construed as "an intent to perform an actual, physical

5   act in the real world, rather than an intent to accomplish a result or consequence of that act."

6   *Schwarzenegger*, 374 F.3d at 806.  Operation of a website constitutes an intentional act. *Brayton,*

7   *supra,* 606 F.3d at 1129 ("operating a passive website was an intentional act."); *see also*, *Pebble*

8   *Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006) (operating a website was an intentional

9   act where the claim arose out of the website name's infringement of a trademark).

10           Here, Defendant's intentional acts are even clearer.  Defendants sought out a CDN

11   service in the United States which enabled faster and more efficient display of content on

12   Avgle.com, including Will Co.'s copyrighted works.  Defendants constructed Avgle.com to

13   attract a specific and well-known niche market and also specifically adhere to United States

14   laws by informing users that they may be required to produce model records pursuant to 18

15   U.S.C. § 2257, presenting a "DMCA" policy referring to United States Digital Millennium

16   Copyright Act, and informing content producers takedown notices compliant with the DMCA

17   will be honored.  Further, Defendants refused to take down content after receipt of such

18   takedown notices.

19           FSG is an admitted owner of Avgle.com, thus the intentional act of site operation is

20   clear.  Fung attempts to avoid falling under the definition of intentional by stating that all he

21   did is what he contracted to do underneath Awesapp, Ltd, of which he admittedly is the sole

22   proprietor.  However, Fung admitted to setting up virtually the *entire* web site, including

23   servers, ad broker relationships, all other vendor relationships, and web site construction

24   and design.  There is little else in relation to the operation of a web site.  Even more

25   problematic for Fung, he continued to maintain the site throughout its duration, evidence by

26   his logins to maintain the United States CDN.  Fung's attempt to distance himself from the

1   site operation fails.

2       The operation of Avgle.com alone is enough to satisfy the intentional act requirement

3   of purposeful direction analysis for personal jurisdiction.   Here, the intentional acts of

4   Defendants are far beyond that by actively maintaining the United States CDN using United States

5   IP addresses.

6                           **b.   Express Aiming**

7       In the past, courts "have struggled with the question whether tortious conduct on a

8   nationally accessible website is expressly aimed at any, or all, of the forums in which the website

9   can be viewed." *See Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F. 3d 1218, 1229 (9th Cir. 2011).

10  The Ninth Circuit Court of Appeals has held that while "maintenance of a passive website alone

11  cannot satisfy the express aiming prong ... operating even a passive website in conjunction with

12  'something more'— *conduct directly targeting* the forum—is sufficient." *Id.* (Emphasis added.)  To

13  determine that "something more," the Ninth Circuit considers "the interactivity of the defendant's

14  website, the geographic scope of the defendant's commercial ambitions, and whether the

15  defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.*

16      The Ninth Circuit has found that the number of visitors to a site from a particular forum is

17  relevant to the express aiming inquiry. *Mavrix* at 1230 (concluding that there was express

18  aiming at California, where, "[a] substantial number of hits to [defendant's] website came from

19  California residents.")  That Court has also found it "most salient the fact that [a defendant] use[s]

20  [a plaintiff's] copyrighted photos as part of its exploitation of the [forum] market for its own

21  commercial gain." *Mavrix*, at 1229. The relevant inquiry is whether the third-party

22  advertisements demonstrate that Defendant exploited the United States market for commercial

23  gain. *Id.*

24      In *Mavrix*, the court considered specific personal jurisdiction where the plaintiff alleged

25  infringement by the defendant for "posting its copyrighted photos on its website." *Id.* at 1221.

26  The defendant operated an interactive website on which visitors could post comments, vote in polls,

join a membership club, and "submit news tips and photos of celebrities." *Id.* at 1222. The court noted that an Internet tracking service ranked the website "as number 3,622 out of approximately 180 million websites worldwide based on traffic." *Id.*

The *Mavrix* Court pointed out that while defendant's website courted a national audience, the defendant made "money from third-party advertisements" for California activities and had "agreements with several California businesses," including an Internet advertising agency and a wireless provider to host a version of the site. *Id.*[5] The Ninth Circuit explicitly stated web site operators expressly aim at a forum where the site "with a national viewership and scope appeals to, and profits from, an audience in a particular state." *Id.* at 1231.  (Such is the case here.)

