Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILL CO. LTD. a limited liability company organized under the laws of Japan,

Plaintiff,

vs.

KAM KEUNG FUNG, aka 馮錦強, aka FUNG KAM KEUNG, aka FUNG KAMKEUNG, aka KUENG FUNG, aka KEUNG KAM FUNG, aka KAM-KEUNG FUNG, aka KEVIN FUNG, an individual; FELLOW SHINE GROUP LIMITED, a foreign company, and DOES 1-20, d/b/a AVGLE.COM,

Case No.
3:20-cv-05666-RSL

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Note on Motion Calendar:
February 5, 2021

Oral Argument Requested

*"When you ain't got nothing, you got nothing to lose."*

- Bob Dylan, Like a Rolling Stone

## INTRODUCTION

Having found itself with no legitimate factual or legal arguments to present to this Court in support of its Opposition to Defendants' Motion, Plaintiff appears to have decided that it had nothing to lose in presenting the Court with a brief so filled with misdirection and a sworn declaration so replete with demonstrable misrepresentations that one is tempted to check whether the declarant was truthful when he recited his own name in his declaration.

What the Opposition (and supporting declaration) do not contain, however, is any

Reply In Support Of Motion to Dismiss
Case No. 3:20-cv-05666-RSL

1

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA 98110
Tel: 206.436-0900

reasonable argument that this Court can exercise personal jurisdiction over Defendants consistent with the limitations of the Due Process Clause of the Constitution.  Indeed, to the contrary, Plaintiff repeatedly concedes throughout its Opposition that: (a) it is based in Japan, (b) it produces Japanese-centric content; (c) its operations are entirely in Japan; (d) the majority of the website at issue in this case is in Japanese; (e) only seven percent of the website's traffic comes from the United States (with 43% coming from Japan; almost 10% coming from Taiwan; 8.5% coming from Korea; and 7.6% coming from Hong Kong); (f) the website is hosted in the Netherlands; (g) the website contracts with an advertising broker in Canada; and (g) neither Defendant is located in the United States.

To compensate for all of this, Plaintiff alternately relies on the Declaration of Jason Tucker, Plaintiff's self-proclaimed expert, who tries to convince the Court of tenuous connections to the United States which in reality do not exist; or points to its *own* tenuous connections to the United States, which (even if they existed) are irrelevant to the jurisdictional inquiry.  It is not enough, and the Court should dismiss Plaintiff's complaint.

**ARGUMENT**

**I.    Defendants Have Not Utilized United States Based IP Addresses To Manage Their Cloudflare Account.**

Large swaths of Plaintiff's Opposition are dedicated to the proposition that Defendants utilized United States based IP addresses to manage their Content Delivery Network ("CDN") with Cloudflare.  In other words, Plaintiff alleges that Defendants logged into their Cloudflare account through these United States based IP addresses to make changes to the CDN, specifically utilizing United States based IP addresses because doing so would allow them to better assess how their website was performing within the United States.  As the Court will see, every single part of this assertion is incorrect and relies on startling misrepresentations to this Court in a sworn declaration from Plaintiff's consultant, Jason Tucker[1] and (in turn) in Plaintiff's

---

[1] Mr. Tucker is not the disinterested expert Plaintiff would have the Court believe.  For example, in a 2014 interview, Mr. Tucker – who had then formed a trade group of pornography production studios – professed his willingness (indeed desire) to utilize the legal system for his own ends.  *See* **Exhibit 1**, "Interview With Jason Tucker" ("So, we formed this organization and we're going to go hurt some people with the legal system, and it's

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

2

MANN LAW GROUP PLLC
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

1 Opposition.

2       Initially, although Plaintiff acknowledges that the use of a United States based IP
3 address does *not* actually indicate that a person is located in the United States (Opposition, p. 16,
4 n. 9), it nonetheless asserts to this Court that one or more of the Defendants repeatedly utilized
5 United States based IP address in order to test the website's functionality in the United States.

