

CFW | Ciampa | Fray-Witzer, LLP

20 Park Plaza, Suite 505, Boston, MA 02116
(617) 426-0000 • (617) 423-4855 (facsimile)
www.cfwlegal.com

July 1, 2021

**VIA ECF**

Ravi Subramanian
District Court Executive/Clerk of Court
United States District Court for the
   Western District of Washington
1717 Pacific Avenue, Room 3100
Tacoma, WA 98402-3200

      Re:    ***Will Co., Ltd. v. Fellow Shine Group, Ltd., et al.***
           **Docket No. 20-cv-05666-RSL**

---

Dear Mr. Subramanian:

     Pursuant to Local Rule 7(n), Defendants Fellow Shine Group, Ltd. and Kam Keung Fung respectfully provide this Court with the attached supplemental authority, a decision from this Court in *Will Co. Ltd. v. Ka Yeung Lee*, et al., Docket No. 20-cv-05802-BHS.

     In the attached opinion, which was decided on almost-identical facts to those at issue in the present case, the Court dismissed the complaint with respect to all named defendants for lack of personal jurisdiction.  A similar motion to dismiss is currently pending before this Court.

     Sincerely,

     Evan Fray-Witzer

cc: All counsel (via ECF)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILL CO. LTD,

                            Plaintiff,

        v.

KA YEUNG LEE, an individual,
YOUHAHA MARKETING AND
PROMOTION LIMITED, a foreign
company, and DOES 1-20, d/b/a
THISAV.COM

                            Defendants.

CASE NO. C20-5802 BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION

        This matter comes before the Court on Defendants Ka Yeung Lee and Youhaha

Marketing and Promotion Limited's ("YMP") motion to dismiss for lack of personal

jurisdiction. Dkt. 18. The Court has considered the briefings filed in support of and in

opposition to the motion and the remainder of the file and hereby grants the motion for

the reasons stated herein.

## I.    FACTUAL & PROCEDURAL BACKGROUND

        Plaintiff Will Co. Ltd is a Japan-based adult entertainment company that sells

access to its content in the United States. *See* Dkt. 9, ¶ 1. Its headquarters are in Tokyo,

Japan, but Will Co. alleges that it targets the United States market for the purposes of selling paid memberships to access its content. *Id.* ¶¶ 6, 31. Will Co. has registered copyrights for its videos and photographs with the United States Copyright Office, some of which are the basis of this lawsuit. *Id.* ¶¶ 34–36.

Will Co. alleges that Defendants own and operate ThisAV.com and that ThisAV.com is displaying Will Co.'s copyrighted content without authorization or license. *Id.* ¶¶ 39, 46, 53. Will Co. specifically alleges that between June and July 2020 it discovered that ThisAV.com displayed thirteen of its copyright registered works over nineteen separate and distinct URLs. *Id.* ¶ 61. It alleges that it sent take down notices to ThisAV.com pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), and that receipt was acknowledged but none of Will Co.'s content was removed. Dkt. 9, ¶¶ 62–63. Will Co. thus brings claims for copyright infringement and inducement of copyright infringement pursuant to 17 U.S.C. §§ 101, *et seq. Id.* at 11–14.

When Will Co. first filed suit, it did not know the identities of all owners and operators of ThisAV.com. *See* Dkt. 5 at 1; *see also* Dkt. 1 (first complaint naming only Does 1–20 as Defendants). Will Co. therefore sought leave to conduct early discovery, Dkt. 5, and the Court granted the motion, Dkt. 8. Through this early discovery, Will Co. identified Defendants Lee and YMP as the owners and operators of ThisAV.com. *See* Dkt. 10.

Defendant Lee is a director of YMP but does not own or operate ThisAV.com in his personal capacity. Dkt. 18-1, Declaration of Ka Yeung Lee ("Lee Decl."), ¶¶ 6–8. Lee is a permanent resident of the Hong Kong Special Administrative Region of the People's

Republic of China and currently lives and works in Canada (unrelated to his position as director of YMP). *Id.* ¶¶ 3–4. He declares that the "allegedly infringing files referenced in the Complaint in this matter are user generated content, that is, content that was uploaded by users" to ThisAV.com and that he did not upload the allegedly infringing files. *Id.* ¶¶ 18–19.

