UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILL CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> KAM KEUNG FUNG, *et al.*, <br><br> Defendants. | Cause No. C20-5666RSL <br><br> ORDER |

This matter comes before the Court on "Defendants' Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction." Dkt. # 23-1.[1] Plaintiff Will Co. Ltd., a Japanese limited liability company, manages a library of over 50,000 adult entertainment movies which it offers to the public for viewing for a fee. Defendant Fellow Shine Group Ltd. ("FSG") is a British Virgin Islands limited liability company that operates out of Taiwan, and defendant Kam Keung Fung is a resident of Hong Kong. Plaintiff alleges that defendants jointly own and/or operate the website Avgle.com, which allows users to upload and view adult videos. Will Co. discovered that its copyrighted works were being displayed on Avgle.com and filed this lawsuit seeking injunctive relief, damages, disgorgement of profits, and the costs of suit. Defendants have moved to dismiss all claims based on a lack of personal jurisdiction.

---

[1] Pursuant to LCR 7(b)(1), argument in support of a motion must be submitted as part of the motion itself, not in a separate document. Defendants' introductory motion (Dkt. # 23) has not been considered.

ORDER - 1

It is Will Co.'s burden to establish that this Court can properly exercise jurisdiction over defendants' persons. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Because the motion to dismiss will be decided on the written submissions of the parties rather than an evidentiary hearing, Will Co. need only make a *prima facie* showing of jurisdictional facts to withstand dismissal. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). This *prima facie* standard "is not toothless." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). While the undisputed allegations of the complaint will be taken as true and conflicts in affidavits will be resolved in Will Co.'s favor, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), disputed allegations cannot establish jurisdiction, *Boon Glob.*, 923 F.3d at 650. Rather, Will Co. must come forward with evidence in support of the jurisdictional fact alleged.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

## BACKGROUND

Defendant FSG hired a Hong Kong company, Awesapp Ltd., to provide general software development services related to the creation and maintenance of Avgle.com. Defendant Fung is a director of Awesapp and, working from Hong Kong, performed or oversaw almost every aspect of the website's development. Awesapp purchased the domain name Avgle.com and adapted an existing website template and source code to fit the new website's needs.[3] It then

---

[2] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

[3] Mr. Fung states that Awesapp "was hired by FSG to adapt source code from adultvideoscript.com ("AVS") for the needs of Avgle.com" and that he "used the English language version of the template because it was the only language available." Dkt. # 23-3 at ¶ 7. FSG asserts that

ORDER - 2

took steps to make sure the website was universally accessible. Since its inception, Avgle.com has been hosted on servers in the Netherlands: all of the files that have been uploaded to and displayed on the website are stored on origin servers in that country. To increase access speeds, Awesapp entered into a relationship with Cloudflare, Inc., a U.S. company, to gain access to Cloudflare's content delivery network ("CDN"). A CDN is a network of servers that are strategically placed around the globe to bring content physically closer to the user and reduce delays. The network caches content in edge servers to facilitate transfers, take the load off of origin servers, and avoid bottlenecks in the network. According to its website, Cloudflare has servers in over 200 cities around the world, spanning over 100 countries. Awesapp uses histats.com to track website traffic and obtain visitor analytics.

In addition to his website development and maintenance tasks, Mr. Fung also oversaw Avgle.com's advertising program. Under his direction, FSG contracted with Tiger Media, Inc., d/b/a JuicyAds, a Canadian advertising broker. FSG makes pop-up space on Avgle.com available to JuicyAds, which in turn sells that space to companies or individuals wanting to advertise to Avgle.com users. JuicyAds contracts with the advertisers, negotiating the terms on which the pop-ups will be seen. FSG is not involved in those negotiations, but it surmises that some of the advertisers choose to specify the countries in which their advertisements will appear and/or the type of user at which their advertisements will be targeted. It is unclear whether FSG is paid a flat fee per advertisement or has a profit-sharing arrangement with JuicyAds, but it has earned approximately $300,000 from advertisements placed by JuicyAds. In addition, Avgle.com provides an avenue for direct advertisement inquiries which has, to date, resulted in two

---

it was Mr. Fung who obtained the AVS template and that it contained the references and links to U.S. law that are found at the bottom of the Avgle.com site. Dkt. # 23-3 at ¶ 31.

