The Honorable David G. Estudillo

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# TACOMA DIVISION

| | |
|---|---|
| WILL CO. LTD. a limited liability company organized under the laws of Japan, Plaintiff, vs. KAM KEUNG FUNG, aka 馮 錦 強, aka FUNG KAM KEUNG, aka FUNG KAMKEUNG, aka KUENG FUNG, aka KEUNG KAM FUNG, aka KAM-KEUNG FUNG, aka KEVIN FUNG, an individual; FELLOW SHINE GROUP LIMITED, a foreign company, and DOES 1-20, d/b/a AVGLE.COM, | Case No. 3:20-cv-05666-DGE |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS TO COMPEL

### Introduction

This case should and must be dismissed. Plaintiff's own Motions to Compel demonstrate that this case does not belong, has never belonged, and cannot properly remain, here.

In its July 19, 2021 Order (*See* Docket No. 43) this Court correctly held that Plaintiff had failed even to make a *prima facie* showing of personal jurisdiction over Defendants. Nevertheless, the Court granted Plaintiff an opportunity to conduct limited jurisdictional discovery to see if Plaintiff might, somehow, show what it couldn't show before. Plaintiff saw this Court's Order as a green light to conduct far-reaching, jurisdictionally irrelevant discovery, serving Fellow Shine Group Limited with 31 separate document requests and Kam Keung Fung with 24 separate document requests, the vast majority of which had little or no connection to any jurisdictional issues.

And, despite being provided with responses and documents relevant to the jurisdictional issues (*and again failing to adduce any evidence whatsoever to show personal jurisdiction*), Plaintiff instead filed the present Motions to Compel, blaming *Defendants* for its inability to show what the facts simply will not support: namely that Defendants have the necessary connections to the United States to support an exercise of personal jurisdiction.

As a reminder for the Court: Plaintiff, a private Japanese limited liability company headquartered in Tokyo brought the present this action against a Chinese-born individual (a permanent resident of Hong Kong) and a foreign corporation based in the British Virgin Islands, concerning a website that is: managed out of Taiwan; supported by ads placed on the website by a Canadian ad broker (that was engaged from Hong Kong); hosted on servers located in the Netherlands; displaying user-generated videos with Japanese titles that are primarily in the Japanese language. Because Defendants (and Plaintiffs' claims) lack any relevant, continuing, or substantial connection to Washington or to the United States as a whole, Defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2).

On July 19, 2021, after a full briefing by the Parties, this Court found that Plaintiff had failed to make even a *prima facie* showing that the Court could exercise personal jurisdiction over Defendants consistent with the Constitution's due process requirements.[1]  *See* Docket No. 43.  Nevertheless, finding that it was at least *plausible* that Plaintiff might be able meet its burden if provided with the opportunity to conduct some limited jurisdictional discovery, the Court deferred dismissing the action to afford Plaintiff the opportunity to take limited discovery that might support its jurisdictional claims.

---

[1] Plaintiff in this action filed a near-identical action against another foreign defendant in this Court.  There, the Court dismissed the Complaint for a lack of personal jurisdiction and denied Plaintiff's request for jurisdictional discovery.  *See Will Co. Ltd. v. Yeung Lee,* No. C20-5802 BHS, 2021 U.S. Dist. LEXIS 122635 (W.D. Wash. June 30, 2021).  A copy of that decision is docketed in this case as Docket No. 42.

1  Instead, Plaintiff saw this Court's Order as the proverbial "camel's nose under the tent,"
2  serving Defendants with a barrage of document requests largely unrelated to the jurisdictional
3  question at hand.  In responding to Plaintiff's requests, Defendant Fellow Shine Group, Limited
4  ("FSG") and Defendant Kam Keung Fung ("Mr. Fung") limited their responses and production
5  to documents that either demonstrated – or could conceivably be said to relate to – connections
6  between Defendants and the United States.

