## Publisher Agreement

This publisher agreement is dated April 9 2021, and is between **Tiger Media Inc.** d/b/a JuicyAds, a Saskatchewan corporation ("*Company*"), and **Fellow Shine Group Limited** a company (UID #105385) ("*Publisher*").

Company is in the business of buying, selling, trading, and brokering internet traffic and advertisements on behalf of its clients.

Company provides publishers with services related to the sale of advertisements.

Publisher owns or operates certain websites that have advertising space available.

Publisher wants Company to fill the advertising space available on its websites with advertisements.

The parties therefore agree as follows:

1. **Company Terms of Service**

    The terms of service on Company's website ([www.juicyads.com/terms/](www.juicyads.com/terms/)) ("*terms of service*") apply to Publisher's access and use of the service, except that if an inconsistency exists between this agreement and the terms of service, this agreement will prevail.

2. **Logistics and Ad Placement**

    Company will provide the service to the Publisher on approved Publisher Sites. Company may replace or remove ads at any time, or change or improve the service, including the "look and feel" of the service at its sole discretion. Publisher will place the ad tags ("Ad Placements") in the following locations:

    - #Pop ad on avgle.com at $36000 a month:

    'Appears on all pages'.

    (100% Rotation)

FSG 000035

~~All gross prices listed are subject to a 25% commission fee.~~

Publisher is solely responsible for ensuring the continued operation of Publisher Sites, access to the service, implementation of the ad tags, and display of ads. Publisher is responsible for the security of, and for all actions taken using, its JuicyAds publisher dashboard login ID and password.

   a. **Restrictions**

Publisher will not try to interfere with or disrupt the service (including by changing the ad tags or any ads, or the resyndication of any ads). If Publisher removes a space from the Publisher Site, Company will terminate this agreement, and Publisher will refund to Company in full all payments Company paid to Publisher under this agreement.

   b. **Minimum Traffic**

Company may terminate this agreement immediately if either

   i. the number of impressions delivered by Publisher drop by 15% from the start of the Agreement on more than one occasion, or

   ii. Publisher engages in artificial inflation of traffic counts using any program (including scripts), device, or any other means.

3. **Exclusivity**

During this agreement, Publisher will not enter into any other arrangement or agreement with any third party to obtain services for the Publisher Sites that are substantially similar to the services provided under this agreement. Specifically, Publisher will not sell any pop ad space on the Publisher Sites to any third party.

4. **Payment**

   a. Flat Rate

Company will pay Publisher a pre-negotiated "flat rate" for each Ad Placement.

   b. **Payment Terms**

Company will make advance payment to Publisher monthly.

   c. **Taxes**

FSG 000036

All payments due to Publisher are calculated and made exclusive of all taxes. Except for taxes based on Company's net income, Publisher will pay all taxes attributable to commissions earned under this agreement.

### d. Reporting

Company will calculate all amounts payable to Publisher based on Company's reporting system. Publisher acknowledges that amounts due under this agreement are based solely on Company's final reported numbers and on no other source.

## 5. Noncircumvention

During this agreement, Publisher will not do business directly or indirectly with any Company advertiser, or directly or indirectly solicit or induce any Company advertiser to do business directly with Publisher. Publisher acknowledges that this prohibition is a key consideration and inducement for Company to enter into this agreement with Publisher, and to provide the services under this agreement.

## 6. Term and Termination

### 1.1 Term; Renewal Option

i. Unless Company exercises its option to renew in accordance with section 6.1.1(ii) or unless terminated earlier in accordance with section 6.1.2, this agreement will begin on the date of this agreement and will expire on the 1 month anniversary of the date of this agreement.

ii. Publisher hereby grants Company an exclusive option to renew this agreement for an additional 1 month subject to the same terms. Company must exercise this option no later than ten days before the expiration of this agreement.

### 1.2 Termination

i. Either party may terminate this agreement if the other party is in material breach of this agreement and fails to cure that material breach no later than ten days after receiving written notice from the nonbreaching party.

ii. In addition to section 6.1.2(i), Company may terminate this agreement if any of the following occur:

1. The number of impressions delivered by Publisher violate the Minimum Traffic.

FSG 000037

      2. Publisher removes advertising space or spots from the Publisher Sites; or

      3. Publisher removes any ad tags.

If Company terminates Publisher in accordance with this section, Company may withhold all payments due to Publisher under this agreement and require Publisher to fully refund to Company all payments already paid to Publisher by Company during this agreement.

**7.    Severability**

The parties intend as follows:

(a)     that if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b)     that if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c)     that if an unenforceable provision is modified or disregarded in accordance with this section, then the rest of the agreement will remain in effect as written; and

(d)     that any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

**8.    Voluntary Agreement**

The parties have signed this agreement voluntarily and for valid reasons. The parties acknowledge that they (1) have carefully read this agreement, (2) discussed it with their attorneys or other advisors, (3) understand all of the terms, and (4) will comply with it. The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement and waive any claim that the terms should be construed against the drafter.

**9.    Survival**

Any provision of this agreement that imposes an obligation after expiration or termination of this agreement will survive the expiration or termination of this agreement.

**10.   Usages**

FSG 000038

In this agreement, the following usages apply:

(e) Actions permitted under this agreement may be taken at any time and on one or more occasions in the actor's sole discretion.

(f) References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(g) References to numbered sections in this agreement also refer to all included sections. For example, references to section 6 also refer to 6.1, 6.1(a), etc.

(h) In computing any period of time under this agreement, the day of the act, event, or default from which the designated period of time begins to run will be included, unless it is a Saturday, Sunday, or legal holiday. In that case, the period will begin to run on the next day that is not a Saturday, Sunday, or legal holiday, and the period will run until the end of the next day afterwards that is not a Saturday, Sunday, or legal holiday.

(i) In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(j) References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(k) "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(l) "Including" means "including, but not limited to."

(m) "$" means United States Dollars.

(n) *Garner's Modern American Usage* (3d ed. 2009) applies to interpret usage, grammar, and syntax not otherwise addressed by this section.

FSG 000039

The parties are signing this agreement on the date stated in the introductory paragraph.

By:
    Luke Hanna
    Publisher Acquisition, Tiger Media Inc

    *[signature]*
    Publisher Signature

    *For and on behalf of*
    *FELLOW SHINE GROUP LIMITED*
    *翡耀集團有限公司*

    *Ming Chung*
    **Fellow Shine Group Limited**
    *Authorized Signature(s)*

6

FSG 000040