UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILL CO LTD., | CASE NO. 3:20-CV-5666-DGE |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL |
| DOES 1-20, FELLOW SHINE GROUP LIMITED, KAM KEUNG FUNG, | |
| Defendant. | |

The District Court referred this action to United States Magistrate Judge David W. Christel. Currently pending before the Court are Plaintiff's Motions to Compel Discovery from Defendant Kam Keung Fung (Dkt. 47) and from Defendant Fellow Shine Group Ltd. (Dkt. 49).

BACKGROUND

On July 8, 2020, Plaintiff Will Co Ltd.—a Japanese limited liability company that allegedly manages a library of over 50,000 adult entertainment movies protected by copyright registrations obtained from the United States Copyright Office—filed a Complaint seeking damages and injunctive relief for copyright infringement pursuant to 17 U.S.C. § 101 et seq. Dkt.

1. The Complaint alleges that Defendant Fellow Shine Group Ltd. (Defendant FSG)—a British Virgin Islands limited liability company that operates out of Taiwan—and Defendant Kam Keung Fung (Defendant Fung)—a resident of Hong Kong—jointly own and operate the website Avgle.com, which Plaintiffs believe to be a "pirate" website that steals content from others and displays it free of charge to the viewer. *Id*. at 1-2, 7-8. In addition, Plaintiff names Defendant Does 1-20 who are currently unknown individual(s) and/or entity(ies) that own and operate a website located at the uniform resource locator https://avgle.com (the Avgle website). *Id*. at 3. Plaintiff asserts that this Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2). *Id*. at 5.

According to Plaintiff, Avgle.com displays many of Plaintiff's copyrighted works without license or authorization. *Id*. at 9. Citing an analysis dated July 2020, Plaintiffs allege that for the three-month period ending June 30, 2020, the Avgle website averaged approximately 35.09 million monthly visitors, of which 7.32% were viewers in the United States, meaning the Avgle website is visited by 2.7 million United States users every month. *Id*. at 3.

This is no coincidence, according to Plaintiff, because Defendants intentionally target United States users, which is evident from, among other things, the fact that fact key pages of the Avgle website are in English, the website contains a 2017 copyright notice at the bottom of each page, and it advises users that the IP address is being tracked and upon request by the FBI such information will be disclosed to this United States law enforcement agency. *Id*. at 4-5. Plaintiff also alleges that Defendants utilize domain name servers located in California and owned by Cloudflare, Inc.—a corporation incorporated under the laws of the State of Delaware. *Id*. at 4. Moreover, Plaintiff alleges that Defendants use a Content Delivery Network with servers located in the United States that permit faster more efficient streaming of videos to nearby users. *Id*.

1  Finally, the Avgle website allegedly displays "geo-targeted" advertisements that permit it to

2  display ads of particular interest to a United States viewer. Dkt. 1 at 4.

3         On December 24, 2020, Defendant FSG and Defendant Fung moved to dismiss all claims

4  against them based on a lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2),

5  insisting they do not have any relevant, continuing, or substantial connection to the state of

6  Washington, or even to the United States as whole, sufficient for this Court to exercise personal

7  jurisdiction over them. Dkt. 23 at 2.

8         On January 25, 2021, Plaintiff responded in opposition, but also requested permission to

9  conduct jurisdictional discovery before ruling on Defendants' motion to dismiss. Dkt. 28 at 25.

10         On July 19, 2021, the Court took Defendants' motion to dismiss under advisement to

11  permit Plaintiff time to conduct limited jurisdictional discovery and file an amended response to

12  the motion to dismiss. Dkt. 43. In so doing, the Court made many findings critical to the

13  determination of the motions at bar. The Court found that because the alleged infringement took

14  place (and/or continues to take place) entirely outside the United States, the question of personal

15  jurisdiction depends upon the effects of Defendant's conduct within the forum as well as their

16  intent. *Id.* at 5. The Court then determined that the "intent" prong was satisfied, explaining:

17        FSG acknowledges that its ownership and operation of the Avgle.com website is a
      jurisdictionally sufficient "intentional act." Dkt. # 23-1 at 12. Mr. Fung argues,
18        however, that because he is neither the owner nor the operator of Avgle.com, he
      has not engaged in a comparable intentional act that would support the exercise of
19        jurisdiction over him. The Court disagrees. Mr. Fung personally performed or
      oversaw almost every aspect of Avgle.com's development, including purchasing
20        the domain name, adapting a template and source code to create the website, and
      taking steps to ensure that the website was universally accessible. That he was
21        acting in his capacity as a director of Awesapp does not change the fact that he
      acted with an intent to perform the real, physical acts that gave rise to Avgle.com.
22        Mr. Fung's actions were intentional acts which satisfy this first prong.