Operating a passive web site in conjunction with 'something more' — *some conduct directly targeting* the forum—is sufficient to determine express aiming into the forum.  The relevant question here is whether that "something more" is present with Avgle.com.  Defendants rely heavily on *AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201 (9th Cir. 2020) to support their assertion that "something more" does not exist here.  Defendants are wrong.  The facts of *AMA* are significantly and clearly distinguishable from the facts here.[6]

---

[5]   The *Mavrix* court stated: "[Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain ...." *See Mavrix,* 647 F.3d at 1230.  *See also, IO Group, Inc. v. Jordon,* 708 F. Supp. 2d 989, 992-93, 995, 997 (N.D. Cal. 2010) (express aiming in copyright action where defendant owned/operated a website where users could view, copy, upload, and download photographs and moving pictures, stating that "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as [d]efendant earned revenue from advertisements that appeared on the site").  The same legal analysis applies here.

[6]   In *AMA,* the plaintiff argued that four facts evidenced express aiming at the United States: (1) use of geo-targeted ads and corresponding United States revenue; (2) percentage of defendant web site the United States viewer base; (3) web site Terms of Service ("TOS") as a contract; and (4) use of United States based Domain Name Server. *Id.* at 1210.  The Court determined these facts supported a United States viewer based and defendants' awareness, but such did not mean the operators intended to build the viewership.  The *AMA* facts pale in comparison to the forum specific facts presented here.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 13

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

The *AMA* Court distinguished *AMA* from *Mavrix* in important respects.  First, in *AMA* the subject matter of the web site did not tie the site to the forum as the subject matter had in Mavrix, as the adult content market is a global one.  *Id.*  Second, that the site featured a significant portion of the content on the site was produced by United States content producers and United States based models did not mean that the site was expressly aimed at the United States.  That users were more likely to upload United States Content to the site did not mean that the site was expressly aimed at the United States Foreseeability that the site *may* attract United States viewers did not equate to express aiming.  *Id.* at 1210-11.

Third, the Court found that United States based forum traffic did not have the same relevance in *AMA* as it did in *Mavrix* because of differing advertising structures.  Advertisements in *Mavrix* were tailored to forum residents showing an intent to develop a user base in the forum.  In *AMA* the advertisements were entirely geo-targeted advertisements such that <u>regardless of the country</u> the user was in, the ad displayed was targeted for that country.  As such, the Court found that "absent other indicia of Wanat's personal direction, does not establish that Wanat tailored the website to attract United States traffic."  *Id.* at 1211.  The court went on to state that such broad geo-located ads (located in every country) would otherwise constitute express aiming at *any* forum.  *Id.* (Here, importantly, geo-targeted ads on Avgle.com *did not* apply to <u>every</u> country but did to the United States.)

Fourth, the Court in *AMA* dismissed the relevancy of the TOS as a contract entered with United States residents.  The existence of the TOS (which was country neutral) did not evidence effort to target the United States market.  *Id.* at 1212.

Finally, the *AMA* Court determined that the use of a United States based DNS server did not establish express aiming.  AMA argued that the DNS service represented itself to be one of the fastest providers in the United States.  The Court found such argument to be insufficient.  While the use of a fast provider could be consistent with a desire to appeal to United States market, without

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 14

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

more such did not establish more of a United States market as opposed to more users globally. *Id.*[7]

In turning away AMA's attempt to draw analogy with *UMG Recordings, Inc. v. Kurbanov,* 963 F.3d 344 (4th Cir. 2020), the Court distinguished *UMG* by pointing out that the defendant there relied upon the DMCA, contracted with United States based advertising brokers, and relied upon United States based servers. *AMA,* 970 F.3d at 1212, fn. 8.  In *UMG* the Court found personal jurisdiction against a Russian citizen and resident with the defendant operated a web site with significant United States viewers (10% of site traffic), United States domain registrar, a registered DMCA Agent, use of United States servers, and geo-targeted ads. *Id.* at 353-54.  The instant case is analogous with *UMG,* not *AMA.*

Defendants rely upon *Bristol-Meyers Squibb Co. v. Superior Court,* 137 S. Ct. 1772 (2017) in their "express aiming" analysis for the apparent proposition that a web site presented to the world (which is virtually every web site) cannot have specific jurisdiction where the site is not operated.  This proposition is not true and *Bristol-Meyers* is misplaced here.  The Supreme Court ruled the *out of state* plaintiffs who had never been to or received any drugs connect with the state could not bring *their* claims against the drug company in that state for harm caused by the drug.  *Id.* at 1781-82.  Similarity of their claims to the state resident claims did not satisfy requirements of specific jurisdiction.  *Id.*  The Court did not conduct this analysis under express aiming, and it is clear from the decision that jurisdiction regarding the in-state claimants was undisturbed by the Court.