6       First and foremost, Defendants can (and do) state, unequivocally that they have
7 ***never*** attempted to utilize United States based IP addresses to access their Cloudflare account.
8 *See* Declaration of Ming Chung Wu on Behalf of Fellow Shine Group Limited in Support of
9 Defendants' Reply in Support of Motion to Dismiss ("FSG Reply Decl."), ¶2 and Declaration of
10 Kam Keung Fung in Support of Defendants' Reply in Support of Motion to Dismiss ("Fung
11 Reply Decl."), ¶2.  Moreover – and despite what Mr. Tucker has sworn to – none of the
12 documents he has presented to the Court indicate otherwise.  Indeed, although (based on his self-
13 proclaimed expertise), Mr. Tucker should (and likely does) know better, he misrepresents to this
14 Court almost every factual conclusion that can be drawn from the documents Plaintiffs received
15 in response to their early discovery requests to third-parties such as Cloudflare.[2]

16       First, Plaintiff and Mr. Tucker breathlessly represent to the Court that (between
17 2017 and 2020) there were 616 instances of "operators of Avgle.com logging into the United
18 States CDN account under management protocols from United States IP addresses, including
19 150 from IP addresses from the State of Washington in 2018 and 2019."  Opposition, p. 16;
20 Tucker Declaration, ¶56.  Putting aside the fact that there is no such thing as the "United States
21 CDN account," (there is a single free Cloudflare account used for the website worldwide), what
22 Plaintiff has failed to tell the court is that ***599 of those "instances" were from account numbers***
23 ***not belonging to the Defendants*** and having nothing to do with the management of the website.
24 Indeed, if the Court were to look closely at the documents attached to the Tucker Declaration

---

25 going to be costly for them. And we've got the money to go fight them and fight them to the death.")

26    2 The scope and breadth of Mr. Tucker's misrepresentations are so numerous and so wide-ranging as to call
to mind Joe Pesci's famous line from *My Cousin Vinny*: "Everything that guy just said is bull****".  And, although
27 such a response would be apt here, Defendants will nonetheless endeavor to detail some of Mr. Tucker's
misrepresentations.

(something the Plaintiff clearly hopes the Court will not do), it would see that Mr. Tucker has included supposed logins from 28 different user IDs, only one of which is actually associated with the Avgle.com account. When asked about these supposed logins to Avgle's account, the legal department of Cloudflare responded:

> The user ids you see do not represent users accessing your account, they are other user ids that attempted to add the domain in question (avgle.com) to their Cloudflare account. Since this information is responsive to the original legal request, we were obligated to provide it.

*See* Cloudflare Legal Department Email attached to the **FSG Reply Decl. as Exhibit 1.**

In other words, on various occasions (and unbeknownst to Defendants until this litigation), unknown operators of *other* websites attempted to add the Avgle.com domain name to *their* Cloudflare account. FSG Reply Decl., ¶4. Although Defendants cannot know why other website owners would want to do so (and it is not even clear to Defendants if these attempts were successful or not), what is clear is that these 599 "instances" were ***not*** instances of Defendants accessing their account utilizing United States based IP addresses as Plaintiff claimed.[3] Indeed, as Cloudflare explained, they were not instances of Defendants or ***anyone*** actually accessing Defendants' Cloudflare account. And, they certainly weren't instances of Defendants attempting to maximize the performance of the Avgle.com website in the United States, as Plaintiff and Mr. Tucker allege. Indeed, as far as Defendants know, Cloudflare does not even *offer* the option to make adjustments to CDN functionality on a country-specific basis. *Id.*, ¶5; Fung Reply Decl, ¶3.