Defendant YMP is a limited company registered in Hong Kong and is the owner and operator of ThisAV.com. Dkt. 18-1, Declaration of Janus Tam on behalf of Youhaha Marketing and Promotion Ltd. ("YMP Decl."), ¶¶ 1–2. YMP is operated exclusively out of Hong Kong. *Id.* ¶ 3. Like Lee, YMP asserts that it does not create or upload any of the videos of ThisAV.com and that all videos on ThisAV.com are uploaded by the website's users. *Id.* ¶ 4. YMP further asserts that it does not have any commercial relationships with any of the users of ThisAV.com. *Id.* ¶ 9.

YMP states that, from April 1, 2020 through June 30, 2020, approximately 4.6% of the user traffic of ThisAV.com came from the United States. *Id.* ¶ 56; *see also* Dkt. 18-3. ThisAV.com had nearly 1.3 million website visitors from the United States during this time period. *See* Dkt. 18-3. The majority of users during the April through June 2020 timeframe—approximately 95.4%—were based in Japan, Taiwan, and Hong Kong. YMP Decl., ¶¶ 57–58; *see also* Dkt. 18-3. Further, YMP states that from March 1, 2020 through February 28, 2021 approximately 3.9% of the user traffic of ThisAV.com came from the United States. YMP Decl., ¶ 59; *see also* Dkt. 18-4. ThisAV.com had approximately 4.5 million visitors from the United States during this year-long period.

1    *See* Dkt. 18-4. Again, the vast majority of users from March 2020 through February 2021

2    were based in Japan, Taiwan, and Hong Kong. YMP Decl., ¶ 59; *see also* Dkt. 18-4.

3          While YMP is based in Hong Kong and does not have a commercial relationship

4    with the users of ThisAV.com, it has some business connections to the United States.

5    ThisAV.com's servers are hosted by Gorilla Servers, Inc., which is based in Ogden, Utah.

6    YMP Decl., ¶¶ 14–15. ThisAV.com also utilizes Cloudflare.com ("Cloudflare"), a United

7    States-based company, for domain name resolution services and DDoS (distributed denial

8    of services attack) protection. *Id.* ¶ 16. YMP asserts that Cloudflare does not provide

9    account management for ThisAV.com's account. *Id.* ¶ 17. YMP additionally engaged

10   with GoDaddy.com, a U.S.-based company, to register a domain name, and with

11   Domains by Proxy, LLC, a U.S.-based company, for privacy services. *Id.* ¶¶ 34–36.

12         YMP also uses a website template and source code from the website

13   www.mediaxxxscript.com ("Mediaxxx") to create the general layout of its website. *Id.*

14   ¶ 31. YMP avers that Mediaxxx shut down approximately two years ago and that it is

15   unsure of what company owned Mediaxxx or what country the company operated out of.

16   *Id.* YMP asserts that the "generic" website template provided by Mediaxxx for

17   ThisAV.com contained boilerplate language, including references to "DMCA" and

18   "2257."[1] *Id.* ¶ 32.

19

20

---

21       [1] As further discussed below, Will Co. asserts that these references are evidence of
     ThisAV.com and Defendants' promise to comply with the DMCA and with 18 U.S.C. § 2257.

22   *See* Dkt. 21 at 10.

ORDER - 4

1    The revenue from ThisAV.com comes from advertisements, and YMP states that

2   almost all of the site's advertisements have come from YMP's relationship with foreign

3   advertising brokers: Tiger Media, Inc. d/b/a JuicyAds, a Canadian corporation registered

4   in Saskatchewan ("JuicyAds"), Tomksoft S.A. d/b/a PopAds, a Costa Rican joint stock

5   company ("PopAds"), and ExoClick, S.L. d/b/a ExoClick, a Spanish company based in

6   Barcelona ("ExoClick"). *Id.* ¶¶ 40–41. YMP asserts that it does not cause any specific

7   advertisements to be directed to visitors from specific locations and that, to the extent that

8   advertisements are based on geolocation, it is done at the sole discretion of Juicy Ads,