ORDER - 3

advertising agreements with Chinese companies.

## DISCUSSION

**A. Specific Jurisdiction Under Fed. R. Civ. P. 4(k)(2)**

Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The parties agree that plaintiff's jurisdictional claim should be evaluated under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2), which authorizes the exercise of personal jurisdiction where (1) the claim arises under federal law, (2) defendant is not subject to the personal jurisdiction of any state court, and (3) the court's exercise of jurisdiction over defendant comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). At issue in this case is the third requirement.

Due process requires that a defendant who is not present in the forum has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [defendant] and the forum state, we consider contacts with the nation as a whole." *Wartsila N. Am.*, 485 F.3d at 462. In the context of a copyright infringement claim, a defendant will have sufficient "minimum contacts" with the forum to warrant the exercise of jurisdiction if the defendant "purposefully directed his activities" toward the United States, the claim "arises out of or relates to the defendant's forum-related activities," and "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must

ORDER - 4

be reasonable." *AMA Multimedia*, 970 F.3d at 1208 (internal citations omitted). Plaintiff has the burden of establishing the first two prongs. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,1068 (9th Cir. 2017).

The conduct of which defendants are accused took place entirely outside the United States. In this context, the analysis focuses on the effects of defendant's conduct within the forum and indications of their intent. In particular, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix*, 647 F.3d at 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). For personal jurisdiction purposes, "a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *AMA Multimedia*, 970 F.3d at 1209 (quoting *Schwarzenegger*, 374 F.3d at 806). FSG acknowledges that its ownership and operation of the Avgle.com website is a jurisdictionally sufficient "intentional act." Dkt. # 23-1 at 12. Mr. Fung argues, however, that because he is neither the owner nor the operator of Avgle.com, he has not engaged in a comparable intentional act that would support the exercise of jurisdiction over him. The Court disagrees. Mr. Fung personally performed or oversaw almost every aspect of Avgle.com's development, including purchasing the domain name, adapting a template and source code to create the website, and taking steps to ensure that the website was universally accessible. That he was acting in his capacity as a director of Awesapp does not change the fact that he acted with an intent to perform the real, physical acts that gave rise to Avgle.com. Mr. Fung's actions were intentional acts which satisfy this first prong.

The next issue is whether FSG and/or Mr. Fung "expressly aimed" their intentional acts at

ORDER - 5

the United States. Simply knowing that harm might be inflicted on a plaintiff in the United States does not, in and of itself, establish the express aiming element. Rather, the focus of the analysis is "on defendant's intentional conduct that is aimed at, and creates the necessary contacts with, the forum state." *AMA Mulitmedia*, 970 F.3d at 1209 n. 5 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017), and *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Plaintiff contends that FSG and Mr. Fung are subject to specific jurisdiction in the United States because they expressly aimed tortious conduct at the forum by: (1) maintaining a globally-accessible website that appeals to and profits from an audience in the U.S.; (2) targeting advertisements based on the user's presence in the United States; (3) engaging a CDN service to enable the faster and more efficient display of Avgle.com content to viewers in the United States; (4) actively managing the Cloudflare account using United States IP addresses; and (5) representing that the site complied with U.S. law, in particular the Digital Millennium Copyright Act ("DMCA") and 18 U.S.C. § 2257.

      The Ninth Circuit has noted the difficulty of determining "whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix*, 647 F.3d at 1229. Merely operating a universally accessible website does not, standing along, satisfy the express aiming prong: there must be "something more," namely conduct targeting the relevant forum, to constitute express aiming. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002).

      In *Mavrix*, the Ninth Circuit found that a website's operators had expressly aimed at the forum where the universally accessible website "appeals to, and profits from, an audience in a particular state." 647 F.3d at 1231. Mavrix was a Florida company in the business of selling photos of celebrities who had connections with California. The defendant, Brand Technologies,

ORDER - 6

was an Ohio corporation that operated the website celebrity-gossip.net. Mavrix alleged that Brand uploaded thirty-five of Mavrix' copyrighted photos to celebrity-gossip.net. Mavrix filed a copyright infringement lawsuit in the Central District of California, which Brand moved to dismiss on the ground that it was subject to jurisdiction only where the two parties resided. The court found that Brand had done "something more" than simply operate a website that happened to be accessible in California. Brand had:

- hired a California firm to maintain the website;
- hired a California company to solicit advertisers for celebrity-gossip.net;
- hired a California wireless provider to design and host a mobile phone version of the website;
- contracted with a California-based national news site to promote each other's top stories; and
- profited from third-party advertisements for jobs, hotels, and vacations in California.