7  Dissatisfied with Defendants' responses, Plaintiff brought the present Motions to
8  Compel, arguing that it is entitled not only to the targeted discovery actually ordered by this
9  Court, but rather the type of wide-ranging discovery that is only allowed once a Court has
10 satisfied itself that it has personal jurisdiction over the Defendants.  Put simply, Plaintiff has
11 been provided with everything to which it is entitled.  That Plaintiff *still* cannot demonstrate a
12 connection between Defendants and the United States is not a function of Defendants' failure to
13 produce relevant discovery, but rather the unavoidable fact that no such connection exists.

14 Accordingly, and for the reasons discussed below, Plaintiff's motion should be denied;
15 the Court should dismiss the complaint for the reasons stated in its Order of July 19, 2021; and
16 the Court should award Defendants their reasonable attorney's fees incurred in opposing
17 Plaintiff's motions.

## **ARGUMENT**

19 In moving to compel additional responses to Plaintiff's requests for documents, Plaintiff
20 relies almost entirely on the general proposition that, under Rule 26(b)(1), discovery requests are
21 to be interpreted broadly.  In so doing, Plaintiff first ignores the introductory words of that Rule:
22 "Unless otherwise limited by court order…."  And, although Plaintiff makes passing mention of
23 the limitations placed on jurisdictional discovery by the Courts, it then proceeds as if such limits
24 do not exist.

As this Court and other federal courts have properly recognized, a plaintiff that is permitted to conduct jurisdictional discovery is entitled only to conduct such discovery "to the extent that it is 'precisely focused discovery aimed at addressing matters relating to personal jurisdiction.'" *Cabell v. Zorro Prods.*, 294 F.R.D. 604, 608 (W.D. Wash. 2013), *quoting U.S. ex rel Barko v. Haliburton Co.*, 270 F.R.D. 26, 28 (D.D.C. 2010)(quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352, (D.C. Cir. 2000)("We cannot tell whether jurisdictional discovery will assist GTE on this score, but it is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction.") When Courts permit a plaintiff to pursue such "precisely focused discovery," it is with the understanding that "Plaintiff must, at this stage of the proceedings, constrain his inquiries to facts that are relevant to establishing either general or specific jurisdiction…." *Cabell, supra. See also Ferrie v. Woodford Research, Ltd. Liab. Co.,* 2020 U.S. Dist. LEXIS 124135, at *37-38 (W.D. Wash. July 14, 2020)(granting jurisdictional discovery and instructing that "the discovery should focus on the Woodford Defendants' contacts with Washington State, including their viewer and customer base, and whether their contacts with Ferrie are sufficiently intertwined with the forum to justify exercising jurisdiction).

In the present case, because Plaintiff failed to tailor its inquiries and, instead, went on a broad fishing expedition, FSG limited its responses so as to fully answer the inquiries *to the extent that the responses would be relevant to questions of jurisdiction.* And, when Plaintiff's counsel asked for clarification with respect to responses where FSG indicated that it had no relevant documents (communications, contracts, etc.) *with* U.S. entities, it also had no related documents that *referenced* the United States.  *See* **Exhibit 1.**  Not only were such responses appropriate, they provided Plaintiff with precisely that which this Court ordered: discovery into FSG's contacts with the United States or concerning the United States.

**SPECIFIC REQUESTS AND RESPONSES**

Plaintiff groups its arguments concerning specific requests into groups of similar categories. For the Court's convenience, Defendants do the same.[2]

1. **Requests Nos. 3-6 to FSG/Requests Nos. 1-4 to Mr. Fung[3]**

As Plaintiff states, requests 3-6 each deal with the hosting companies that service the Avgle.com website. Specifically:

● Request No. 3 sought all *contracts* with hosting companies (including Cloudflare). Preliminarily, although Plaintiff refers to "Cloudflare" in its requests and motion as a "hosting company," Cloudflare does ***not*** host Avgle's servers, nor has it ever done so. As the Court may recall, Avgle's servers are hosted by a company in the Netherlands and have been since its creation. *See* Defendants' Memorandum of Law in Support of its Motion to Dismiss, pp. 2-*3* ("The servers for Avgle.com (which store all the files displayed on the Avgle.com website, including the files that Plaintiff alleges infringe on its copyrights) are located in the Netherlands, and have been located in the Netherlands since the launch of Avgle.com. MCW Decl., ¶11. The website hosing company that presently hosts Avgle.com is a company named Novogara BV, which is located in Amsterdam, Netherlands. MCW Decl., ¶13. Novogara BV has hosted Avgle.com since July 2018 and prior to Novogara BV, a different hosting company, also located in the Netherlands, hosted Avgle.com. Id.")