23

24

1    *Id*. at 5. Regarding Defendants' conduct within the forum, the Court concluded that Plaintiff had

2    not yet met its burden of establishing that Defendant FSG and/or Defendant Fung "expressly

3    aimed" or "purposefully directed" their website at the United States sufficient to prove

4    "intentional acts" and jurisdictional discovery should be aimed at proving as much. *Id*. at 11.

5            On August 11, 2021, Plaintiff propounded discovery requests upon Defendants. On

6    September 14, 2021, Defendants served Plaintiff with responses. Dkt. 47 at 2; Dkt. 49 at 2.

7            On November 28, 2021, Plaintiff filed the pending motions to compel. Dkt. 47; Dkt. 49.

8    On December 13, 2021, Defendants filed a joint response in opposition (Dkt. 52) and on

9    December 17, 2021 Plaintiffs filed a reply. Dkt. 53.

10                                   STANDARD

11           District courts have broad discretion to grant discovery to establish jurisdiction. *Laub v.*

12   *United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *see also Wells Fargo & Co. v. Wells*

13   *Fargo Express Co*., 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Such discovery "should ordinarily

14   be granted where pertinent facts bearing on the question of jurisdiction are controverted or where

15   a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC*

16   *Inv., Inc*., 788 F.2d 535, 540 (9th Cir. 1986); *see also Data Disc, Inc. v. Systems Tech. Assocs.,*

17   *Inc*., 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977). "The Court must weigh the prejudice to the

18   complaining party if discovery is denied." *Andrews v. Pride Indus*., Case No. 2:14–cv–02154–

19   KJM–AC, 2015 WL 1014133, at *5 (E.D. Cal. Mar. 6, 2015) (*citing Laub*, 342 F.3d at 1093).

20   "Prejudice is established if there is a reasonable probability that the outcome would have been

21   different had discovery been allowed." *Id*. The Ninth Circuit may find an abuse of discretion

22   where a court denies discovery where such discovery "might well demonstrate facts sufficient to

23

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO COMPEL - 4

1   constitute a basis for jurisdiction." *Rutsky & Co. Ins. v. Bell & Clements Ltd*., 328 F.3d 1122,

2   1135 (9th Cir. 2003).

3         Plaintiff at this stage of the proceedings is entitled to conduct jurisdictional discovery to

4   the extent that it is "precisely focused discovery aimed at addressing matters relating to personal

5   jurisdiction." *Cabell v. Zorro Prods*., 294 F.R.D. 604, 608 (W.D. Wash. 2013)(*quoting U.S. ex*

6   *rel. Barko v. Halliburton Co*., 270 F.R.D. 26, 28 (D.D.C. 2010) (*quoting GTE New Media Servs.*

7   *Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1352 (D.C. Cir .2000))). Personal jurisdiction in this

8   forum is proper where Defendants have "minimum contacts" with the State of Washington and

9   the exercise of jurisdiction "does not offend traditional notions of fair play and substantial

10   justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

11         This Court has already determined that Plaintiff's jurisdictional claim should be

12   evaluated under the federal long-arm statute (Dkt. 43 at 4), Fed. R. Civ. P. 4(k)(2), which

13   authorizes the exercise of personal jurisdiction where: (1) the claim arises under federal law, (2)

14   Defendants are not subject to the personal jurisdiction of any state court, and (3) the Court's

15   exercise of jurisdiction over Defendants comports with due process. *Holland Am. Line Inc. v.*

16   *Wartsila N. Am., Inc*., 485 F.3d 450, 461 (9th Cir. 2007).