Reliance on *Bristol-Meyers* is an attempt to mislead the court.  On the issue of claim connected to the forum related activities (Sec. III.B.2 below), *Bristol-Meyers* is factually inapposite to the instant matter.   Here, Defendants' forum related activities is the intentional

---

[7]  While not expanded on by the *AMA* Court, a DNS server is required for *every* web site.  It connects the domain name (the web site typed into the browser by the user) with the IP address of the web site.  Without a DNS, domains would never lead to the actual web site.  CDN servers, as with the instant matter, are different.  Web sites do not require a CDN to function. The CDN provides more efficient and faster delivery of content to the geographical area in close relation to the CDN server.  CDN use itself signifies a desire to deliver content to the local area.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 15

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

target and display of Avgle.com to the United States market.  Will Co. claims that such display in the United States of Will Co. content violates its United States Copyright protections.  The connection is clear.   There was no connection between the harm claimed by the out of state plaintiffs in *Bristol-Meyers* to the drug company forum related activities.

While the "something more" connecting the operation of a web site to take advantage of the United States market was lacking in *AMA,* it is present here, similar to *UMG* and *Mavrix*.[8] Avgle.com is hosted in the Netherlands while Defendants contract with United States -based Cloudflare, Inc. for CDN servers, utilizing Cloudflare's services both in Japan and throughout the United States.  Separate servers display videos in Japan and in the United States.  The sole reason to utilize a CDN in the United States is to ensure faster and more efficient display of content to United States users (e.g. reducing buffering of videos).  The use of the CDN alone shows an intent to target the United States market.  Avgle.com utilizes Cloudflare servers in Asia and North America, not anywhere in the world as Defendants suggest.

Further, Defendants are quite active in managing/maintaining the United States CDN. Between 2017 and 2020, there were 616 instances of operators of Avgle.com logging into the United States CDN account under management protocols *from United States IP addresses*, including *150 from IP addresses from the State of Washington* in 2018 and 2019.  Fung, with login ID 6062538, made 17 changes to the United States CDN server between 2017 and 2020.  At least two of these changes were made by logging in from United States IP addresses, including locations in Los Angeles, California and Cheyenne, Wyoming.[9]

The United States CDN service was utilized to provide better efficiency of video streaming

---

[8]  The facts discussed in Mavrix are not facts required to show "something more," it is just that "something more" exist which evidence express aiming at the forum.
[9]  The use of UNITED STATES IP addresses may or may not indicate actual presence in the UNITED STATES  A Virtual Private Network (VPN) could be used to utilize a UNITED STATES IP address while somewhere else in the world.  Such may be done to test functionality and efficiency towards UNITED STATES viewers.  (Another indication of intent to market to the UNITED STATES)

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
 - 16

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

to United States viewers and managed from United States IP addresses.  Defendants argue that the CDN is an irrelevant fact because Cloudflare offers CDN services for display all over the world.  However, only Cloudflare's Asia and North America servers are used by Avgle.com.  Moreover, numerous, persistent, and consistent logins to manage the Cloudflare account from United States (and Washington) IP addresses unequivocally evidences intent to monitor and influence the United States market.  Defendants either logged in from United States computers or affirmatively choose United States IP addresses to use when logging in.  If not interested in specifically the United States Market, there would be no reason for the United States IP logins.

Personal jurisdiction inquiry is designed to ensure defendants are not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."  *Burger King Corp v. Rudzewicz*, 471 U.S. 562, 475 (1975).  It protects him/her from having to defend in a forum where it could not be anticipated to be sued.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1990).  Here, as Defendants affirmatively *choose* United States IP addresses to log into the Cloudflare account, United States jurisdiction would not be based upon random or fortuitous contacts but based upon Defendants knowing and intentional conduct directly and solely attributed to the United States.