This leaves a grand total of 17 "instances" in which the Avgle.com Cloudflare

---

[3] Although it may not matter *where* the IP addresses connected to these 599 instances were located – since none of them involved the Defendants, it seems important to inform the Court that, in actuality, the scope of Mr. Tucker's attempted deception on the Court is much worse than it appears. Despite the existence and availability of sophisticated geolocation tools which would have allowed Mr. Tucker to *accurately* report to the Court the location of the 599 instances – tools that Mr. Tucker himself lauds in his Declaration (¶¶52, 55) – Mr. Tucker appears to have simply utilized whois data to "locate" the IP addresses in question. This is important because the whois data often simply lists the home address of the company that owns the IP address, not the actual location of the IP address as utilized. For example, in Exhibit N, almost 100 of the 599 "instances" track to IP address 13.70.25.68, which Mr. Tucker identifies as belonging to Microsoft Corporation and which he claims means that the IP address is located in Redmond, Washington. In truth, however, using Neustar's Ultra Tools to geolocate that IP address, Defendants were able to determine that the IP address in question actually belongs to Microsoft Hong Kong. *See* FSG Reply Decl., ¶6. This was true for more than 300 of the 616 supposed United States based IP address "incidents" identified by Mr. Tucker. *See id.*, ¶7.

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

4

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

account was potentially "accessed" by Defendants over a three-year period.  Of those 17 instances, 14 list the "event" resulting in a log entry as "user_rend."  *See* Tucker Declaration, Exhibit N, p. 66.  According to Cloudflare's form explanatory sheet entitled "Please_Read_First_Zone_Info_Key" (provided to Plaintiff, though not included with Mr. Tucker's exhibits, attached hereto as **Exhibit 2**), a user_rend log entry is automatically generated either when the cookie belonging to that user has expired (meaning that the user will have to manually reenter his password when he tries to login) or the user has clicked on the "forgot password" link.  It is Defendants' belief that these entries do not represent any actual use of the account by Defendants, but rather they represent automated processes effectuated by Cloudflare, hence the indication that the events took place on the Cloudflare network.  FSG Reply Decl., ¶8.

Even if this were not the case, however, in reality – and in direct contradiction of Plaintiff's representations to the Court – ***none of the events logged in the spreadsheet presented to the Court as Exhibit N to the Tucker Declaration actually have anything to do with CDN***.  In presenting to the Court excerpts of a file produced to it by Cloudflare, Plaintiff has failed to either inform the Court of the *name* of the file as produced or provide the Court with the explanatory sheet accompanying that file.  The spreadsheet as produced by Cloudflare was titled: "zone_info_avgle.csv" and was accompanied by a word document titled: "Please_Read_First_Zone_Info_Key.docx."  *See* Declaration of Frank Scardino in Support of Defendants' Reply in Support of Motion to Dismiss ("Scardino Decl."), ¶¶2-3.  These two facts are relevant because "zone information" refers ***only*** to the management of Domain Name Servers (DNS), not the management of a CDN.  FSG Reply Decl., ¶9.  This is apparent also from the "please read first" document produced by Cloudflare, which specifically states that the accompanying spreadsheet shows information concerning the management of "zone file information." Exhibit 2.

And, although this difference might seem insignificant, it is not.  Indeed, the Plaintiff itself explained the distinction in its Opposition:

> While not expanded on by the *AMA* Court, a DNS server is required for *every* web site. It connects the domain name (the web site typed into the browser by the user) with the IP address of the web site. Without a DNS, domains would never lead to the actual web site. CDN servers, as with the instant matter, are different. Web sites do not require a CDN to function. The CDN provides more efficient and faster delivery of content to the geographical area in close relation to the CDN server. CDN use itself signifies a desire to deliver content to the local area.

Opposition, p. 15, n. 7.

In other words, changes made to DNS servers are simply changes that let a computer ***anywhere in the world*** know where to look on the internet to find a specific file. Such changes have nothing to do with aiming a website at a particular location, as Plaintiff itself admits.

To recap, then, Plaintiff provided this Court with a sworn declaration in which it claimed that an attached spreadsheet showed that the Defendants utilized United States based IP addresses to modify their CDN in an attempt to maximize the performance of the Avgle.com website within the United States. In reality, though, the spreadsheet: (a) has nothing to do with CDN, (b) included mostly information about accounts other than those utilized by defendants, (c) misrepresented the locations of the IP addresses listed in the spreadsheet, and (d) drew unsupportable conclusions about the data contained therein.