9   PopAds, or ExoClick. *Id.* ¶¶ 43–47. In sum, YMP asserts that it is not advertising

10   ThisAV.com in the United States by virtue of these advertisements. *Id.* ¶ 48.

11    Defendants Lee and YMP thus moved to dismiss the Complaint for lack of

12   personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) on March 11,

13   2021. Dkt. 18. On March 29, 2021, Will Co. responded, asserting that there is a

14   substantial connection between Defendants and the forum. Dkt. 21. On April 16, 2021,

15   Defendants replied. Dkt. 29.

16   **II.   DISCUSSION**

17   **A.    Standard**

18    To determine whether it has jurisdiction over a defendant, a federal court applies

19   the law of the state in which it sits, as long as that law is consistent with federal due

20   process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Washington grants courts the

21   maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d

22   948, 960 (9th Cir. 2004). Due process is satisfied when subjecting the entity to the court's

1  power does not "offend 'traditional notions of fair play and substantial justice.'"

2  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting

3  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]raditional notions of fair

4  play and substantial justice" require that a defendant have minimum contacts with the

5  forum state before it may be haled into a court in that forum. *Int'l Shoe*, 326 U.S. at 316.

6  The extent of those contacts can result in either general or specific personal jurisdiction

7  over the defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

8  (2011).

9  "Although the plaintiff cannot simply rest on the bare allegations of its complaint,

10  uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v.*

11  *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and

12  citations omitted). "Additionally, any evidentiary materials submitted on the motion are

13  construed in the light most favorable to the plaintiffs and all doubts are resolved in their

14  favor." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

15  Personal jurisdiction may take the form of general jurisdiction[2] or specific

16  jurisdiction. *See Helicopertos Nacionales*, 466 U.S. at 414 n.9. General jurisdiction only

17  exists in the "exceptional case" in which the corporation's activities are "so substantial

18  and of such a nature as to render the corporation at home in that State." *Tyrrell*, 137 S. Ct.

19

20  _____

[2] General jurisdiction permits a court to consider claims against a person or corporation for any conduct, even that which occurred outside the forum state. *Goodyear*, 564 U.S. at 924; *Daimler*, 571 U.S. at 126–27. A court may assert general jurisdiction over a foreign corporation

21  when the corporation's affiliations with the state "are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559

22  (2017) (quoting *Daimler*, 571 U.S. at 127).

at 1558. Will Co. does not assert that the Court has general jurisdiction over Defendants, only specific jurisdiction. Dkt. 21 at 8 & n.3.

Specific jurisdiction permits a district court to exercise jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). To prove that specific jurisdiction exists in a tort-based action, a plaintiff must demonstrate that: (1) a defendant purposefully directed its activities at the forum state, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Picot*, 780 F.3d at 1211. A defendant purposefully directs its conduct toward a forum state when its actions are intended to have an effect within the state. *Schwarzenegger*, 374 F.3d at 803. This occurs if the defendant: "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Co.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (commonly referred to as the *Calder* effects test"); *see also Calder v. Jones*, 465 U.S. 783 (1984).

If the plaintiff establishes the first two factors, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These considerations include the extent of the defendant's purposeful interjection into the forum, the burden on the defendant, conflict of sovereignty with the defendant's state, the forum state's interest, judicial efficiency,

the importance of the forum to the plaintiff's interest in convenient and effective relief, and the alternate forums. *Picot*, 780 F.3d at 1211 (citing *Core-Vent v. Novel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993)).

Defendants argue that Will Co. cannot establish that they engaged in purposeful direction toward the forum state. The Court will thus first address the "effects test" and then turn to the remaining specific jurisdiction arguments if required.

**B.     Analysis**

> **1.     Purposeful Direction**

>> **a.     Intentional Act**

For purposes of jurisdiction, a defendant acts intentionally when he acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Owning and operating a website is an intentional act for the purposes of specific jurisdiction. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020). Defendants concede that YMP's operation of ThisAV.com is sufficient to meet the first prong of the effects test but argue that Lee has not engaged in an intentional act. Dkt. 18 at 11–12. However, the Ninth Circuit concluded in *AMA Multimedia* that a partner of a company that owned a website engaged in an intentional act. 970 F.3d at 1209. Lee, like the defendant in *AMA Multimedia*, purchased and registered the domain name and purchased proxy domain services for ThisAV.com. *Compare id. with* Lee Decl., ¶¶ 10–11. Operating a passive website is an intentional act, and the Court concludes that both YMP and Lee have engaged in an intentional act.