Most importantly, Brand's website had "a specific focus on the California-centered celebrity and entertainment industries." 647 F.3d at 1230. It continuously and deliberately exploited the California market for commercial gain through content that was of special interest to Californians and paid advertisements directed to Californians. There was also evidence that Brand knew that its user base was centered in California. "Based on the website's subject matter, as well as the size and commercial value of the California market, [the Ninth Circuit concluded] that Brand anticipated, desired, and achieved a substantial California viewer base . . . [that was] an integral component of Brand's business model and profitability." *Id.* In those circumstances, "it does not violate due process to hold Brand answerable in a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians. *Id*.

ORDER - 7

Plaintiff relies heavily on *Mavrix* to argue that FSG and Mr. Fung expressly aimed their intentional acts at the United States. There are, however, significant distinctions between the conduct of Brand and that of defendants. Avgle.com was designed, maintained, and hosted outside the United States. Although it is universally accessible and defendants track visitor analytics, those analytics show that the United States makes up approximately 6-8% of Avgle.com traffic. Japan, on the other hand, is far and away the most significant customer of what Avgle.com is selling at over 40% of the viewer base. Whereas Brand hired an advertising broker located in California, defendants hired a Canadian company to sell advertising space on Avgle.com. Plaintiffs have not provided any information regarding the comparative percentages of advertisements placed by U.S. companies versus companies from other countries, the percentage of U.S. goods, services, or experiences sold, or the percentage of advertising revenue associated with U.S. consumers. The only intentional act that was arguably centered on the U.S. is the hiring of Cloudflare, a U.S. company tasked with bringing Avgle.com content to users more quickly through a global network of servers. Plaintiff hypothesizes that defendants engaged Cloudflare to better serve U.S. customers and argues that the relationship is proof of express aiming. Cloudflare's services are global, however, speeding content delivery to users around the world. There is no evidence that defendants chose Cloudflare in order to focus on the United States, nor is there any evidence that they have influenced - or even had the ability to influence - the location of the CDN servers Cloudflare utilizes to perform its assigned tasks.

      This case is more analogous to *AMA Multimedia* than *Marvix*. The foreign defendant in *AMA Multimedia*, Marcin Wanat, was the Polish operator of an adult video website which, like Avgle.com, allowed users to upload content, did not charge users to access the site, used a third-party advertising broker to place advertisements on the sites and generate revenue, and gave

ORDER - 8

advertisers the option to target their ads based on the user's perceived location. Unlike Avgle.com, the website in *AMA Multimedia* was registered through a U.S. company, over 19% of its visitors were from the U.S., and the U.S. was its largest market. The Ninth Circuit rejected AMA Mutlimedia's argument that Wanat expressly aimed the website at the U.S. market. The Ninth Circuit noted that, unlike the facts in *Marvix*, the subject matter of Manat's adult video website was not of special interest to or otherwise focused on the United States market. Rather, the website lacked "a forum-specific focus" in that "the market for adult content is global." *AMA Multimedia*, 970 F.3d at 1210. The same can be said here. Plaintiff offers no evidence regarding the percentage of U.S.-produced or -uploaded content found on Avgle.com. Even if such evidence existed, the Ninth Circuit has found that where website "content is primarily uploaded by its users, . . . the popularity or volume of U.S.-generated adult content does not show that [defendant] expressly aimed the site at the U.S. market." *Id*. (citing *Walden*, 571 U.S. at 284 ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum State.")). Nor would the foreseeability of U.S.-based users, standing along, support a finding of express aiming. *Id.* at 1210-11 (citing *Walden*, 571 U.S. at 289) (rejecting the Ninth Circuit's conclusion that a defendant's knowledge of a plaintiff's strong forum connections plus foreseeable harm in the forum comprises sufficient minimum contacts)).