Nevertheless, in response to this request, Defendants produced Cloudflare's terms of service (which provide the only "contractual" terms between FSG and Cloudflare). Additionally, Defendants clarified that FSG had no hosting contracts with U.S.-based companies

---

[2] The actual requests and responses are attached to the Declaration of Spencer Freeman, submitted by Plaintiff with its Motion to Compel.

[3] Most of the requests made to the Defendant are identical. Where this is the case, for the sake of simplicity, Defendants refer to the Document Request number in Plaintiff's requests to FSG.

and that FSG had no contracts with foreign-based companies concerning hosting content in the United States or directing such content at the United States. In other words, to the extent that Plaintiff might be legitimately inquiring into whether there were any documents concerning or reflecting either hosting content within the United States or users from the United States accessing content hosted on computers located outside the United States, no such documents exist.

- Request No. 4 sought all *invoices* from hosting companies concerning the hosting of the website's content. Here, too, Defendants responded that they had no invoices from any hosting companies located within the United States or any hosting companies located outside the United States but hosting Avgle's content on servers located in the United States. And, the clarification indicated that Defendants had no invoices that in any way reference the United States. So, for example, if Plaintiff were trying to determine whether Defendants had invoices that would suggest that FSG was paying a host for servers specifically designed to service US-traffic (as opposed to website traffic from the entire world), Defendants have fully and completely responded that they have no such documents.

- Request No. 5 sought all *payments* made to hosting companies by FSG in connection with the hosting of the website's content. This, of course, is simply the flipside to request no. 4 and, similarly, the request is only a "precisely focused" request to the extent that it is geared toward the jurisdictional inquiry. As with Request No. 4, Plaintiff's inquiry is appropriate only to the extent that it might show that FSG made payments to a host specific to serving the U.S. market. And, again, it did not so it has no responsive documents to produce that are relevant to jurisdiction.[4]

---

[4] As is noted below, FSG received two invoices from Cloudflare (totaling $450) and made a payment to Cloudflare, though these invoices were not related to hosting services. FSG produced these documents and discusses them

- Request No. 6 sought all *communications* with hosting companies an inquiry which, on its face, is representative of the overbroad nature of Plaintiff's requests. The operators of a website might have a myriad of reasons to communicate with its hosting providers concerning worldwide access to its website, none of which would have any relation whatsoever to the question of personal jurisdiction. In response, Defendants produced emails between FSG and Cloudflare for the relevant time frame, which represented the only communications that FSG had with a U.S.-headquartered company.[5] And, again, Defendants clarified that they had no communications with *any* hosting company (located anywhere in the world) specific to providing access to FSG's website by U.S. visitors (as opposed to worldwide access to the website).[6] Here, too, Plaintiff has been provided with everything that might be considered relevant to a jurisdictional inquiry.

### 2. Requests Nos. 7-10 to FSG/Request Nos. 5-8 to Mr. Fung

Requests Nos. 7-10 each deal with relationships between FSG and various payment processing companies (such as Paypal[7]) including all amounts paid to FSG or by FSG. Request No. 7 sought *contracts* with payment processing services; request no. 8 sought *invoices* sent by payment processing services; request no. 9 sought documents reflecting *payments to* payment

---

below, in connection with the requests that ask for such documents. They are not mentioned here simply because those documents are unrelated to hosting services.

[5] Although Cloudflare may be headquartered in the United States, it is an international company with offices in Beijing, Brussels, Lisbon, München, London, Singapore, Sydney, and Tokyo. *See* https://www.cloudflare.com/about-overview/. As FSG made clear in its motion to dismiss, Defendant Fung, who engaged Cloudflare to provide hosting services for Avgle.com, did so using the automated self-service options on Cloudflare's website from his workspace in Hong Kong. Fung Decl., ¶10.