17         Additionally, in the context of a copyright infringement claim the court conducts a three-

18   part inquiry to determine whether a nonresident defendant has such "minimum contacts" with the

19   forum to warrant the court's exercise of specific jurisdiction without violating due process: (1)

20   the defendant must either "purposefully direct his activities" toward the forum or "purposefully

21   avail[ ] himself of the privileges of conducting activities in the forum"; (2) "the claim must be

22   one which arises out of or relates to the defendant's forum-related activities"; and (3) "the

23   exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be

24

1    reasonable." *AMA Multimedia*, 970 F.3d 1201, 1208 (9th Cir. 2020)(*quoting Axiom Foods, Inc.*

2    *v. Acerchem Int'l, Inc*., 874 F.3d 1064,1068 (9th Cir. 2017). "If any of the three requirements is

3    not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."

4    *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995). Plaintiff bears the

5    burden to establish the first two prongs. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d

6    1064, 1068 (9th Cir. 2017).

7    <u>DISCUSSION</u>

8    As discussed, *supra*, this Court previously granted Plaintiff's request for time to conduct

9    limited jurisdictional discovery and file an amended response to Defendants' pending motion to

10    dismiss. Dkt. 43. The Court described potentially relevant jurisdictional discovery as follows:

11    At present, the evidence reveals a worldwide or Asian focus, but additional
12    discovery regarding, inter alia, the business plan for defendants' foray into on-line
      adult entertainment, the circumstances under which an English language website
      with prominent reference to U.S. law was chosen as a template, how and why that
13    template was edited, the terms under which Cloudflare provides CDN services, the
      nature of the arrangement with JuicyAds and/or the advertisers it procures, and the
14    percentage of U.S.-based content and revenues could materially alter the analysis.

15    Dkt. 43 at 11. Yet, according to Defendants, "Plaintiff saw this Court's Order as a green light to

16    conduct far-reaching, jurisdictionally irrelevant discovery, serving Fellow Shine Group Limited

17    with 31 separate document requests and Kam Keung Fung with 24 separate document requests,

18    the vast majority of which had little or no connection to any jurisdictional issues." Dkt. 52 at 1.

19    Plaintiff moves to compel for the specific reasons discussed below, and because generally

20    Defendants have objected to producing "only those documents regarding companies [located] in

21    the United States or which referenced the United States," which Plaintiff believes to be

22    insufficient because Defendants could have "had contact or worked with a company outside the

23    United States which is known to provide service within the United States market" and just

24

1  because a document does not reference the United States does not render it irrelevant to the

2  United States." Dkt. 47 at 5-6; Dkt. 49 at 6.

3      The parties have grouped the disputed discovery into several convenient categories,

4  which the Court will also utilize.

5  I.      Requests 3-6 to Defendant FSG / Requests 1-4 to Defendant Fung

6      Turning to the first category of documents Plaintiff seeks to compel, Plaintiff seeks any

7  website hosting contracts, invoices, payments, and communications with any website hosting

8  companies, which he argues are needed to determine if the Avgle website intentionally targeted

9  the United States. Dkt. 47 at 6; Dkt. 49 at 6.

10      Defendants insist the Avgle website servers have always been hosted by a company in the

11  Netherlands, that it has no contracts with foreign-based companies that concern hosting or

12  directing content to the United States, and that it has no documents "reflecting either hosting

13  content within the United States or users from the United States accessing content hosted on

14  computers located outside the United States." Dkt. 52 at 5-6. Defendants further aver that they

15  have no invoices from any hosting company that in any way reference the United States. "So, for

16  example, if Plaintiff were trying to determine whether Defendants had invoices that would

17  suggest that [Defendant] FSG was paying a host for servers specifically designed to service US

18  traffic (as opposed to website traffic from the entire world), Defendants have fully and

19  completely responded that they have no such documents." Dkt. 52 at 6.

20      Plaintiff retorts that it should not be limited to website hosting companies located in the

21  United States or those with servers located in the United States because even hosting companies

22  entirely outside the United States "may be contracted for efficient display in the United States"

23  even both the company and its servers are located outside the United States…". *Id.*

24

1   While the Court accepts Defendants' averments, it also finds Plaintiff is entitled to review

2   the contracts, invoices, payments, and communications with any hosting company (regardless of

3   its physical location or the location of its servers) paid to host the Avgle website beginning in

4   January 2020 (which the Complaint identifies as the date Plaintiff discovered its copyrighted

5   works on display on the Avgle website) to present day, because they are relevant to whether

6   Defendants purposely directed and/or continue to direct the Avgle website at United States

7   viewers. *See* Dkt. 1 at 8-9, 11.