The content of the web pages of Avgle.com also make clear the intent to build a United States viewer base.  One web page is titled "2257," referencing United States law 18 U.S.C. Sec. 2257 which in part mandates certain and specific record maintenance regarding models for web sites displaying adult content.  The page itself addresses record keeping, noting the site does not produce the content and any record inquiries should be directed at the content producer.  The *only* inquiries regarding 18 U.S.C. § 2257 required records would be United States law enforcement agencies enforcing the laws of the United States.  The explicit reference to § 2257 is a clear indication that Defendants intend to broadcast in the United States such that they would be subject to United States law.

Reference to § 2257 is not limited to the one page.  This United States law is also referenced

FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

whenever a user attempts to upload a video.  In each instance, the user is informed that by uploading the user agrees to produce § 2257 records upon request.  Such is further indication that Defendants intend to develop users in United States.

Defendants also reference United States specific law, the Digital Millennium Copyright Act, a 1998 United States law which amended certain sections of the Copyright Act of 1976.[10]  On the Avgle.com web page titled "DMCA," Defendants express assert that they will respond to all notices of copyright infringement which comply with the DMCA.  It is expressly stated that the notices will not be effective if the notice does not comply fully with "Section 512(c)(3) of the DMCA".  Defendants also expressly provide for counter-notice procedures of the DMCA.  The users of Avgle.com are advised that knowing misrepresentations on copyright notices can result in liability for damages under 512(f) of the DMCA.

Liability under the DMCA can *only* occur in the United States.  The *only* copyright takedown procedures expressly stated on Avgle.com are those under United States law.  Such illustrates Defendants desire to target the United States market and take advantage of the United States market.

Defendants utilized Tiger Media as an ad-broker for Avgle.com.  In 2020 alone, Defendants earned over $300,000 in advertise sales through Tiger Media.  Tiger Media is headquartered in Canada, with servers located in the United States.  Advertising within the United States is done with geo-targeting, meaning United States residents are presented with ads meant specifically for United States residents.  Contrary to *AMA,* geo-targeting on Avgle.com is *not* provided for all countries, but rather just select countries.  That *all* countries received geo-targeted ads was pivotal in the AMA Court rejecting geo-targeting as forum specific. The choice of geo-targeting in the

---

[10]  Belying reasonableness, Defendants state that references to 2257 and DMCA are "boilerplate" language from a template received from a Romanian company.  Defendants claim they have no responsibility or accountability for language on the web site they operate and own, because "some other guy wrote the language."  Are we to believe that a Romanian company cites United States law as "boilerplate"?

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 18

FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

United States and not other countries indicates a desire to target the United States market and develop a user base here.[11]

Defendant anticipated, desired, and achieved a substantial United States user base. Defendants knew they were cultivating a United States market and desired to do so. *See Mavrix*, 647 F.3d at 1230. That Avgle.com utilizes United States CDN servers to ensure faster and more efficient delivery of video and images to United States viewers, manages the United States CDN server from United States IP addresses, expressly attempts to comply with two United States statutes specific to the content and function of Avgle.com, and expressly sells advertising space specifically detailed for United States viewers establishes that the owners/operators were not just aware that its websites "exploited (and threatened) United States copyright interests" but intended to develop the market. *See Cybernet, citing Datatech Enters. LLC v. FF Magnat Ltd., No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sep. 14, 2012)* (granting an injunction, concluding a reasonable probability that plaintiff (an adult-oriented content producer) could establish personal jurisdiction under FRCP 4(k)(2) where defendant's file-sharing website received "a 'substantial number of hits' from the United States and directly profited from those hits" and where "several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) United States copyright interests").

Based on Avgle.com's numerous and various contacts with the United States and the type of contacts with the United States, and the fact that Avgle.com profits–whether directly or indirectly–from advertising that targets United States residents, Will Co. has sufficiently

---

[11] Defendants alleged that relationships with advertisers are indirect relationships, linked only through brokers. This argument is misleading. Whether through ad brokers or directly, the reality is that through the Avgle.com brokers sell advertising space to United States vendors – which is the most valuable ad space to sell. To argue that Avgle.com owners are simply benefiting bystanders to such relationships is without any sense of credibility. When an Internet web site makes most of its revenue through the sale of ad space, the owners and operators are keenly aware of the value of the ad spaces and where they are being sold. Such arguments did not work in *Mavrix*.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-cv-05666-RSL]
- 19

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

established a *prima facie* case of express aiming at the United States. *See Mavrix*, 647 F.3d at 1231.