Mr. Tucker also tries to mislead the Court into believing Defendants are targeting the United States, claiming that "It makes no sense to pay for CDN servers in locations that are not regularly being hit by traffic. For instance, a company would not map for servers targeting India unless the company wanted to speed up and serve India at a better rate." Tucker Declaration, ¶48. Putting aside the fact that Defendants have neither selected nor directed the location of Cloudflare's servers (FSG Reply Decl., ¶10; Fung Reply Decl., ¶4), Mr. Tucker failed to disclose to the Court that Avgle.com has only a ***free*** account with Cloudflare, a fact that

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL                    6

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

1  Cloudflare informed Plaintiffs of months ago.[4]  *See*, Cloudflare letter to Spencer D. Freeman in
2  response to subpoena dated October 5, 2020, attached hereto as **Exhibit 3** ("There is no billing
3  information for this free user.")[5]

4  Finally, as distasteful as it may be, it seems important to also make this Court
5  aware of Mr. Tucker's communications with Mr. Fung concerning the present litigation and the
6  increasingly threatening nature of those communications.  Prior to Plaintiff naming Mr. Fung as
7  an individual defendant in this action, Mr. Tucker repeatedly threatened Mr. Fung with financial
8  consequences and widespread publicity in an attempt to get Mr. Fung to reveal information about
9  his client, FSG.  *See* Email correspondence attached as **Exhibit 1 to Fung Reply Decl**.  As the
10 Court can see, those threats included: "Will has instructed their attorney to do whatever is legally
11 possible to seize your domain and hold you each financially liable" (Aug. 26, 2020); "If you are
12 able to provide us with full contact, names, addresses, payment, account, and other information
13 that allows us to accomplish our goals and objectives with the owners and other operators I
14 believe that our client would be willing to not name you in the lawsuit.  In exchange for this
15 usable information we will keep your name confidential. We will keep confidential that you are
16 the source of the information.  …We have information coming in the next two weeks from other
17 service providers. We will use that information to amend the complaint and add additional names
18 and begin to serve those parties. We hope that you choose to not be one of them.  The choice is
19 yours and I hope that you choose to help us so that we can help you" (Sept. 18, 2020); "Quick
20 reminder, you have four days.  Your choice" (Sept. 22, 2020); "[there] is a small window to not
21 have yourself named and be held liable for everything" (Oct. 9, 2020); "You don't have to reveal
22 anything to me, you can reveal it to the court and authorities, or not.  …If you change your mind,

---

[4] Prior to January of 2019, FSG did have a paid account with Cloudflare because Cloudflare only provides service level guarantees to paid users.  FSG discontinued its paid account in early 2019 to save costs.  Even when FSG had a paid account with Cloudflare, FSG did not (and could not have) selectively enabled Cloudflare's CDN servers in specific countries as this was not an option provided by Cloudflare.  FSG Reply Decl., ¶11; Fung Reply Decl., ¶5.

[5] Mr. Tucker acknowledges that he was provided with Cloudflare's responsive documents.  Tucker Declaration, ¶49 ("Pursuant to subpoena, Cloudflare produced records regarding the account and services with Avgle.com.  I was provided copies of these records for investigation and analysis.")

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

7

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

I am here.  In the meantime, you are about to become more famous" (Oct. 14, 2020); "XBiz has published the first story on the case… The South China Morning Post reached out today seeking more information. I told them any additional information may be found next week.  Will is giving you until the end of the week to settle. If nothing is agreed to in principal the complaint will be amended and include your name. Once amended, I suspect the media tracking outlets will pick it up" (Oct. 20, 2020).