### b.    Expressly Aimed at the Forum

Will Co. argues that YMP and Lee have expressly aimed at the United States

through:

> [the] express statements that ThisAV.com is available for viewing in the
> United States, the clear invocation of United States laws (DMCA, 2257,
> and intellectual property laws), the use of hosting servers and CDNs in the
> United States, the use of United States specific geo-targeted ads which
> generate Defendants revenue, registration of the domain names and privacy
> services in the United States, and developing millions of United States
> viewers[.]

Dkt. 21 at 19. Defendants argue that *AMA Multimedia*, in which the Ninth Circuit held

that personal jurisdiction was lacking over a defendant who ran a similar internationally-

based website, has nearly identical facts and is controlling here.

In *AMA Multimedia*, the Ninth Circuit addressed whether the court could exercise

personal jurisdiction over a foreign defendant who was running an adult-content website.

970 F.3d at 1204. The plaintiff—like Will Co.—produced and distributed adult

entertainment over the Internet and copyrighted several of its works. *Id.* The plaintiff

sued for copyright and trademark infringement, and the defendant moved to dismiss for

lack of personal jurisdiction. *Id.* In analyzing whether the defendant expressly aimed his

intentional act of operating a website, the Ninth Circuit considered the defendant's

actions in establishing and maintaining the website, registering domains, and purchasing

domain name server ("DNS") services. *Id.* at 1209.

Nearly 20% of the website traffic in *AMA Multimedia* came from the United

States, but the Ninth Circuit held that this did not establish that the defendant expressly

aimed its activities at the U.S. market. *Id.* at 1211. Furthermore, the Ninth Circuit was not

persuaded that the website's use of geo-located advertisements provided by third-party advertising companies established express aiming because the advertisements shown were not in the control of the defendant and thus did not indicate that the defendant was tailoring his website to attract U.S. traffic. *Id.*

The Ninth Circuit additionally did not hold that the use of a U.S.-based company to register certain domain names evidenced targeting of the U.S. market. The plaintiff argued that the use of a U.S.-based DNS services showed targeting of the United States "because of the speed such companies provide to U.S. website visitors." *Id.* at 1212. The Ninth Circuit agreed that "[u]se of a company that offers fast speeds in the United States could be consistent with the desire to appeal to the U.S. market" but absent evidence showing that the defendant chose the particular vendor to appeal to the U.S. market, the use of U.S.-based DNS services by itself was insufficient. *Id.*

Indeed, the Ninth Circuit recently clarified:

> Our circuit has never decided that personal jurisdiction is proper over a private foreign entity solely because that entity engaged in tortious conduct from a location outside of the United States by remotely accessing servers located in the United States. Likewise, no authority supports the proposition that the act of using a third-party company's server in the United States to host illegally-obtained information, without more, is sufficient to convey personal jurisdiction.

*Hungerstation LLC v. Fast Choice LLC*, ___ F. App'x ___, 2021 WL 1697886, at *2 (9th Cir. 2021). In sum, a plaintiff must show that a defendant operated a website using U.S.-based companies to do so "in conjunction with 'something more[.]'" *See Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). The Ninth Circuit has

considered several factors in determining whether a nonresident defendant has done

"something more," including: "the interactivity of the defendant's website, . . . the

geographic scope of the defendant's commercial ambitions, . . . and whether the

defendant 'individually targeted' a plaintiff known to be a forum resident . . . ." *Id.*

(internal citations omitted).

While Will Co. attempts to distinguish the facts here from the facts in *AMA Multimedia*, the Court agrees with Defendants that the facts are strikingly similar. Defendants' "use of hosting servers and CDNs in the United States, the use of United States specific geo-targeted ads which generate Defendants revenue, [and] registration of the domain names and privacy services in the United States" do not evidence that Defendants developed ThisAV.com to target the United States.