  *AMA Multimedia* expressly rejected plaintiff's contention that geotargeted advertising established express aiming. Tailoring advertisements based on the perceived location of the user simply means that the advertisements are directed at every forum in which users can be found: it does not establish that the website was expressly aimed at any particular forum. Plaintiff asserts

ORDER - 9

that geotargeted ads are not seen in every country, but, even if true,[4] there is no indication that defendants had any input on whether JuicyAds offered geotargeting to its clients or which advertisers chose that option. Absent some evidence that defendants insisted that geotargeting be offered to U.S. advertisers or otherwise created incentives that favored such services in this forum, third-party conduct that targets advertising toward certain users does not establish that defendants expressly aimed their conduct at the U.S.

The same analysis applies to plaintiff's contention that the use of a CDN shows express aiming at the United States. To the contrary, Cloudflare's network of servers speeds delivery of content to users everywhere through the use of servers placed closer to the viewer than the origin server in the Netherlands. A viewer in the United States would enjoy faster download speeds via U.S.-based servers while content for a viewer in Japan would be delivered via servers in Asia. There is no evidence that defendants control the servers used to deliver content to Avgle.com users. Absent some indicia that defendants chose a Cloudflare package that focused on the United States or otherwise directed its server resources toward the forum, the use of a CDN does not establish that Avgle.com was tailored to exploit the U.S. market or otherwise expressly aimed at the forum.[5]

Plaintiff's last argument - that the inclusion of references to U.S. law on its website

---

[4] Plaintiff's survey of advertisements shown in France, Taiwan, Australia, Canada, Germany, and the U.S. revealed geotargeted ads only in the U.S. Plaintiff's choice of "test" countries is unexplained, however, and ignores the largest Avgle.com user (Japan at 48.7%). Of the countries who make up the top ten users of Avgle.com, plaintiff surveyed only three of them. Plaintiff has failed to raise a plausible inference that advertisements are targeted only at U.S. users.

[5] Plaintiff's contention that defendants engaged with Cloudflare hundreds of times to manage its account has been largely debunked. With regards to the few log-ins that may be attributable to Mr. Fung, plaintiff has not shown how managing an account with a service provider constitutes express aiming at the United States, especially where the services at issue are global in nature.

ORDER - 10

establishes express aiming - also fails. It is undisputed that defendants knew Avgle.com would be accessible in the United States and that it was foreseeable that it would have users in the U.S. who uploaded content to the website. Announcing the legal standards and duties governing any such use reflects the expected reality but does not, in the context presented here, reveal a focus on the forum. Regardless, defendants have provided evidence that these references are mere artifacts, part of the English-language template Mr. Fung modified to create Avgle.com. Based on the current record, the references to the DMCA and 2257 do not establish express aiming.

Plaintiff has not shown that the United States was "the focal point" of Avgle.com or defendants' conduct in creating and maintaining the site. *Walden*, 571 U.S. at 287 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). It has not, therefore, shown express aiming or purposeful direction, and the Court lacks jurisdiction over defendants' persons.

**B. Jurisdictional Discovery**

Plaintiff requests that, if a more satisfactory showing of jurisdictional facts is necessary, it be permitted to conduct discovery related to issues of jurisdiction. Plaintiff's claim of personal jurisdiction over FSG and Mr. Fung is not attenuated: it is entirely possible that the U.S. market for adult videos guided the development of Avgle.com and its revenue structure. At present, the evidence reveals a worldwide or Asian focus, but additional discovery regarding, inter alia, the business plan for defendants' foray into on-line adult entertainment, the circumstances under which an English language website with prominent reference to U.S. law was chosen as a template, how and why that template was edited, the terms under which Cloudflare provides CDN services, the nature of the arrangement with JuicyAds and/or the advertisers it procures, and the percentage of U.S.-based content and revenues could materially alter the analysis. Plaintiff will, therefore, be given an opportunity to take jurisdictional discovery from defendants.

ORDER - 11

For all of the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction (Dkt. # 23-1) is taken under advisement. Plaintiff shall have ninety days in which to conduct jurisdictional discovery and file an amended response to the motion to dismiss. The motion to dismiss will be renoted for the second Friday after the response is filed. If no amended response is filed within ninety days, the motion to dismiss will be granted. Defendants may file an amended reply on or before the note date.

Dated this 19th day of July, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER - 12