[6] As discussed in Defendants' Memorandum in Support of their Motion to Dismiss, FSG's use of Cloudflare had nothing to do with aiming its website at the United States. Memorandum, p. 16 ("Indeed, according to Cloudflare's website, the company provides such services to more than "25 million internet properties" and it "serve[s] data from 200 cities in over 100 countries around the world." See Declaration of Frank Scardino ("Scardino Decl."), ¶2. According to Cloudflare's website, it has dozens of servers located throughout cities in Asia, including Tokyo, Hong Kong, Osaka, Taipei, Shanghai, and Guangzhou. Id., ¶3."); p. 17 ("FSG utilizes Cloudflare's services (as do 25 million others worldwide) to enhance the AVGLE's website's performance no matter where a user (including the 93% of users located outside the United States) may be located.")

[7] Here, too, Plaintiff displays a strangely US-centric viewpoint. To the extent that FSG has dealt with Paypal at all, it has been through Paypal's United Kingdom entity.

processing companies; and request no. 10 sought all *communications* with payment processing companies.

Again, such documents can only be conceivably relevant in the context of jurisdictional discovery to the extent that they might demonstrate some connection between FSG and the United States. Plaintiff first claims that such documents (which, incidentally, would be proprietary and confidential even if they were relevant to the present inquiry, which they are not) are relevant because they might demonstrate "payments coming from United States users." This is a red herring. As Plaintiff is well aware (and as FSG has already stated under oath in connection with its motion to dismiss): "Avgle.com is free to use: no users from the United States (including Washington), or anywhere else for that matter, make any payments to FSG for viewing any videos on the website." Memorandum in Support of Motion to Dismiss, p. 2 and Declaration of Ming Chung Wu, ¶32.

Plaintiff also claims that such documents might reveal payments to or from FSG from U.S. based companies. Defendants' responses and clarification, however, indicate that there were but two documents that reflected payments to or from US based companies (and these two pages were produced to Plaintiff). This is not surprising. As FSG made clear, its revenues are derived entirely from advertising and its only advertising agreements are with non-U.S. based advertising brokers. *Defendants' Memorandum,* p. 3 ("All of Avgle.com's revenue comes from advertisements. Id., ¶33. Almost all of Avgle.com's advertisements have come from FSG's relationship with a single advertising broker, Tiger Media, Inc. d/b/a JuicyAds, a Canadian corporation registered in Saskatchewan ("JuicyAds"). Id., ¶34.")

And, FSG made no payments to U.S. companies (with the exception of two months' worth of payments made to Cloudflare (totaling $450), which were made before FSG dropped

the service in favor of Cloudflare's free offerings). The invoices for these two months (and a record of payment) were produced to Plaintiff.

Again, then, when Plaintiff's requests are "precisely focused" to address the only relevant inquiry permitted by the Court, namely into documents that might demonstrate a connection between FSG and the United States, there simply are no responsive documents to produce because no connection actually exists.

### 3.  Requests 11-14 to FSG/Request Nos. 9-12 to Mr. Fung

Requests 11-14 each deal with FSG's relationship with its advertising brokers. In truth, there is but a single advertising broker, Tiger Media, a Canadian Corporation, as Defendants indicated in their Memorandum in Support of its Motion to Dismiss and quoted above. In large part, the fact that FSG has but a single adverting broker which is a non-US company renders each of the requests irrelevant to the sole question at issue: whether FSG has the requisite contacts with the United States necessary for an exercise of personal jurisdiction to be constitutionally permissible. The relationship between FSG and a non-U.S. entity, which has no special provisions for the ads being shown to U.S. visitors to the website, cannot possibly be relevant to the Court's inquiry. Consideration of the individual requests (and responses) makes this all the more clear.

Request No. 11 sought all *contracts* as between FSG and any advertising broker (including Tiger Media). As noted above, Tiger Media is FSG's only advertising broker. And, although Defendants might have withheld even the agreement with Tiger Media (inasmuch as Tiger Media is a Canadian company), they *did not do so* because there was at least a plausible argument that Plaintiff was entitled to see the Agreement with Tiger Media so that it could determine for itself whether FSG: (a) aimed ads at the United States, or (b) received more money from Tiger Media for ads that Tiger Media chose to display to U.S. visitors to Avgle.com.