8   II.   Requests 7-10 to Defendant FSG / Requests 5-8 to Defendant Fung

9   Next, Plaintiff seeks any payment processing contracts, invoices, payments, and

10   communications with payment processing companies such as PayPal. Dkt. 47 at 6-7; Dkt. 49 at

11   7. According to Plaintiff, evidence that a payment processor used by Defendants is contracted to

12   handle payment from the United States could support a determination that the Avgle website was

13   intended to target the United States market. *Id*.

14   Defendants state that because Avgle.com is free to use, no users from the United States

15   pay to view videos. Dkt. 52 at 8. Instead, the Avgle website generates revenue through

16   advertising, and as discussed further below, Defendants utilize a foreign company for their

17   advertisement needs. *Id*.

18   The Court is satisfied by Defendants' response that there is nothing to compel under this

19   category.

20   III.   Requests 11-14 to Defendant FSG / Requests 9-12 to Defendant Fung

21   Plaintiff next seeks access to any contracts, invoices, payments, and communications

22   with any ad brokers because, as Defendants have explained, the Avgle website generates revenue

23   solely through advertisements. Dkt. 47 at 7-8; Dkt. 49 at 7-8.

24

1      Defendants did produce a written contract with a Canadian advertising company called

2  Tiger Media, and represented that no other responsive documents exist because they pay Tiger

3  Media a "flat rate" for each ad and have no input regarding whom to target. Dkt. 52 at 9-10.

4      The Court previously determined "third-party conduct that targets advertising toward

5  certain users does not establish that defendants expressly aimed their conduct at the U.S." absent

6  "some evidence that defendants insisted that geotargeting be offered to U.S. advertisers or

7  otherwise created incentives that favored such services in this forum[.]" Dkt. 43 at 10. Plaintiff is

8  entitled to discover whether evidence of such insistence and/or incentivization exists. Thus,

9  Plaintiff is entitled to review contracts between Defendants and any and all ad brokers, payments

10  to and from any and all ad brokers, and communications with any and all ad brokers relating to

11  advertisements displayed on the Avgle website beginning January 2020 (which the Complaint

12  identifies as the date Plaintiff discovered its copyrighted works on display on the Avgle website)

13  through present day. *See* Dkt. 1 at 8-9, 11

14      IV.    <u>Requests 15-18 to FSG / Requests 13-16 to Defendant Fung</u>

15      Plaintiff also seeks any and all direct communication between Defendants and any entity

16  that might have advertised on the Avgle website (but did not go through a third-party advertising

17  agent) including contracts, invoices, payments, and communications between Defendants and the

18  entity. Dkt. 49 at 8.

19      Defendants protest that this request is "an absurd attempt to justify requests that have no

20  purpose other than to try to pressure [Defendant] FSG by threatening to draw its advertisers into

21  the middle of litigation in the United States. Even if this weren't patently ridiculous (and

22  harassing and abusive), Defendants have clarified that they have no responsive documents that

23  refer to or relate to the United States." Dkt. 52 at 11. Defendants do admit, however, that they

24

1    possess two agreements with Chinese companies that "say nothing about advertising aimed at the

2    United States." *Id*.

3         Plaintiff should not be bound by Defendants' conclusion that the responsive documents it

4    possesses are insufficient to establish personal jurisdiction. Moreover, Plaintiff does not simply

5    seek the contracts, but also the invoices, payments, and communications with entities who

6    engaged in direct advertising on the Avgle website that could indicate advertisements would be

7    and/or are expressly aimed at United States viewers. Defendants fail to provide any analysis or

8    reasoning to support the claim of harassment and abuse, and the Court finds no evidence

9    suggesting that the production requested would result in a large amount of files or that it would

10   be unduly burdensome. Plaintiff is entitled to review any and all direct communication between

11   Defendants and any entity (that did not go through a third-party advertising agent) regarding

12   advertising on the Avgle website beginning January 2020 (which the Complaint identifies as the

13   date Plaintiff discovered its copyrighted works on display on the Avgle website) through present

14   day, including contracts, invoices, payments, and communications between Defendants and any

15   such entity. *See* Dkt. 1 at 8-9, 11.