### c.      Harm In Forum

The final prong of the *Calder-effects* test is the requirement that the conduct at issue caused foreseeable harm in the forum.   It is not required that the brunt of harm be suffered in the forum. *Fiore v. Walden*, 657 F.3d 838, 853 (9th Cir. 2011); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010); *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). Instead, the foreseeable harm "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Fiore*, 657 F.3d at 853; *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

In determining the location of a corporation's injury, the Ninth Circuit recognizes that a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011), *citing Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002). "[J]urisdictionally sufficient harm may be suffered in multiple forums." *Mavrix*, 647 F.3d at 1231.   Harm can occur where the bad acts occurred, where the corporation has its principal place of business, or where a corporation is incorporated. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002).   Jurisdictionally sufficient harm may be suffered in multiple forums. *Id.*   In fact, personal jurisdiction may be found where only a small portion of harm is felt in the forum. *See Keeton v. Hustler Magazine*, 465 U.S. 770, 780 (1984).

The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable. *Mavrix*, 647 F.3d at 1231.   It is clear in the instant matter that it was foreseeable that Defendants' intentional infringement of Will Co.'s copyrighted works would cause harm in the United States Forum.

Will Co. went through expensive efforts to copyright its works with the United States Copyright Office.   Thus, both Will Co. and its works are registered and protected in the United States.   While Will Co. is formed in Japan, Will Co. contracts for the promotion and sale of its

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

content in the United States, earning significant money in the United States.  Will Co. entered into a contractual relationship with Fanza for exclusive distribution of its content, including and intentionally in the United States.  Will Co. earns a revenue share of sales in the United States.  So popular is Will Co.'s content in the United States that Will Co. earns well over $1M per year in its collected revenue share from United States distribution.

Here, the bad acts *are* occurring in the United States as Avgle.com is displayed in the United States, currently the fifth largest viewer base.  Defendants are actively displaying the site to United States market, as evidenced by persistent management of the United States CDN from United States IP addresses.  It is far from "absurd" for Defendants to be on notice they could be brought into United States courts – it should be expected.

Defendants clearly intended to display videos on Avgle.com in the United States and to United States viewers (they cite United States law on Avgle.com).  Accordingly, they knew that harm would be caused in the United States by any infringements.  It was foreseeable that harm to Will Co. would occur in the United States.  Will Co. has adequately alleged that it has suffered harm in the United States as a result of Defendant's actions, meeting the *Calder* test.

### 2.    Arises out of Defendant's Forum-Related Activities

Will Co. must also show that its claims arise out of or relate to Defendants' forum-related activities. *Schwarzenegger*, 374 F.3d at 802.  A claim arises from forum-related activities if plaintiff "would not have been injured 'but for'" defendant's conduct directed toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  The "'arising out of' requirement" should not be read restrictively; rather, the "but for" test merely "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum" and "preserves the essential distinction between general and specific jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by* 499 UNITED STATES 585.

Will Co. sells viewing of its copyrighted videos to United States viewers in the United

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

States.  Defendants are each one of the owners/operators of Avgle.com, utilizing a United States -based CDN to distribute the infringed videos to United States viewers.  Avgle.com is targeted to United States viewers, with United States based advertisers.

Will Co. has been harmed in the United States because Defendants targeted the United States and caused Will Co.'s copyrighted works to be displayed and viewed on its sites in the United States.  Will Co.'s injury in the United States stems from the substantial amount of United States traffic to Defendant's websites.  Thus, Will Co.'s claims arise out of Defendant's United States -related activities through Avgle.com. *See Mavrix*, 647 F.3d at 1228; *Rio*, 284 F.3d at 1021.

### 3.    Reasonableness

Where the first two requirements of specific personal jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable"; that is, "it must comport with 'fair play and substantial justice.'" *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at 476). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Schwarzenegger*, 374 F .3d at 802.  The burden is on the Defendants to prove unreasonableness of the personal jurisdiction.  In determining reasonableness, courts consider seven factors:

> (1)    the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021.