Indeed, Mr. Tucker went further still, threatening Mr. Fung with *criminal liability* through statements he made to the press.  *See* **Exhibit 4**, "Japan-Based Will Co. Sues Avgle.com for Copyright Infringement," XBiz (Oct. 20, 2020)("'Will Co. was not the first to notice the piracy on Avgle,' [Tucker] said, 'but they are the first to take action. My own research shows that one of the Avgle operators may reside in the Hong Kong Special Administrative Region of the People's Republic of China and if he is under the Chinese 'Control of Obscene and Indecent Articles' ordinance, an operator of a website featuring pornographic material could face jail time and significant fines or worse.'")  This type of extortionate behavior[6] by Plaintiff's so-called expert should not be countenanced by the Court.

## II. Plaintiff's Assertions About Geotargeted Ads Are, At Best, Irrelevant.

Plaintiff also makes much of its assertion that, when it accessed the Avgle.com website using a Virtual Private Network (simulating visits from various countries), it did not always receive Geotargeted ads.  From this, Plaintiff asserts, incorrectly, that Defendants are actually aiming ads selectively at only certain countries.  The multiple inferences Plaintiff asks the Court to draw are all incorrect.

As Defendants stated in their Motion and as was supported by the Declarations of

---

[6] Ironically, "extortion" is precisely the way in which Mr. Tucker described similar behavior undertaken by the now-disgraced attorneys involved in the infamout *Prenda* copyright trolling cases.  *See* **Exhibit 5**, "Copyright Trolls: THE inside look at Prenda Law, the most accomplished Copyright Trolls to go to jail" by Jason Tucker, Sept. 6, 2019 (Recounting a presentation given by the Prenda attorneys, Mr. Tucker wrote: "John Steele was the Prenda Law mouthpiece. His sales pitch was something to the effect of… 'We're gonna send them demand letters that basically say we caught you watching Gay Black D*** Fat Booty Sex Part 27 and if you don't pay us we're going to sue you and your neighbors family.  He actually said, [their] 'church will find out'.  I'll stop right here. If you thought *extortion*, you'd be pretty f****ing close.")

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

8

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

Ming Chung Wu ("MCW Decl.") and Kam Keung Fung ("Fung Decl."), aside from two isolated instances when advertisers from China purchased ads from FSG, all of Avgle.com's advertisements have come from FSG's relationship with a single advertising broker, Tiger Media, Inc. d/b/a JuicyAds, a Canadian corporation registered in Saskatchewan ("JuicyAds"). MCW Decl., ¶34. Mr. Fung contracted with JuicyAds for Avgle.com from his workspace in Hong Kong. *Id.*, ¶35; Fung Decl. ¶13. FSG does not cause any specific advertisements to be directed to visitors from specific locations (such as Washington or the United States). MCW Decl., ¶37. To the extent that advertisements are directed to specific locations at all (a process called "geolocation"), that is done at the sole discretion of Juicy Ads. *Id.*, ¶¶37-42.

It is entirely possible (indeed likely) that the reason Plaintiff did not see geotargeted ads when it simulated visits from certain countries is that Juicy Ads did not have clients paying to display country-specific ads in those locations. Juicy Ads has the ability to geotarget ads as it sees fit (and without any input or control from Defendants). But, the fact that Juicy Ads has clients that desire such services in certain countries and not others says nothing about whether ***Defendants*** have expressly aimed the Avgle.com website at the United States. Plaintiff invites this Court to take a logical leap that is entirely lacking in logic. The Court should decline Plaintiff's invitation.

### III. The Alleged Popularity of Japanese Pornography in the United States is Irrelevant to the Court's Inquiry.

Next, Plaintiff spends a surprising amount of time in its Opposition opining about the alleged popularity of Japanese pornography within the United States.