Without something more, Defendants' use of servers based in the United States to operate ThisAV.com does not establish that they expressly aimed at the forum. The same can be said of Defendants' use of Cloudflare—like in *AMA Multimedia*, Defendants use the DNS and CDN service "to enhance the ThisAV website's performance no matter where a user . . . may be located." Dkt. 18 at 20; *see also AMA Multimedia*, 970 F.3d at 1212 ("Use of a company that offers fast speeds in the United States could be consistent with the desire to appeal to the U.S. market. But AMA has not provided evidence to suggest that Wanat . . . was motivated by a desire to appeal to the U.S. market or generate more U.S. users, as opposed to more users globally."). And Defendants' choice in using third-party advertisers who use geo-located ads does not evidence express aiming

because Defendants are not the ones choosing which ads appear for U.S. users. *See AMA Multimedia*, 970 F.3d at 1211.

Further, although the number of U.S.-based visitors to ThisAV.com is in the millions annually, these visitors make up only a very small percentage of those who visit the website. As Defendants note, the annual percentage of U.S.-based users (approximately 4%) is significantly less than the percentage of U.S.-based users in *AMA Multimedia* (nearly 20%). *See id.* Indeed, "the market for adult content is global." *Id.* at 1210.

ThisAV.com's "clear invocation of United States law" is a closer call, however. *See* Dkt. 21 at 17–19. Will Co. argues that the explicit references to 18 U.S.C. § 2257 and the DMCA indicate that Defendants intended to target and broadcast in the United States and that they knew they would be subject to United States law. Defendants, on the other hand, assert that the "passing reference" to the United States statutes exist because of the "generic" website template provided by Mediaxxx for ThisAV.com. Dkt. 18 at 21. They additionally note that Will Co.'s claims do not arise out of ThisAV.com's terms of service. Dkt. 29 at 7–9. This issue should be resolved in the favor of Will Co., *Ochoa*, 287 F.3d at 1187, but it is not clear that these actions are legally sufficient to be "something more" for the purposes of express aiming.

Courts have held that a website's terms of service involving United States law does not always establish that there is targeting of the United States, but rather that it suggests that the website might have U.S.-based traffic. *See AMA Multimedia*, 970 F.3d at 1212; *Axiom Foods v. Acerchem International, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir.

2017). It appears that the references to United States law and ThisAV.com's statement that the website is available in the United States is not necessarily an effort to target the U.S. market, and it is more likely that these statements were included because Defendants knew that ThisAV.com could have at least some U.S.-based traffic. *See AMA Multimedia*, 970 F.3d at 1212. Further, Will Co. does not allege violations of § 2257, so that statement cannot be a basis to conclude that Defendants expressly aimed their intentional act at the forum.

Will Co. argues that Defendants' action, when taken together, evidence that they expressly aimed ThisAV.com at the forum. It is a close question whether these actions, in the aggregate, show that Defendants engaged in conduct directly targeting the forum. *See Marvix*, 647 F.3d at 1229 (internal citation omitted). But the Court concludes that Will Co., which has the burden, has failed to meet its burden to establish express aiming.

### c.   Harm in the Forum

Assuming that Will Co. can establish that Defendants expressly aimed at the forum, it would still need to show that Defendants caused jurisdictionally significant harm for the purposes of purposeful direction. "[A] corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002).

Will Co.'s principal place of business is in Tokyo, Japan, but it argues that Defendants' bad acts are occurring in the United States. Dkt. 21 at 20–21. Defendants note that Will Co.'s complaint does not allege that any visitors to ThisAV.com from the United States actually viewed or downloaded the videos alleged to violate Will Co.'s

copyrights. Dkt 18 at 21. Will Co. again relies on the size of ThisAV.com's U.S.-based visitors to argue that Defendants' alleged bad acts are occurring in the forum. Looking solely at the number of visitors from the United States, it is arguable that Defendants are causing harm within the United States. However, as discussed above, the number of visitors does not tell the whole story—the nearly 1.3 million website visitors from the United States only accounted for approximately 4.6% of the user traffic. YMP Decl., ¶ 56; *see also* Dkt. 18-3.