Accordingly, FSG produced its agreement with Tiger Media. A true and accurate copy of the Tiger Media contract is attached hereto as **Exhibit 2.**

The production of this Agreement puts the lie to all of Plaintiff's speculations about what such agreements "might" reveal about FSG specifically profiting from ads directed at U.S. visitors.[8] The Agreement (which Plaintiff had when it filed the present motion), indicates that Tiger Media pays FSG "a pre-negotiated 'flat rate' for each Ad Placement." Exhibit 2, page FSG 000036, ¶4.

Request No., 12 sought all *invoices* from advertising brokers; Request No. 13 sought all *payments to* advertising brokers and Request No. 14 sought all *communications with* advertising brokers. As with the prior responses, Defendants indicated that they had no responsive documents or communications with any U.S. ad brokers and further clarified that they had no responsive documents or communications with non-U.S. ad brokers that concerned or referenced ads specifically aimed at the United States or visitors to the website from the United States.

In sum, Defendants produced to Plaintiff the only document that might conceivably be relevant to the jurisdictional inquiry, namely FSG's agreement with Tiger Media. And, indeed, that document *is* relevant, just not in the way Plaintiff had hoped. Instead, it bolsters FSG's argument that it has not aimed its activities at the United States.

    **4.**    <u>**Requests Nos. 15-18 to FSG/Requests Nos. 13-16 to Mr. Fung**</u>

Requests Nos. 15-18 are aimed at companies that advertised directly with FSG (and not through an advertising broker). These requests again seek contracts (No. 15); invoices (No. 16);

---

[8] Even without the Agreement, Plaintiff's speculations made little sense: when ads are not charged at a flat rate (as they are here), websites are typically compensated for ad placement based on: (a) the number of views (or impressions) of the ad, and/or (b) the number of people who click on the ad. Given that it is undisputed that 93% of Avgle's traffic comes from *outside* the United States – and primarily from Japan, Taiwan, and Hong Kong – it follows that these would be the countries generating the most ad revenue for FSG, not the United States. In any event, as the Tiger Media agreement indicates, FSG is paid a flat rate for each ad placement.

payments (No. 17), and communications (No. 18).  As Defendants already stated in their Memorandum in Support of its Motion to Dismiss, FSG has only ever entered into direct agreement with two companies: both of which were located in China with no known connections whatsoever to the United States.  *See* Wu declaration (Docket No. 23-2), ¶44.

Despite this, Plaintiff half-heartedly attempts to justify its requests as being precisely focused at addressing matters relating to personal jurisdiction with speculation that documents *might* exist that demonstrate that two Chinese companies purchased advertising space on a Japanese adult video website run out of Taiwan, that receives more than 72% of its traffic from Japan (49.79%), Taiwan (13.75%), and Hong Kong (8.75%) and less than 7% of its traffic from the United States because those two Chinese companies somehow wanted to reach a U.S. audience.  It is an absurd attempt to justify requests that have no purpose other than to try to pressure FSG by threatening to draw its advertisers into the middle of litigation in the United States.  Even if this weren't patently ridiculous (and harassing and abusive), Defendants have clarified that they have no responsive documents that refer to or relate to the United States.  In other words, to the extent that agreements exist with these two Chinese companies, they say nothing about advertising aimed at the United States.

The documents requested are, therefore not focused (precisely or otherwise) at matters relating to personal jurisdiction.

### 5. Request No. 24 to FSG

In one of its most attenuated requests, Plaintiff sought "any and all documents, including but not limited to emails, letters, memorandum, reports, and meeting minutes related to or mentioning any hosting provider including but not limited to Cloudflare, Inc."  FSG is at a loss to understand how Plaintiff can, in good faith, argue that a request for any document ***mentioning*** any hosting provider could possible be considered to be "precisely focused" on jurisdictional

matters, but here we are. Even if this request could be seen to be remotely relevant to the jurisdictional inquiry (Plaintiff posits the absolutely unbelievable theory that perhaps there are internal documents that suggest FSG selected its web hosts in the Netherlands because other web hosts were less amenable to displaying content in the United States), FSG has made clear that it has no responsive documents that mention or discuss the United States.