16   V.    Requests 17-18 to Defendant Fung

17        Plaintiff seeks all communications and contracts between Defendant Fung and Defendant

18   FSG, because Defendant Fung created the Avgle.com website and brokered all contracts for the

19   site operation and revenue generation. Dkt. 47 at 8-9. Plaintiff believes these communications

20   could reveal instructions regarding site creation and target markets. *Id*.

21        Defendant Fung validly objects that this request is not limited to communications

22   between the two Defendants concerning the Avgle website. Dkt. 52 at 13. He also argues that his

23

24

1  response to these requests stated that he "has no such documents that specifically reference or

2  concern the United States in [his] care, custody, or control." *Id*.

3        Once again, Plaintiff should not be bound by Defendants' conclusion that the responsive

4  documents it possesses are insufficient to establish personal jurisdiction. The Court concurs with

5  Plaintiff that it is entitled to review responsive documents that relate to Defendant Fung's work

6  for Defendant FSG in connection with the Avgle website. Significantly, as stated *supra*, the

7  Court previously determined that Defendant Fung oversaw almost every aspect of the creation of

8  the Avgle website. Dkt. 43 at 5. Thus, the Court concurs with Plaintiff that Defendant Fung's

9  communications and contracts with Defendant FSG could reveal the "business plan" for the

10  Avgle website, "the circumstances under which an English language website with prominent

11  reference to U.S. law was chosen," and "how and why the template was edited"—all potentially

12  material to the jurisdictional analysis required to rule on the pending motion to dismiss. Dkt. 43

13  at 11. Consequently, Defendant Fung must produce documents responsive to this request, limited

14  by the caveat that the communications and contracts must be related to Defendant Fung's work

15  for Defendant FSG in connection with the Avgle website.

16  VI.   Requests 24 & 26 to Defendant FSG

17        Plaintiff seeks any documents, including emails, memorandum, reports, and meeting

18  minutes referencing website hosting companies. Dkt. 49 at 8. And finally, Plaintiff seeks

19  documents, including emails, memorandum, reports, and meeting minutes, referencing the

20  United States. *Id*. at 9. Plaintiff argues that such documents may indicate Defendants' thought

21  process in selecting their website hosting company, such as whether they ruled out companies

22  that refused to or were unable to display content in the United States. *Id*.; Dkt. 53 at 5.

23

24

1   Defendant objects to the relevance of documents referencing website hosting companies

2   as not precisely focused enough to discover matters relating to personal jurisdiction, and argues

3   that the request for any documents referencing the United States is overbroad and could turn up

4   emails containing personal conversations entirely unrelated to this matter. Dkt. 52 at 11-12.

5   Although Plaintiff should not be bound by Defendants' conclusion that the responsive

6   documents it possesses are insufficient to establish personal jurisdiction, the Court finds

7   Plaintiffs requests under this category are overbroad and unduly burdensome, and not precisely

8   focused enough to illicit discovery relevant to establishing personal jurisdiction. Thus, the Court

9   finds Defendant FSG must produce responsive documents in its possession, custody or control

10   referencing *both* website hosting companies and the United States in the same document

11   (including emails, memorandum, reports, and meeting minutes).

12   ATTORNEY'S FEES

13   Each party claims entitlement to attorney fees for bringing and defending against these

14   motions. Fed. R. Civ. P. 37(a)(5)(A) provides that when a discovery motion is granted, the court

15   generally "must" order the opposing party or counsel to pay "the movant's reasonable expenses

16   incurred in making the motion, including attorney's fees." An opposing party may avoid such an

17   award only if its position was "substantially justified" or "other circumstances make an award of

18   expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

19   While the Court grants in part and denies in part Plaintiff's motion to compel, the Court

20   denies ordering Defendants to pay Plaintiff's attorney's fees for bringing the motion because

21   some of Defendants' objections were substantially justified, and many of Plaintiff's requests for

22   production required modification.

23

24

1

## CONCLUSION

2          For the reasons stated above, the Court grants in part and denies in part Plaintiff's Motion

3    to Compel Discovery from Defendant Kam Keung Fung (Dkt. 47) and Plaintiff's Motion to

4    Compel Discovery from Defendant Fellow Shine Group Limited (Dkt. 49). Defendants must

5    serve supplemental responses upon Plaintiffs within 30 days of the undersigned date. The Court

6    also denies all motions for attorney's fees.

7

8          Dated this 21st day of March, 2022.

9

10    _____
      David W. Christel
11    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24