Here, all seven factors support exercising jurisdiction over Defendants and Defendants

have has failed to present a compelling case that jurisdiction is unreasonable. First, as owners/operators of Avgle.com, Defendants have extensively interjected in the forum. They have contractual relationships in the United States, they broadcast in the United States, they have servers in the United States, and they commonly and consistently manage and instruct their United States servers from United States IP addresses.

Second, it is disingenuous for Defendants to argue a substantial burden to litigate this matter in the United States when Defendants so actively manage their Cloudflare CDN server from withing the United States Written discovery, depositions, and even mediations can be held without their direct presence in the United States. While their presence for an actual trial may be mandated, since they can actively manage their servers in the United States, travel for purposes of trial would not be unreasonable. Business travel from Taiwan is quite common.

Third, Defendants' assertion that exercising jurisdiction here would seriously impinge the sovereignty of China, Hong Kong, and Taiwan is misplaced. Contrary to *AMA*, Defendants here have significantly interjected themselves into the United States market. Holding Defendants accountable in the United States for their actions in the United States hardly impinges on the sovereignty of any other nation.

Fourth, United States District Courts certainly have significant interests in resolving disputes of United States copyright infringements by foreign defendants when the infringements are targeted in the United States. By Defendants targeting Avgle.com in the United States, this District Court can surely demonstrate a particular interest in this case. Will Co. registers its works in the United States and markets to and earns significant revenue from United States consumers.

Fifth, Defendants argue a lack of judicial efficiency here, arguing that no party or witness is located in the United States. However, Defendants fail to offer a more efficient forum to decide infringement of *United States copyrights*. Most importantly, the videos displayed in this case were served from a Content Delivery Network with Cloudflare, located in the United States.

Sixth, since the servers that displayed Will Co.'s content are located in United States, as

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-cv-05666-RSL]
- 23

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

the Content Delivery Network servers are through Cloudflare, United States is the most convenient forum to obtain effective relief.  These servers are more easily accessed in discovery, which would then be governed by this Court.  Moreover, Will Co.'s works are protected by United States copyrights and its members are based in the United States.

Seventh, Defendants argue that their "home countries" respect copyrights and therefore are adequate alternative forums for this suit.  However, these infringements occurred *in the U. S.* through intentional acts of Defendants.  Defendants present no evidence that these forums can and will adequately apply United States copyright law (this is their burden).

### C.    Jurisdictional Discovery

District courts have broad discretion to grant discovery to establish jurisdiction. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *see also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Such discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986); *see also Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977).   "The Court must weigh the prejudice to the complaining party if discovery is denied." *Andrews v. Pride Indus.*, 2015 U.S. Dist. LEXIS 27959, 2015 WL 1014133, at *5 (E.D. Cal. Mar. 6, 2015) (citing *Laub*, 342 F.3d at 1093). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Id*.  The Ninth Circuit may find an abuse of discretion where a court denies discovery where such discovery "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Rutsky & Co. Ins. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
- 24

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

(quoting *Data Disc, Inc. v. Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977)).  The district court has broad discretion to permit or deny discovery. *Id.*  The district court could properly exercise its discretion to refuse jurisdictional discovery "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995).

To the extent that the Court may find Will Co. to have fallen short of a prima facie case that Defendants have sufficient contact with the United States, jurisdictional discovery will establish the precise extent Avgle.com is intentionally targeted to United States viewers, including internal memorandum and correspondence regarding the United States market, the manner and reasons Cloudflare CDNs were accessed with United States IP addresses, communications with United States based vendors, and communications and agreements with advertiser brokers which may evidence Defendants bias to the United States Market.  Will Co. has established Avgle.com is distributed significantly to United States viewers, videos are distributed from United States based servers, and the owners/operators of Avgle.com have established relationships with United States based advertisers.   These are not attenuated jurisdictional allegations but based in fact presented to the Court.

While Will Co. steadfastly believes the burden has been met for purposes finding personal jurisdiction against Defendants, if the Court were to disagree Will Co. respectfully submits that jurisdictional discovery should be permitted and ordered before deciding upon the instant motion.

## IV.    CONCLUSION

For the reasons stated herein, it is respectfully requested that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction.

\\

\

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05666-RSL]
 - 25

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1    RESPECTFULLY SUBMITTED this 25th day of January 2021.

2

3                                    FREEMAN LAW FIRM, INC.

4                                    _____/s/ Spencer D. Freeman_____
                                     Spencer D. Freeman, WSBA #25069
5                                    Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)