Preliminarily, the simple fact that Japanese pornography may be popular within the United States, does not mean that it is not also popular in other parts of the world, including Japan (which by Plaintiff's own estimation is responsible for ***six times*** more visitors to the website than the United States); as well as Taiwan, Korea, and Hong Kong, all of which are responsible for more traffic to the website than the United States. *Opposition*, p. 7. Indeed, the Ninth Circuit specifically noted in *Wanat* that, unlike the website at issue in *Mavrix*, which was

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

9

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA 98110
Tel: 206.436-0900

aimed at California by virtue of its publishing content that would be of *particular* interest to Californians, the same was not true for adult entertainment websites:

> Although similar in some respects, this case materially differs from *Mavrix* in several important respects. First, Brand's website had "a specific focus on the California-centered celebrity and entertainment industries." …"Based on the website's subject matter . . . we conclude[d] that Brand anticipated, desired, and achieved a substantial California viewer base." …By contrast, ePorner lacks a forum-specific focus. As the district court noted, "the market for adult content is global," evidenced by the fact that the other 80% of ePorner's viewers were outside the United States.

*AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020).

Here, too, the market for Japanese pornography is global, as evidenced by the fact that some **93% of Avgle.com's viewers were from outside the United States**.

Nor is Plaintiff's argument bolstered in the slightest by its (frankly odd) unsupported contentions that Japanese pornography is of a higher quality, costs more to make, and (therefore) somehow leads to more advertising dollars spent on sites that include Japanese pornography. *See, e.g.,* Opposition, pp. 2-4; Decl. of Jason Tucker, ¶¶ 12-15.  Initially, there is no reason to think that Plaintiff's consultant, Jason Tucker, has any basis for these assertions. [7] Even if this were not the case, however, Plaintiff continues to misapprehend the focus of the jurisdictional inquiry.  The Court should not be concerned with whether the Plaintiff spends a lot of money producing pornography, whether it produces a quality product, or even if it produces pornography that happens to enjoy a niche audience in the United States, but rather the sole

---

[7] This would not be the first time a Federal District Court found that Mr. Tucker had gotten too far out over his skis.  In a similar case in the Southern District of Florida, Judge Ursula Ungaro rejected Mr. Tucker's proffered sworn testimony as being outside his area of expertise and without evidentiary support.  *Hydentra HLP Int., Ltd. v. Luchian*, Case No. 1:15-cv-22134-UU, Doc. 138, Omnibus Order (June 2, 2016)("In this case, the testimony of Jason Tucker is plainly offered to support the broad claim that Defendants themselves uploaded some of the copyright videos onto their websites based upon his review of the 111 IP addresses. This proposition… would require "specialized knowledge," Fed. R. Civ. P. 701, and must be proved by an appropriately credentialed expert witness to be properly admitted. …Other than being in the 'business of legal adult entertainment production, marketing, and management,' and serving as a consultant for 'the rollout of several versions of Windows Media,' there are no credentials within the Declaration pertaining to Mr. Tucker's 'knowledge, skill, experience, training, or education,'  …which would allow him to testify on these grounds. Mr. Tucker's anecdotal observations cannot support the sweeping claim for which they are being offered.")

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL                                        10

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

focus should be on the *Defendants'* connections to the United States.  The Ninth Circuit's holding in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1070 (9th Cir. 2017) is on point:

> Appellants claim that they have satisfied the express aiming requirement.  They rely on the strength of their own forum connections, coupled with evidence suggesting Acerchem UK knew of those connections and Appellants' ownership of the logos' copyrights.  *Walden* requires more.  In *Walden*, the Supreme Court rejected our conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts....  The Court found that our approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."...  The Court made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.

*Axiom Foods*, 874 F.3d at 1069-70.