"The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The brunt of the harm Will Co. is suffering by ThisAV.com allegedly hosting its copyrighted material is not occurring in the United States.[3] *Cf. Calder*, 465 U.S. at 788–89. Moreover, committing a "foreign act with foreseeable effects in the forum state" without something more is insufficient to support personal jurisdiction in the Ninth Circuit. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157–58 (9th Cir. 2009). Defendants' actions are lacking "something more" than just hosting the allegedly copyrighted material and are similar to the actions of the

---

[3] Will Co. cites Ninth Circuit case law for its argument that it is not required that the brunt of the harm be suffered in the forum and that the harm in the forum element is satisfied when a defendant's intentional act has foreseeable effects. *See* Dkt. 21 at 20 (citing, *inter alia*, *Fiore v. Walden*, 657 F.3d 838, 853 (9th Cir. 2011); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010)). However, *Fiore* was reversed by the Supreme Court, *see Waldon v. Fiore*, 571 U.S. 277 (2014), and *Brayton Purcell*'s abrogation because of the Supreme Court's decision in *Walden* has been recognized by the Ninth Circuit, *see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017).

1    defendant in *AMA Multimedia*. Will Co. has not met its burden and established that

2    Defendants caused harm within the forum.

3         In sum, the United States is not "the focal point" of the website "and of the harm

4    suffered." *Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 789). Therefore, because

5    Will Co. has failed to establish purposeful direction, an essential element of specific

6    jurisdiction, *Morrill*, 873 F.3d at 1142, the Court will not address the remaining elements

7    of specific jurisdiction.

8    **C.    Jurisdictional Discovery**

9         Will Co. requests that, if the Court concludes that it has failed to establish personal

10   jurisdiction over Defendants, it be allowed to conduct jurisdictional discovery. Dkt. 21 at

11   24–25. When a party requests discovery to respond to a motion to dismiss on

12   jurisdictional grounds, the court ordinarily should grant discovery "where pertinent facts

13   bearing on the question of jurisdiction are controverted or where a more satisfactory

14   showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080,

15   1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d

16   535, 540 (9th Cir. 1986)) (discussing discovery in the context of standing). On the other

17   hand, "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion

18   when 'it is clear that further discovery would not demonstrate facts sufficient to

19   constitute a basis for jurisdiction.'" *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo*

20   *Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

21        Will Co. argues that additional "jurisdictional discovery will establish the precise

22   extent ThisAV.com is intentionally targeted to United States viewers, including internal

memorandum and correspondence regarding the United States market, contracts with

United States vendors, monies earned through United States advertisers, communications

with United States based vendors, and communications and agreements with advertiser

brokers," all of which "may evidence Defendants['] bias to the United States Market."

Dkt. 21 at 25. Defendants oppose Will Co.'s request for jurisdictional discovery. Dkt. 29

at 9–11. They note that Will Co. already sought leave to conduct early discovery, Dkt. 5,

and that the Court granted Will Co.'s motion, Dkt. 8. They further argue that Will Co. has

failed to articulate what specific discovery it would like to take and has failed to explain

how such discovery would lead to facts upon which personal jurisdiction could be based.

Dkt. 29 at 11.

However, Will Co. seeks additional jurisdictional discovery to establish that

Defendants expressly aimed at the forum. But the Court has concluded that the United

States is not the focal point of the harm suffered. The additional discovery requested does

not address the alleged harm in the forum. Absent such harm, Will Co. has not

established that Defendants engaged in purposeful direction sufficient to establish

personal jurisdiction. Will Co.'s jurisdictional discovery request is therefore DENIED,

and Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

**D.      Remaining Defendants**

After conducting early discovery, Will Co. amended its complaint and named Lee

and YMP as Defendants, but kept Does 1–20 as Defendants as well. *See* Dkt. 9. It is

unclear whether Will Co. intends to name additional defendants in this case or if it only

intended to name Lee and YMP as the owners and operators of ThisAV.com. The Court

1   therefore requests Will Co. to submit a status report informing the Court whether it

2   intends to name additional defendants or whether this case can be closed as Defendants

3   Lee and YMP have been dismissed.

4                                    **III.  ORDER**

5          Therefore, it is hereby **ORDERED** that Defendants Lee and YMP's motion to

6   dismiss for lack of personal jurisdiction, Dkt. 18, is **GRANTED**. The Clerk shall

7   terminate Defendants Lee and YMP as parties to this case.

8          It is further **ORDERED** that Plaintiff Will Co. shall submit a status report

9   regarding the remaining Doe Defendants no later than **July 16, 2021**.

10         Dated this 30th day of June, 2021.

11

12

13                                    BENJAMIN H. SETTLE
                                      United States District Judge

14

15

16

17

18

19

20

21

22