Plaintiff may be frustrated that the facts on the ground do not support an exercise of jurisdiction over Defendants, but that frustration does not translate into a right to request wholly irrelevant documents in limited jurisdictional discovery.

**6.     Request No. 26 to FSG**

Next, in a breathtakingly overbroad request (not remotely tied to the jurisdictional inquiry), Plaintiff sought "any and all documents, including but not limited to emails, letters, memorandum, reports, and meeting minutes related to or mentioning United States." Such a request – entirely untethered to the allegations, claims, or defenses raised in the present action (much less the jurisdictional question that Plaintiff is supposed to be focused on) – could include almost anything. For example, if someone at FSG sent an email remarking on U.S. gymnast Simone Biles' stellar Olympic performance during the 2016 Games in Rio de Janeiro, such an email might conceivably "relate to" or "mention" the United States and yet it would be wholly irrelevant to the present litigation or the jurisdictional question before this Court. (And, contrary to Plaintiff's claim that "FSG failed to produce any documents relevant to this request," in actuality, FSG *did* produce responsive documents.)

As with each of the preceding requests, to the extent that documents exist that could conceivably be related to Plaintiff's claim of personal jurisdiction, such documents were produced. That is what Plaintiff is entitled to and that is what Plaintiff received. What Plaintiff is not entitled to do, however, is send a foreign defendant (over whom this Court has already

opined that Plaintiff has failed to make a *prima facie* showing of jurisdiction) on a wild goose chase with discovery requests that are not precisely focused on the jurisdiction questions identified by the Court in its order allowing such limited discovery.

**7.      Request No. 17 to Mr. Fung**

Request No. 17 to Mr. Fung sought "any and all communications you had with Fellow Shine Group."  As the Court can see, this request is not even limited to communications between the two Defendants concerning the website at issue in this case, Avgle.com, much less limited to communications that relate to or reference some attempt to aim the website at the United States (or serve a U.S. market, as opposed to a worldwide market).  In responding to this request, Mr. Fung properly responded that he "has no such documents that specifically reference or concern the United States in [his] care, custody, or control."  In other words, to the extent that this request might properly seek documents that could conceivably relate to the relevant jurisdictional questions at issue, Mr. Fung has no such documents.

**8.      Request No. 18 to Mr. Fung**

Request No. 18 to Mr. Fung sought any and all contracts as between Mr. Fung and FSG.  Again, this request is not even limited to contracts between the two Defendants concerning the website at issue in this case, Avgle.com.  In responding to this request, Mr. Fung again properly responded that he had no "documents that specifically reference or concern the United States in his care, custody, or control."  In other words, to the extent that this request might properly seek documents that could conceivably shed light on the relevant jurisdictional questions at issue, Mr. Fung has no such documents.

## ATTORNEYS' FEES

Finally, Plaintiff's claim an entitlement to attorneys' fees under Fed. R. Civ. P. 37(a)(5)(A).  Because Plaintiff is not entitled to additional discovery, it is also not entitled to recover its fees.  To the contrary, Defendants are entitled to recover their reasonable attorneys' fees incurred in opposing the present motion and the Court should award the same.  Fed. R. Civ. P. 37(a)(5)(B).

## CONCLUSION

For the reasons stated hereinabove, Plaintiff's Motion to Compel should be denied in its entirety; the Court should finalize its order dismissing the present case for a lack of personal jurisdiction; and the Court should award Defendant their reasonable attorneys' fees incurred in opposing the present motion.

**Respectfully submitted,**

/s/ Philip Mann
Philip P. Mann, Esq. (WSBA No. 28860)
Mann Law Group PLLC
107 Spring Street
Seattle, Washington 98104
Tel: 206-463-0900
Email: phil@mannlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Defendants*

Dated: December 13, 2021

## CERTIFICATE OF SERVICE

I hereby certify on December 13, 2021, I served the foregoing document on all counsel of record through the ECF filing system.

/s/ Evan Fray-Witzer