### IV. **Plaintiff's Request For (Additional) Jurisdictional Discovery Should Be Denied.**

At the start of this litigation – and before Defendants had been served with the Complaint – Plaintiff sought (and received) leave from this Court to conduct early discovery, including interrogatories and document requests to nine different entities, including Cloudflare.  According to Plaintiff's motion to this Court (Docket No. 4), Plaintiffs intended to seek from these entities: "all information pertinent to the identity of the owners, operators, and principals operating the Avgle.com website, domain name, and relevant accounts. This should include, but should not be limited to, names, addresses, billing address, email exchanges or other correspondence with the relevant party, and all IP address login information for the Avgle.com domain name accounts."  Plaintiff received responses from at least four third-party entities, including Cloudflare.[8]

Plaintiff now asks the Court to allow additional (unspecified) jurisdictional discovery, asserting that such discovery "may evidence Defendants' bias to the United States Market."  Opposition, p. 25.  Plaintiff fails to explain why the discovery it was already afforded

---

[8] Plaintiff did not see fit to provide the Court with the response from PayPal (attached hereto as **Exhibit 6**), indicating that Mr. Fung did not have a US-based PayPal account or the response from Canadian domain registrar Tucows (attached hereto as **Exhibit 7**), indicating that the registration of the Avgle.com domain was effectuated through a Tucows reseller located in Laos (hence the ".la" domain in Tucows' response letter).

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

11

MANN LAW GROUP PLLC
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900

was insufficient to meet its burden, nor does it articulate specific discovery that would allow it to negate the overwhelming evidence showing that Defendants are not subject to jurisdiction in Washington or the United States. Plaintiff's belief that it "may" find evidence of a connection between Defendants and the United States is precisely the type of amorphous claim that the Ninth Circuit and this Court have rejected. *See, e.g., Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir. 1986)(upholding denial of jurisdictional discovery where plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction"); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery"); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)("The denial of Boschetto's request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion"); *Rubie's Costume Co. v. Yiwu Hua Hao Toys Co*., 2019 U.S. Dist. LEXIS 146721, at *13 (W.D. Wash. Aug. 28, 2019)("Plaintiff's allegation that Defendant may sell to other consumers in the state without asserting any conduct indicating direct targeting of Washington, is insufficient to warrant jurisdictional discovery.")

Because Plaintiff has failed to explain why the discovery it has already taken was insufficient; has failed to articulate specific additional discovery it would like to take; and has failed to explain how such discovery would lead to facts upon which personal jurisdiction could be based, its request for leave to take jurisdictional discovery should be denied.

Respectfully Submitted,

/s/ *Philip Mann*
Philip P. Mann (WSBA No. 28860)
Mann Law Group PLLC
403 Madison Ave N. Ste. 240
Bainbridge Island, Washington 98110
Tel: 206-463-0900
Email: phil@mannlawgroup.com

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

12

MANN LAW GROUP PLLC
403 Madison Ave N. Ste. 240
Bainbridge Island, WA 98110
Tel: 206.436-0900

1  /s/ *Valentin Gurvits*
2  Valentin D. Gurvits (pro hac vice)
   Frank Scardino (pro hac vice)
3  BOSTON LAW GROUP, PC
   825 Beacon Street, Suite 20
4  Newton Centre, Massachusetts 02459
5  Telephone: 617-928-1804
   Facsimile: 617-928-1802
6  vgurvits@bostonlawgroup.com
   frank@bostonlawgroup.com
7

8  /s/ *Evan Fray-Witzer*
   Evan Fray-Witzer (pro hac vice)
9  CIAMPA FRAY-WITZER, LLP
   20 Park Plaza, Suite 505
10 Boston, Massachusetts 02116
11 Telephone: 617-426-0000
   Facsimile: 617-423-4855
12 Evan@CFWLegal.com

13
   Attorneys for Defendants
14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE

I, Philip P. Mann, hereby certify that on February 5, 2021, I caused a true and correct copy of the foregoing REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION to be filed in this Court's CM/ECF system which will send notice of such filing to all parties who have appeared in this matter.

DATED:  February 5, 2021.

*s/ Philip P. Mann*
Philip P. Mann, WSBA No. 28860
Mann Law Group pllc

Reply In Support Of Motion To Dismiss
Case No. 3:20-cv-05666-RSL

14

**MANN LAW GROUP PLLC**
403 Madison Ave N. Ste. 240
Bainbridge Island, WA  98110
Tel:  206.436-0900