1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

10
11
12
13
14
15
16
17
18
19
20
21

WILL CO. LTD. a limited liability company organized under the laws of Japan,

              Plaintiff,

    vs.

KAM KEUNG FUNG, aka 馮錦強, aka FUNG KAM KEUNG, aka FUNG KAM-KEUNG, aka KUENG FUNG, aka KEUNG KAM FUNG, aka KAM-KEUNG FUNG, aka KEVIN FUNG, an individual; FELLOW SHINE GROUP LIMITED, a foreign company, and DOES 1-20, d/b/a AVGLE.COM,

              Defendants.

**Case No.:  3:20-cv-05666- DGE**

**DECLARATION OF SPENCER FREEMAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

22
23
24
25
26

I, Spencer D. Freeman, declare:

    1.    I am an attorney at law licensed to practice before the Courts of the State of Washington and the United States District Court Western District of Washington, Eastern District of Washington, District of Colorado, Southern District of Illinois, Ninth Circuit Court of Appeals, and United States Supreme Court.  I am the principle attorney with the law firm of

DECLARATION OF S. FREEMAN ISO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS [NO. 3:20-cv-05666-RSL]
 - 1

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500 - (253) 383-4501 (fax)

Freeman Law Firm, Inc., attorneys for Will Co. Ltd.  Unless otherwise stated, I have personal knowledge of the facts contained herein this declaration and, if called and sworn as a witness, could and would competently testify thereto.

2.      On or about April 29, 2022 Defendants disclosed supplemental discovery as required by this Court's Order on Motion to Compel.

3.      Attached hereto as Exhibit A is a true and correct copy of a contract between Defendants and Tiger Media dated April 2021, produced by Defendants on April 29, 2022.

4.      Attached hereto as Exhibit B is a true and correct copy of a contract between Defendants and Tiger Media dated May 2021, produced by Defendants on April 29, 2022.

5.      Attached hereto as Exhibit C is a true and correct copy of a contract between Defendants and Tiger Media dated August 2021, produced by Defendants on April 29, 2022.

6.      Attached hereto as Exhibit D is a true and correct copy of the Terms and Service from juicyads.com/terms/ as referenced in the Tiger Media Contracts produced by Defendants.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Execute on the 30th day of May, 2022 at Tacoma, Washington.


 _/s/ Spencer D. Freeman_____
Spencer D. Freeman

DECLARATION OF S. FREEMAN ISO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS [NO. 3:20-cv-
05666-RSL]
 - 2

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

# EXHIBIT A

# Tiger Media Contract April 2021

**Publisher Agreement**

This publisher agreement is dated April 9 2021, and is between Tɪɢᴇʀ Mᴇᴅɪᴀ Iɴᴄ. d/b/a JuicyAds, a Saskatchewan corporation ("*Company*"), and **Fellow Shine Group Limited** a company (UID #105385) ("*Publisher*").

Company is in the business of buying, selling, trading, and brokering internet traffic and advertisements on behalf of its clients.

Company provides publishers with services related to the sale of advertisements.

Publisher owns or operates certain websites that have advertising space available.

Publisher wants Company to fill the advertising space available on its websites with advertisements.

The parties therefore agree as follows:

1. **Company Terms of Service**

   The terms of service on Company's website (www.juicyads.com/terms/) ("*terms of service*") apply to Publisher's access and use of the service, except that if an inconsistency exists between this agreement and the terms of service, this agreement will prevail.

2. **Logistics and Ad Placement**

   Company will provide the service to the Publisher on approved Publisher Sites. Company may replace or remove ads at any time, or change or improve the service, including the "look and feel" of the service at its sole discretion. Publisher will place the ad tags ("Ad Placements") in the following locations:

   - #Pop ad on avgle.com at $36000 a month:

   'Appears on all pages'.

   (100% Rotation)

~~All gross prices listed are subject to a 25% commission fee.~~

Publisher is solely responsible for ensuring the continued operation of Publisher Sites, access to the service, implementation of the ad tags, and display of ads. Publisher is responsible for the security of, and for all actions taken using, its JuicyAds publisher dashboard login ID and password.

    a.  **Restrictions**

Publisher will not try to interfere with or disrupt the service (including by changing the ad tags or any ads, or the resyndication of any ads). If Publisher removes a space from the Publisher Site, Company will terminate this agreement, and Publisher will refund to Company in full all payments Company paid to Publisher under this agreement.

    b.  **Minimum Traffic**

Company may terminate this agreement immediately if either

       i.  the number of impressions delivered by Publisher drop by 15% from the start of the Agreement on more than one occasion, or

      ii.  Publisher engages in artificial inflation of traffic counts using any program (including scripts), device, or any other means.

**3.  Exclusivity**

During this agreement, Publisher will not enter into any other arrangement or agreement with any third party to obtain services for the Publisher Sites that are substantially similar to the services provided under this agreement. Specifically, Publisher will not sell any pop ad space on the Publisher Sites to any third party.

**4.  Payment**

    a.  Flat Rate

Company will pay Publisher a pre-negotiated "flat rate" for each Ad Placement.

    b.  **Payment Terms**

Company will make advance payment to Publisher monthly.

    c.  **Taxes**

2

All payments due to Publisher are calculated and made exclusive of all taxes. Except for taxes based on Company's net income, Publisher will pay all taxes attributable to commissions earned under this agreement.

### d.  Reporting

Company will calculate all amounts payable to Publisher based on Company's reporting system. Publisher acknowledges that amounts due under this agreement are based solely on Company's final reported numbers and on no other source.

## 5.  Noncircumvention

During this agreement, Publisher will not do business directly or indirectly with any Company advertiser, or directly or indirectly solicit or induce any Company advertiser to do business directly with Publisher. Publisher acknowledges that this prohibition is a key consideration and inducement for Company to enter into this agreement with Publisher, and to provide the services under this agreement.

## 6.  Term and Termination

### 1.1    Term; Renewal Option

i.  Unless Company exercises its option to renew in accordance with section 6.1.1(ii) or unless terminated earlier in accordance with section 6.1.2, this agreement will begin on the date of this agreement and will expire on the 1 month anniversary of the date of this agreement.

ii.  Publisher hereby grants Company an exclusive option to renew this agreement for an additional 1 month subject to the same terms. Company must exercise this option no later than ten days before the expiration of this agreement.

### 1.2    Termination

i.  Either party may terminate this agreement if the other party is in material breach of this agreement and fails to cure that material breach no later than ten days after receiving written notice from the nonbreaching party.

ii.  In addition to section 6.1.2(i), Company may terminate this agreement if any of the following occur:

1.  The number of impressions delivered by Publisher violate the Minimum Traffic.

3

FSG 000121

2. Publisher removes advertising space or spots from the Publisher Sites; or

3. Publisher removes any ad tags.

If Company terminates Publisher in accordance with this section, Company may withhold all payments due to Publisher under this agreement and require Publisher to fully refund to Company all payments already paid to Publisher by Company during this agreement.

**7.    Severability**

The parties intend as follows:

(a) that if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b) that if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c) that if an unenforceable provision is modified or disregarded in accordance with this section, then the rest of the agreement will remain in effect as written; and

(d) that any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

**8.    Voluntary Agreement**

The parties have signed this agreement voluntarily and for valid reasons. The parties acknowledge that they (1) have carefully read this agreement, (2) discussed it with their attorneys or other advisors, (3) understand all of the terms, and (4) will comply with it. The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement and waive any claim that the terms should be construed against the drafter.

**9.    Survival**

Any provision of this agreement that imposes an obligation after expiration or termination of this agreement will survive the expiration or termination of this agreement.

**10.    Usages**

4

FSG 000122

In this agreement, the following usages apply:

(e)    Actions permitted under this agreement may be taken at any time and on one or more occasions in the actor's sole discretion.

(f)    References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(g)    References to numbered sections in this agreement also refer to all included sections. For example, references to section 6 also refer to 6.1, 6.1(a), etc.

(h)    In computing any period of time under this agreement, the day of the act, event, or default from which the designated period of time begins to run will be included, unless it is a Saturday, Sunday, or legal holiday. In that case, the period will begin to run on the next day that is not a Saturday, Sunday, or legal holiday, and the period will run until the end of the next day afterwards that is not a Saturday, Sunday, or legal holiday.

(i)    In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(j)    References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(k)    "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(l)    "Including" means "including, but not limited to."

(m)    "$" means United States Dollars.

(n)    *Garner's Modern American Usage* (3d ed. 2009) applies to interpret usage, grammar, and syntax not otherwise addressed by this section.

5

FSG 000123

The parties are signing this agreement on the date stated in the introductory paragraph.

By:

Luke Hanna
Publisher Acquisition, Tiger Media Inc

Publisher Signature

*For and on behalf of*
FELLOW SHINE GROUP LIMITED
顥 耀 集 團 有 限 公 司

**Fellow Shine Group Limited** . . . . . . . . . . . . . . . . . .
*Authorized Signature(s)*

6

# EXHIBIT B

# Tiger Media Contract May 2021

**Publisher Agreement**

This publisher agreement is dated May 9 2021, and is between Tɪɢᴇʀ Mᴇᴅɪᴀ Iɴᴄ. d/b/a JuicyAds, a Saskatchewan corporation ("***Company***"), and **Fellow Shine Group Limited** a company (UID #105385) ("***Publisher***").

Company is in the business of buying, selling, trading, and brokering internet traffic and advertisements on behalf of its clients.

Company provides publishers with services related to the sale of advertisements.

Publisher owns or operates certain websites that have advertising space available.

Publisher wants Company to fill the advertising space available on its websites with advertisements.

The parties therefore agree as follows:

1. **Company Terms of Service**

   The terms of service on Company's website (www.juicyads.com/terms/) ("***terms of service***") apply to Publisher's access and use of the service, except that if an inconsistency exists between this agreement and the terms of service, this agreement will prevail.

2. **Logistics and Ad Placement**

   Company will provide the service to the Publisher on approved Publisher Sites. Company may replace or remove ads at any time, or change or improve the service, including the "look and feel" of the service at its sole discretion. Publisher will place the ad tags ("Ad Placements") in the following locations:

   ● #Pop ad on avgle.com at $36000 a month:

   'Appears on all pages'.

   (100% Rotation)

~~All gross prices listed are subject to a 25% commission fee.~~

Publisher is solely responsible for ensuring the continued operation of Publisher Sites, access to the service, implementation of the ad tags, and display of ads. Publisher is responsible for the security of, and for all actions taken using, its JuicyAds publisher dashboard login ID and password.

   a.  **Restrictions**

Publisher will not try to interfere with or disrupt the service (including by changing the ad tags or any ads, or the resyndication of any ads). If Publisher removes a space from the Publisher Site, Company will terminate this agreement, and Publisher will refund to Company in full all payments Company paid to Publisher under this agreement.

   b.  **Minimum Traffic**

Company may terminate this agreement immediately if either

      i.  the number of impressions delivered by Publisher drop by 15% from the start of the Agreement on more than one occasion, or

     ii.  Publisher engages in artificial inflation of traffic counts using any program (including scripts), device, or any other means.

**3.  Exclusivity**

During this agreement, Publisher will not enter into any other arrangement or agreement with any third party to obtain services for the Publisher Sites that are substantially similar to the services provided under this agreement. Specifically, Publisher will not sell any pop ad space on the Publisher Sites to any third party.

**4.  Payment**

   a.  Flat Rate

Company will pay Publisher a pre-negotiated "flat rate" for each Ad Placement.

   b.  **Payment Terms**

Company will make advance payment to Publisher monthly.

   c.  **Taxes**

2

All payments due to Publisher are calculated and made exclusive of all taxes. Except for taxes based on Company's net income, Publisher will pay all taxes attributable to commissions earned under this agreement.

### d. Reporting

Company will calculate all amounts payable to Publisher based on Company's reporting system. Publisher acknowledges that amounts due under this agreement are based solely on Company's final reported numbers and on no other source.

**5. Noncircumvention**

During this agreement, Publisher will not do business directly or indirectly with any Company advertiser, or directly or indirectly solicit or induce any Company advertiser to do business directly with Publisher. Publisher acknowledges that this prohibition is a key consideration and inducement for Company to enter into this agreement with Publisher, and to provide the services under this agreement.

**6. Term and Termination**

1.1 **Term; Renewal Option**

i. Unless Company exercises its option to renew in accordance with section 6.1.1(ii) or unless terminated earlier in accordance with section 6.1.2, this agreement will begin on the date of this agreement and will expire on the 3 month anniversary of the date of this agreement.

ii. Publisher hereby grants Company an exclusive option to renew this agreement for an additional 1 month subject to the same terms. Company must exercise this option no later than ten days before the expiration of this agreement.

1.2 **Termination**

i. Either party may terminate this agreement if the other party is in material breach of this agreement and fails to cure that material breach no later than ten days after receiving written notice from the nonbreaching party.

ii. In addition to section 6.1.2(i), Company may terminate this agreement if any of the following occur:

1. The number of impressions delivered by Publisher violate the Minimum Traffic.

3

2. Publisher removes advertising space or spots from the Publisher Sites; or

3. Publisher removes any ad tags.

If Company terminates Publisher in accordance with this section, Company may withhold all payments due to Publisher under this agreement and require Publisher to fully refund to Company all payments already paid to Publisher by Company during this agreement.

**7.   Severability**

The parties intend as follows:

(a)    that if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b)    that if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c)    that if an unenforceable provision is modified or disregarded in accordance with this section, then the rest of the agreement will remain in effect as written; and

(d)    that any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

**8.   Voluntary Agreement**

The parties have signed this agreement voluntarily and for valid reasons. The parties acknowledge that they (1) have carefully read this agreement, (2) discussed it with their attorneys or other advisors, (3) understand all of the terms, and (4) will comply with it. The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement and waive any claim that the terms should be construed against the drafter.

**9.   Survival**

Any provision of this agreement that imposes an obligation after expiration or termination of this agreement will survive the expiration or termination of this agreement.

**10.   Usages**

4

In this agreement, the following usages apply:

(e) Actions permitted under this agreement may be taken at any time and on one or more occasions in the actor's sole discretion.

(f) References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(g) References to numbered sections in this agreement also refer to all included sections. For example, references to section 6 also refer to 6.1, 6.1(a), etc.

(h) In computing any period of time under this agreement, the day of the act, event, or default from which the designated period of time begins to run will be included, unless it is a Saturday, Sunday, or legal holiday. In that case, the period will begin to run on the next day that is not a Saturday, Sunday, or legal holiday, and the period will run until the end of the next day afterwards that is not a Saturday, Sunday, or legal holiday.

(i) In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(j) References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(k) "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(l) "Including" means "including, but not limited to."

(m) "$" means United States Dollars.

(n) *Garner's Modern American Usage* (3d ed. 2009) applies to interpret usage, grammar, and syntax not otherwise addressed by this section.

5

The parties are signing this agreement on the date stated in the introductory paragraph.

By:

Luke Hanna
Publisher Acquisition, Tiger Media Inc

Publisher Signature

*For and on behalf of*
FELLOW SHINE GROUP LIMITED
麗 耀 集 團 有 限 公 司

Ming Chung

Fellow Shine Group Limited *Authorized Signature(s)*

6

# **EXHIBIT C**

# **Tiger Media Contract August 2021**

## Publisher Agreement

This publisher agreement is dated August 9, 2021, and is between TIGER MEDIA INC. d/b/a JuicyAds, a Saskatchewan corporation ("***Company***"), and **Fellow Shine Group Limited** a company (UID #105385) ("***Publisher***").

Company is in the business of buying, selling, trading, and brokering internet traffic and advertisements on behalf of its clients.

Company provides publishers with services related to the sale of advertisements.

Publisher owns or operates certain websites that have advertising space available.

Publisher wants Company to fill the advertising space available on its websites with advertisements.

The parties therefore agree as follows:

1. **Company Terms of Service**

The terms of service on Company's website (www.juicyads.com/terms/) ("***terms of service***") apply to Publisher's access and use of the service, except that if an inconsistency exists between this agreement and the terms of service, this agreement will prevail.

2. **Logistics and Ad Placement**

Company will provide the service to the Publisher on approved Publisher Sites. Company may replace or remove ads at any time, or change or improve the service, including the "look and feel" of the service at its sole discretion. Publisher will place the ad tags ("Ad Placements") in the following locations:

● #Pop ad on avgle.com at $36000 a month:

'Appears on all pages'.

(100% Rotation)

~~All gross prices listed are subject to a 25% commission fee.~~

Publisher is solely responsible for ensuring the continued operation of Publisher Sites, access to the service, implementation of the ad tags, and display of ads. Publisher is responsible for the security of, and for all actions taken using, its JuicyAds publisher dashboard login ID and password.

a. **Restrictions**

Publisher will not try to interfere with or disrupt the service (including by changing the ad tags or any ads, or the resyndication of any ads). If Publisher removes a space from the Publisher Site, Company will terminate this agreement, and Publisher will refund to Company in full all payments Company paid to Publisher under this agreement.

b. **Minimum Traffic**

Company may terminate this agreement immediately if either

  i. the number of impressions delivered by Publisher drop by 15% from the start of the Agreement on more than one occasion, or

  ii. Publisher engages in artificial inflation of traffic counts using any program (including scripts), device, or any other means.

3. **Exclusivity**

   During this agreement, Publisher will not enter into any other arrangement or agreement with any third party to obtain services for the Publisher Sites that are substantially similar to the services provided under this agreement. Specifically, Publisher will not sell any pop ad space on the Publisher Sites to any third party.

2

FSG 000132

4. **Payment**

    a. Flat Rate

Company will pay Publisher a pre-negotiated "flat rate" for each Ad Placement.

    **b. Payment Terms**

Company will make advance payment to Publisher monthly.

    **c. Taxes**

All payments due to Publisher are calculated and made exclusive of all taxes. Except for taxes based on Company's net income, Publisher will pay all taxes attributable to commissions earned under this agreement.

    **d. Reporting**

Company will calculate all amounts payable to Publisher based on Company's reporting system. Publisher acknowledges that amounts due under this agreement are based solely on Company's final reported numbers and on no other source.

5. **Noncircumvention**

During this agreement, Publisher will not do business directly or indirectly with any Company advertiser, or directly or indirectly solicit or induce any Company advertiser to do business directly with Publisher. Publisher acknowledges that this prohibition is a key consideration and inducement for Company to enter into this agreement with Publisher, and to provide the services under this agreement.

6. **Term and Termination**

1.1 **Term; Renewal Option**

    i. Unless Company exercises its option to renew in accordance with section 6.1.1(ii) or unless terminated earlier in accordance with section 6.1.2, this agreement will begin on the date of this agreement and will expire on the 3 month anniversary of the date of this agreement.

    ii. Publisher hereby grants Company an exclusive option to renew this agreement for an additional 1 month subject to the same terms. Company must exercise this option no later than ten days before the expiration of this agreement.

1.2 **Termination**

3

FSG 000133

i. Either party may terminate this agreement if the other party is in material breach of this agreement and fails to cure that material breach no later than ten days after receiving written notice from the nonbreaching party.

ii. In addition to section 6.1.2(i), Company may terminate this agreement if any of the following occur:

1. The number of impressions delivered by Publisher violate the Minimum Traffic.

2. Publisher removes advertising space or spots from the Publisher Sites; or

3. Publisher removes any ad tags.

If Company terminates Publisher in accordance with this section, Company may withhold all payments due to Publisher under this agreement and require Publisher to fully refund to Company all payments already paid to Publisher by Company during this agreement.

## 7. Severability

The parties intend as follows:

(a) that if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b) that if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c) that if an unenforceable provision is modified or disregarded in accordance with this section, then the rest of the agreement will remain in effect as written; and

(d) that any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

## 8. Voluntary Agreement

The parties have signed this agreement voluntarily and for valid reasons. The parties acknowledge that they (1) have carefully read this agreement, (2) discussed it with their attorneys or other advisors, (3) understand all of the terms, and (4) will comply with it. The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement and waive any claim that the terms

4

should be construed against the drafter.

**9.   Survival**

Any provision of this agreement that imposes an obligation after expiration or termination of this agreement will survive the expiration or termination of this agreement.

**10.   Usages**

In this agreement, the following usages apply:

(e)   Actions permitted under this agreement may be taken at any time and on one or more occasions in the actor's sole discretion.

(f)   References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(g)   References to numbered sections in this agreement also refer to all included sections. For example, references to section 6 also refer to 6.1, 6.1(a), etc.

(h)   In computing any period of time under this agreement, the day of the act, event, or default from which the designated period of time begins to run will be included, unless it is a Saturday, Sunday, or legal holiday. In that case, the period will begin to run on the next day that is not a Saturday, Sunday, or legal holiday, and the period will run until the end of the next day afterwards that is not a Saturday, Sunday, or legal holiday.

(i)   In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(j)   References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(k)   "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(l)   "Including" means "including, but not limited to."

(m)   "$" means United States Dollars.

(n)   *Garner's Modern American Usage* (3d ed. 2009) applies to interpret usage, grammar, and syntax not otherwise addressed by this section.

5

The parties are signing this agreement on the date stated in the introductory paragraph.

By:

Luke Hanna
Publisher Acquisition, Tiger Media Inc

_____
Publisher Signature

For and on behalf of
FELLOW SHINE GROUP LIMITED
鵬 耀 集 團 有 限 公 司
**Fellow Shine Group Limited**
........................................................
Authorized Signature(s)

6

# EXHIBIT D

# Tiger Media Terms of Service



JuicyAds Adult Ad Network — Banners - Native - Pop-Ads™

HOME     PUBLISHERS     ADVERTISERS     ABOUT     HELP     CONTACT          Login

# TERMS OF SERVICE

JuicyAds® Terms-of-Service Agreement

Last Updated: March 29, 2022 (version 20220329)

This terms-of-service agreement is between Tiger Media Inc. d/b/a JuicyAds®, a Saskatchewan corporation ("JuicyAds"), and you, the individual or entity signing up as a publisher or advertiser or both. Please read this agreement carefully before registering or using the JuicyAds platform (the "Platform"). Participation in the Platform constitutes your acceptance of this agreement. If you do not agree to this agreement, you must not register or participate in the Platform.JuicyAds is an advertising brokerage service, accessible at www.juicyads.com, that allows website publishers to place ads on their websites and for advertisers to buy the space.You want to participate in the Platform as a publisher or advertiser or both.The parties therefore agree as follows:

**1.          Participation**

1.1          In General. Participation in the Platform is subject to your continued compliance with this agreement and the applicable acceptable use policies (the "acceptable use policies") attached to this agreement or otherwise available on www.juicyads.com. JuicyAds may require you to provide proof of identification before or during your participation in the Platform. You must be at least 18-years old and the age of majority in your jurisdiction to participate in the Platform. JuicyAds may refuse participation to any applicant or participant at any time and for any reason, including country of residence, reputation, and associations. JuicyAds is not available to advertisers or publishers in the following countries or territories: Crimea, Cuba, Iran, North Korea, Sudan, and Syria. JuicyAds may change, suspend, or discontinue the Platform at any time without notice or liability. JuicyAds may suspend or terminate your account at any time if you breach this agreement. JuicyAds may, at its discretion, modify this agreement at any time by posting a notice on the website located at www.juicyads.com (the "Site"), or by notifying you by email or postal mail. Your continued participation in the Platform after this notice constitutes your acceptance of the modified agreement. You state that you are legally permitted to use the Platform and take full responsibility for the selection and use of the Platform. This agreement is void where prohibited by law, and the right to access the Platform is revoked in those jurisdictions.

1.2          Participation as a Publisher; Ineligible Websites

(a)          You will comply with the specifications provided by JuicyAds to allow proper delivery, display, tracking, and reporting of ads in connection with your websites ("Publisher Websites"), including by not modifying the JavaScript or other programming provided to you by JuicyAds in any way, unless JuicyAds expressly authorizes you to do so in writing.

(b)          The following are examples of publisher websites that are ineligible for participation in the Platform and that may result in termination if used with the Platform:

(i)          Websites that contain, promote, or distribute material that infringes the rights of others (including copyrights, trademarks, and other intellectual property rights) or that promotes copyright piracy.

(ii)          Websites whose domain names violate the Anti-Cybersquatting Consumer Protection Act (ACPA) or equivalent law.

(iii)          Websites that sell or distribute counterfeit or illegal goods, or serve the sole purpose of unlawfully distributing either counterfeit or bona fide goods (e.g., cross-border shipping of prescription-only or counterfeit goods).

(iv)          Websites with gratuitous displays of violence, obscene or vulgar language, and abusive content or content that endorses or threatens physical harm.

(v)          Websites promoting any type of hate-mongering (i.e., racial, political, ethnic, religious, gender-based, sexuality-based, or personal, etc.).

(vi)          MP3, warez, password, torrent, file-locker, or other websites containing, linking, facilitating, or promoting illegal software or content.

(vii)      Any website containing or promoting the spread of Trojans, viruses, malware, ransomware, any malicious code, or auto-installing scripts.

(viii)     Websites using auto-redirects, auto-refreshes, or similar code to divert visitors.

(ix)       Websites with references to illicit practices or shock human dignity.

(x)        Websites that participate in or transmit inappropriate newsgroup postings or unsolicited email (spam) as well as unsolicited communications by equivalent electronic means (i.e., SMS, chat, social networks, etc.).

(xi)       Websites promoting any type of illegal substance or activity (i.e., how to build a bomb, hacking, "phreaking," etc.).

(xii)      Websites with illegal, false, or deceptive investment advice and money-making opportunities.

(xiii)     Websites that have a large amount of proxy traffic from services such as TOR or VPN clients commonly identified as used heavily in the commission of copyright infringement, firewall circumvention, or other unlawful activity.

(xiv)      Websites that provide incentives of any nature to require or encourage visitors to click on ad banners (i.e., paid-per-click, charity, sweepstakes, etc.).

(xv)       Websites that are under construction or incomplete.

(xvi)      Websites that contain any content violating Canadian laws in general, or the laws of any other country if applicable.

(xvii)     Websites or pages comprised or containing mostly ads, cluttered ad pages, or "banner farms."

(xviii)    Websites with excessive ads, pop-ups or pop-unders.

(xix)      Websites presenting no added value to visitors.

(xx)       Websites with any type of content that reasonable public consensus considers to be improper or inappropriate.

(c)        By participating in the Platform as a publisher, you hereby grant JuicyAds and participating advertisers a nonexclusive, worldwide license to transmit the ads to the Publisher Websites.

1.3        Participation as an Advertiser

(a)        You are responsible for all:

(i)        ad targeting options ("targets") and all ad content, ad information, and ad URLs ("creatives"), whether generated by or for you; and

(ii)       websites, services, and landing pages that creatives link or direct viewers to, and advertised services and products (collectively, "services").

(b)        You acknowledge that ads may be placed on any content or property provided by JuicyAds, and, unless you opt out of that placement in the manner stated by JuicyAds, any other content or property provided by participating publishers on which JuicyAds places ads. You hereby authorize all of these placements. You acknowledge that all placements of your ads will be considered to have been approved by you unless you produce contemporaneous documentary evidence showing that you disapproved these placements in the way stated by JuicyAds. You hereby grant JuicyAds permission to use an automated software program to retrieve and analyze the websites associated with the services for ad quality and serving purposes. JuicyAds or participating publishers may reject or remove any ad or target for any or no reason.

(c)        By participating in the Platform as an advertiser, you hereby grant JuicyAds and participating publishers a nonexclusive, worldwide license to reproduce, distribute, transmit, and publicly display the ads.

## 2.        JuicyAds Account

2.1        Account Creation. To participate in the Platform, you have to create an account. To create an account, you must complete the registration process by providing JuicyAds with accurate information as prompted by the registration form. You also will choose a password and a username.

2.2        Responsibility for Account. You are responsible for maintaining the confidentiality of your password and account. Further, you are responsible for all activities that occur under your account. You will promptly notify JuicyAds of any unauthorized use of your account or any other

breach of security.

2.3      Liability for Account Misuse. JuicyAds will not be liable for any loss that may incur as a result of someone else using your password or account, either with or without your knowledge. You could be held liable for losses incurred by JuicyAds or another person due to someone else using your account or password.

2.4      Use of Other Accounts. You will not use anyone else's account at any time, without the permission of the account holder.

2.5      Account Security. JuicyAds cares about the integrity and security of your personal information. But JuicyAds cannot guarantee that unauthorized persons will never be able to defeat the Site's security measures or use any personal information you provide to JuicyAds for improper purposes. You acknowledge that you provide your personal information to JuicyAds at your own risk.

**3.      Use of Site**

3.1      License. During this agreement, JuicyAds hereby grants you a nonexclusive, nontransferable license to access the Site and its software for your use in accordance with this agreement. You will not reproduce, distribute, modify, create derivative works of, publicly display, publicly perform, republish, download, store, or transmit any of the material on the Site.

3.2      Intellectual Property Rights. The Site and its entire contents, features, and functionality (including all information, software, text, displays, images, video, and audio, and the design, selection, and arrangement of it) are owned by JuicyAds, its licensors, or other provides of the material and are protected by Canadian and international copyright, trademark, patent, trade secret, and other intellectual property or proprietary rights laws.

3.3      Trademarks. JuicyAds's name, the terms JUICYADS®, THE SEXY ADVERTISING NETWORK™, THE MOST SEXY ADVERTISING NETWORK ON THE PLANET™, the JuicyAds logo, and all related names, logos, product and service names, designs, and slogans are trademarks of JuicyAds or its affiliates or licensors. You will not use these marks without JuicyAds's advance written permission. All other names, logos, product and service names, designs, and slogans on the Site are the trademarks of their respective owners.

3.4      User Conduct. You will use the Site only for lawful purposes and in accordance with this agreement. You will not engage in any of the following prohibited activities:

(a)      copying, distributing, or disclosing any part of the Site in any medium, including by any automated or non-automated "scraping;"

(b)      transmitting spam, chain letters, or other unsolicited email;

(c)      attempting to interfere with, comprise the system integrity or security of, or decipher any transmissions to or from the servers running the Site;

(d)      taking any action that imposes, or may impose at our sole discretion an unreasonable or disproportionately large load on Site infrastructure;

(e)      uploading invalid data, viruses, worms, or other software agents through the Site;

(f)      collecting or harvesting any personally identifiable information, including account names, from the Site;

(g)      using the Site for any commercial solicitation purposes;

(h)      impersonating another person or otherwise misrepresenting your affiliation with a person, conducting fraud, hiding or attempting to hide your identity;

(i)      interfering with the proper working of the Site;

(j)      accessing any content on the Site through any technology or means other than those provided or authorized by the Site; or

(k)      bypassing the measures JuicyAds may use to prevent or restrict access to the Site, including features that prevent or restrict use or copying of any content or enforce limitations on use of the service or the content in it.

**4.      Statements of Fact**

4.1      By Publisher. You state that the following facts are accurate and will continue to be accurate during this agreement:

(a)      If you are an individual, you are at least 18-years old, have reached the age of majority in your jurisdiction, and have the legal capacity to enter into this agreement. If you are an entity, you are duly organized, validly existing, and in good standing as a corporation or other entity under the laws of your jurisdiction of incorporation, organization, or chartering;

(b)      You have the power to enter into this agreement and to perform your obligations under this agreement;

(c)      You own or have the right to use the Publisher Websites associated with your account, and you own or have a license for all content found on the Publisher Websites, including all text, audio, images, and videos displayed on the Publisher Websites;

(d)      The Publisher Websites do not violate any law, including any law governing false or deceptive advertising, sweepstakes, gambling, comparative advertising, or trade disparagement;

(e)      The Publisher Websites do not contain any infringing content or otherwise infringe any copyright, patent, trademark, trade secret, or other intellectual property right of any person;

(f)      The Publisher Websites do not breach any duty toward or rights of any person, including rights of publicity or privacy, and have not otherwise resulted in or are not likely to result in any consumer fraud, product liability, tort, breach of contract, injury, damage, or harm to any person;

(g)      The Publisher Websites do not depict bestiality, necrophilia, genital mutilation, sadomasochistic abuse or bondage, defecation, urination, bleeding, enema play, menstruation, rape, extreme violence, torture, incest, or any other obscene material;

(h)      The Publisher Websites do not depict child pornography or minors in adult or sexual situations or otherwise target persons under 18-years old;

(i)      The Publisher Websites are not false, deceptive, or misleading;

(j)      The Publisher Websites are not defamatory, libelous, slanderous, or threatening;

(k)      The Publisher Websites are free of viruses, Trojan horses, trap doors, back doors, Easter eggs, worms, time bombs, cancelbots, "spyware," "malware," "ransomware," and any other computer programming routines that may potentially damage, interfere with, intercept, or expropriate any system, data, or personal information;

(l)      You and the Publisher Websites comply with 18 U.S.C. §§ 2257–2257A, including the implementing regulations codified at 28 C.F.R. Part 75;

(m)      You will not breach any obligation or agreement by entering into this agreement, by performing your obligations under this agreement, or by authorizing JuicyAds to perform any services under this agreement;

(n)      All information provided by you to JuicyAds is accurate and is not misleading;

(o)      You will not fraudulently or purposely manipulate the content of the Publisher Websites in a way that may result in the serving of less contextually relevant advertising;

(p)      You will not:

(i)      generate fraudulent, automated, or otherwise invalid actions, clicks, or impressions;

(ii)      use robots or other automated query tools or computer generated search requests or any other search engine results optimization techniques or software unless authorized by JuicyAds in writing; or

(iii)      authorize another person to do (i) or (ii).

(q)      You will not upload, post, email, transmit, or otherwise make available any content, material, data, work, designation, trademark, service mark, trade name, link, advertising, or services that actually or potentially

(i)      violates any law, including false, deceptive, or misleading advertising or unfair competition under the laws of any jurisdiction;

(ii)      infringes or misappropriates any proprietary, intellectual property, contract, or tort right of any person; or

(iii)         to a reasonable person, may be abusive, defamatory, invasive of privacy, harassing, threatening, malicious, or otherwise objectionable or derogatory about JuicyAds or any other person;

(r)         You are not an individual, organization, or entity listed on The Office of Foreign Assets Control Specially Designated Nationals or Blocked Persons list, as published and updated by the United States Department of Treasury; and

(s)         Your collection and use of personally identifiable information does not—and will not during this agreement—breach JuicyAds's privacy policy or violate any law that governs your collection and use of personal information.

4.2         By Advertiser. You state that the following facts are accurate and will continue to be accurate during this agreement:

(a)         If you are an individual, you are at least 18-years old, have reached the age of majority in your jurisdiction, and have the legal capacity to enter into this agreement. If you are an entity, you are duly organized validly existing, and in good standing as a corporation or other entity under the laws of your jurisdiction of incorporation, organization, or chartering;

(b)         You have the power to enter into this agreement and to perform your obligations under this agreement;

(c)         You are authorized to act for and bind to this agreement any nonparty for which you advertise;

(d)         You own or have a license to use the ads, and you have the right to use the entire content and subject matter contained in the ads;

(e)         The ads do not violate any law, including any law governing false or deceptive advertising, sweepstakes, gambling, comparative advertising, or trade disparagement;

(f)          The ads do not infringe any copyright, patent, trademark, trade secret, or other intellectual property right of any third party;

(g)         The ads do not depict bestiality, necrophilia, genital mutilation, sadomasochistic abuse or bondage, defecation, urination, bleeding, enema play, menstruation, rape, extreme violence, torture, incest, or any other obscene material;

(h)         The ads do not depict child pornography or minors in adult or sexual situations or otherwise target persons under 18-years old;

(i)          The ads are not false, deceptive, or misleading;

(j)          The ads are not defamatory, libelous, slanderous, or threatening;

(k)         The ads are free of viruses, Trojan horses, trap doors, back doors, Easter eggs, worms, time bombs, cancelbots, "spyware," "malware," "ransomware," and other computer programming routines that may potentially damage, interfere with, intercept, or expropriate any system, data, or personal information;

(l)          You and your ads comply with 18 U.S.C. §§ 2257–2257A, including the implementing regulations codified at 28 C.F.R. Part 75;

(m)        You will not breach any obligation or agreement by entering into this agreement, by performing your obligations under this agreement, or by authorizing JuicyAds to perform any services under this agreement;

(n)         All information provided by you to JuicyAds is accurate and is not misleading;

(o)         You will not upload, post, email, transmit, or otherwise make available any content, material, data, work, designation, trademark, service mark, trade name, link, advertising, or services that actually or potentially

(i)          violates any law, including false, deceptive, or misleading advertising or unfair competition under the laws of any jurisdiction;

(ii)         infringes or misappropriates any proprietary, intellectual property, contract, or tort right of any person; or

(iii)        to a reasonable person, may be abusive, defamatory, invasive of privacy, harassing, threatening, malicious, or otherwise objectionable or derogatory about JuicyAds or any other person;

(p)         You are not an individual, organization, or entity listed on The Office of Foreign Assets Control Specially Designated Nationals or Blocked Persons list, as published and updated by the United States Department of Treasury; and

(q)        Your collection and use of personally identifiable information does not—and will not during this agreement—breach JuicyAds's privacy policy or violate any law that governs your collection and use of personal information.

**5.        Communications Solely with JuicyAds.** You will direct all communications relating to the Platform to JuicyAds and not to any advertiser or publisher.

**6.        Acceptable Use Policies.** To participate in the Platform, you must comply with the applicable acceptable use policy attached to this agreement or otherwise located on the Site. It is your responsibility to keep up to date and adhere to these policies. Failure to comply with these policies may result in JuicyAds limiting or suspending the delivery of any services or participation in the Platform or may result in the termination of this agreement. Failure to abide by the applicable acceptable use policy will be grounds for JuicyAds's immediate termination of this agreement.

**7.        Payments to Publishers**

7.1        JuicyAds will pay you a percentage of the sale price paid by the advertiser for the advertisements displayed on the Publisher Websites as determined by JuicyAds. JuicyAds will receive a 25% default commission. JuicyAds will subtract this commission from your account balance on each transaction. Your actual commission rate may vary and is set at JuicyAds's sole discretion.

7.2        JuicyAds deposits funds to your account balance daily based on the previous net seven date (payment of account balances vary between seven and thirty days). You may request to withdraw the balance at any time, on condition that the balance is greater than or equal to the minimum payable amount (generally $25, but some payment methods have higher minimums). JuicyAds will process withdrawal requests in accordance with the payment schedules and policies for the payment method selected. If your balance is less than the minimum payable amount, JuicyAds will not process the request until the minimum payable amount is satisfied.

7.3        You acknowledge that JuicyAds will only be liable to you for your revenue based on payments from advertisers that it has received without restrictions that constitute immediately-available funds to JuicyAds. While JuicyAds will use reasonable efforts to timely bill, collect, and clear payment from the advertisers, JuicyAds will not be liable to you for payments due but unpaid from advertisers. If payment from an advertiser is later reversed at any time, JuicyAds may deduct that amount from your future payments.

7.4        If you dispute any payment made by JuicyAds in connection with the Platform, you will notify JuicyAds in writing no later than 30 days after the disputed payment. Failure to notify JuicyAds within this period will result in your waiver of any claims related to the disputed payment.

7.5        JuicyAds will calculate your payment solely based on the records kept by JuicyAds. No other measurements or statistics will be accepted by JuicyAds or have any effect under this agreement.

7.6        JuicyAds will not be liable for any payment based on any of the following:

(a)        any fraudulent impressions or clicks generated by any person, robot, automated program, or similar device or for fraudulent impressions or clicks similarly generated on any advertisements, as reasonably determined by JuicyAds;

(b)        advertisements delivered to end users whose browsers have JavaScript disabled; or

(c)        impressions commingled with a significant number of fraudulent impressions or fraudulent clicks described in section 7.6(a), or as a result of another breach of this agreement by you for any applicable pay period.

7.7        JuicyAds may withhold payment or charge back your account due to any of the items identified in section 7.6 or any breach of this agreement by you. In addition, if you are past due on any payment to JuicyAds in connection with the Platform, JuicyAds may withhold payment until you have made all outstanding payments. If you are in breach of this agreement, JuicyAds will not pay you for any advertising sold, including any existing, accrued, or pending earnings.

7.8        To ensure proper payment, you will provide and keep accurate contact and payment information associated with your JuicyAds account. You bear full responsibility for any fees incurred due to inaccurate information provided to JuicyAds. JuicyAds will deduct from a reissued payment any bank fees related to returned or cancelled checks due to a contact or payment information error or omission.

**8.        Referral Bonus.** JuicyAds will pay you a 20% revenue share for referring publishers who sell direct ad spots to advertisers. The 20% rate is based on JuicyAds's commission, and is paid out indefinitely, subject to change. JuicyAds will not pay you for referring yourself, and you cannot be paid using more than one account. JuicyAds will not tolerate self-dealing, including through the fraudulent creation of several accounts for one individual's use, and will terminate your accounts and permanently ban you from the Platform.

## 9.    Payments from Advertisers

9.1    You will prefund your JuicyAds account with your advertising budget. You will pay all charges set in your JuicyAds account, and will pay all charges in U.S. Dollars or in any other currency that JuicyAds agrees to in writing. Unless JuicyAds otherwise agrees in writing, you will pay all charges in accordance with the payment terms in the applicable campaign settings, including any taxes. Charges are exclusive of taxes.

9.2    You waive all claims relating to charges (including any claims for charges based on suspected invalid clicks) unless disputed no later than 30 days after the charge (this does not affect your credit card issuer rights). Charges are solely based on JuicyAds's measurements for the campaign. JuicyAds is not required to extend credit to you.

9.3    You acknowledge that JuicyAds may share any credit card and related billing and payment information that you provide to it with companies who work on JuicyAds's behalf, including payment processors or credit agencies, solely to check credit, effect payment to JuicyAds, and service your account.

9.4    JuicyAds may withhold deposit or charge your account due to any breach of this agreement by you.

## 10.    Canadian Sales Taxes

10.1    Doing Business Outside Canada. If you have provided JuicyAds with an address outside Canada, JuicyAds will assume that you are not a resident of Canada and that you do not have a permanent establishment in Canada, as both of these terms are defined in the Excise Tax Act (Canada), and accordingly, no Goods and Services Tax ("GST"), Harmonized Sales Tax ("HST"), or Quebec Sales Tax ("QST") will apply to any charges for participating in the Platform.

10.2    Doing Business Inside Canada. If you have provided JuicyAds with an address inside Canada and payment originates from inside Canada, JuicyAds will assume that for tax purposes, you are based in Canada, and accordingly, GST, HST, or QST may apply to any charges for participating in the Platform. Sales taxes will be based on rates as published by the Canada Revenue Agency and otherwise as applicable for each Province in Canada on one or more occasions.

## 11.    Autorenewal and Autopayments. Autorenewal is an optional service that JuicyAds offers to advertisers that allows advertising space to be automatically rebilled indefinitely and debited from advertisers' JuicyAds account balance. If you subscribe to JuicyAds's autorenewal service, you acknowledge the following:

11.1    You are responsible for management of your autorenewal settings, which you can enable or disable at any time via your online account.

11.2    Autorenewal amounts are identical to the previously agreed purchase price for each individual ad.

11.3    You will be automatically rebilled from your account balance for advertising space with autorenew enabled.

## 12.    Advertiser Refund Policy; Balance Withdrawal

12.1    JuicyAds will investigate all refund requests before issuing a refund. You will make all refund requests no later than 30 days after the initial purchase date. JuicyAds issues refunds at its sole discretion, subject to the following conditions:

(a)    JuicyAds will not issue refunds to advertisers based on poor advertisement click or conversion performance.

(b)    If JuicyAds issues a refund, it will be provided only for undelivered advertising time due to outage, technical malfunction, or other reason justifying a refund as JuicyAds determines in its sole discretion, and will not include delivered advertising time or delivered ad impressions.

(c)    JuicyAds may issue a full or partial refund if you provide JuicyAds with proof of prohibited use by a participating publisher.

(d)    Any participating publisher, or JuicyAds, can refund any advertiser ad at any time in their sole discretion.

(e)    If JuicyAds cancels or terminates your account because you breached this agreement, JuicyAds will not issue you a refund.

(f)    If JuicyAds gives you a refund, your refund will be credited back to the same payment method used to make the payment/deposit. JuicyAds will not make refunds to any other payment method than the payment method originally used. No exceptions.

12.2    Once you make an initial deposit, you may request a withdrawal of your account balance if you are not satisfied with the Platform and you

are otherwise in compliance with this agreement. Any refund issued under this section 12.2 is subject to section 12.1(g).

## 13. Publisher Ad Implementation

13.1      You will comply with all specifications provided by JuicyAds for the proper display of ads in connection with the Platform. JuicyAds prohibits modification or abuse of advertising display or manipulation of ad code.

13.2      You acknowledge the following:

(a)      You are responsible for accurate ad pricing and purchase prices provided to participating advertisers. JuicyAds will not be liable for any errors related to ad pricing.

(b)      You will select accurate settings for the Publisher Website category, niche, or rating. JuicyAds may change or restrict your settings if they are inaccurate.

(c)      Your use of ad zones in connection with "Float Ad" or In-Video placements, including "Pre-Loads" or "Post-Roll," is allowed only with the "300×250 for Layer/Float/Video Ads" advertising type and requires that a "Close" button/link be immediately clickable by the end user. For your reference, please see http://www.juicyads.com/tos-videoads.gif.

## 14. Ad Delivery

14.1      You acknowledge that for direct buy ads, the click statistics provided are based on past performance of other advertisers and might not reflect the actual traffic they may receive. Actual clicks to an advertiser's website will vary and may be higher or lower than past performance.

14.2      Ad delivery depends on the advertising type and the way the advertiser is paying for it. For example, depending on the advertising type (Direct Buy, Network Ads, PopUnders, or Redirects), ads may be delivered by time, clicks, or impressions. Payment methods may include flat rate, pay per click, pay per impression, pay per action, or any combination of these.

14.3      You may have your transactions voided or partially credited if they fail to deliver purchased ad space and time. Refunds will be at the sole discretion of JuicyAds. These circumstances include:

(a)      Publishers who remove ad zones from their websites while ads are sold to an advertiser. Ads must be refunded before removing an ad zone.

(b)      Publishers who mislead advertisers by providing placement descriptions that are inaccurate.

## 15. Prohibited Uses

15.1      You will not contribute, submit, register, or otherwise make available through the Platform any website or content that (a) infringes another person's intellectual property rights; (b) is libelous, defamatory, obscene, abusive, or offensive; or (c) otherwise violates any law or right of any person. Any fraudulent, abusive, infringing, or otherwise illegal activity is grounds for termination of your right to use the Platform or access the Site.

15.2      You will not, and you will not authorize or encourage any other person to:

(a)      directly or indirectly generate queries, referral events, or impressions of or clicks on any ad through any automated, deceptive, fraudulent, or other invalid means, including through repeated manual clicks, the use of robots or other automated scripts, query tools, or computer generated search requests, generating blind clicks on any advertisement or zone, or the unauthorized or fraudulent use of other search engine optimization services or software;

(b)      generate impressions or clicks on any type of advertisement through any method that does not display the advertisement as provided by JuicyAds, including IFRAME, IMG SRC, or "ClickJacking;"

(c)      use any advertisement link outside the provided ad zone code, including blind/direct linking or popups/popunders;

(d)      edit, modify, filter, truncate, or change the order of the information contained in any ad, or remove, obscure, or minimize any ad in any way, or the use of IFRAME or IMG SRC scripting or tags without JuicyAds's advance written approval;

(e)      frame, minimize, remove, or otherwise inhibit the complete display of any webpage accessed by an end user after clicking on any part of

an ad;

(f)         redirect an end user away from any advertiser page accessed by an end user after clicking on any part of an advertisement; provide a version of the advertiser page that is different from the page an end user would access by going directly to the advertiser page; display a separate, unauthorized interstitial advertisement before directing an end user to a webpage accessed by clicking on any part of an advertisement; intersperse any content between the ad and the advertiser page; or otherwise provide anything other than a direct link from an ad to an advertiser page;

(g)         display any ads on any webpage or any website that contains any hate-related, violent, illegal, or infringing (including pirated) content;

(h)         directly or indirectly access, launch, or activate ads through or from, or otherwise incorporate the ads in, any software application, website, or other means other than the Publisher Websites, and then only to the extent expressly permitted by this agreement;

(i)         "crawl," "spider," index, or in any non-transitory way store or cache information obtained from any ads, or any part, copy, or derivative of it;

(j)         act in any way that violates any other agreement between you and JuicyAds;

(k)         disseminate or cause the spread of malware, ransomware, Trojans, viruses, malicious code, or auto-installing scripts;

(l)         use the Platform to solicit or privately contact participating publishers or advertisers for private advertising deals;

(m)         use proxy services, including TOR or VPN, IP or MAC address spoofing, or modification of any visitor data;

(n)         mislead any person to click an advertisement in any way, including making false, misleading, or invalid claims, statements, or promises;

(o)         send unsolicited "spam" emails, post "spam" links, or any other "spam" activity through any electronic media to promote or otherwise solicit traffic or clicks to any publisher website;

(p)         use ad zones as Float/Layer/Video ads, except in compliance with the guidelines in section 13.2(c);

(q)         create a new account to use the Platform after JuicyAds has suspended or terminated you as a result of your breach of this agreement; or

(r)         engage in any action or practice that reflects poorly on JuicyAds or otherwise disparages or devalues JuicyAds's reputation or goodwill.

15.3      You acknowledge that any attempted participation in or violation of any of the above is a material breach of this agreement and that JuicyAds may pursue all legal and equitable remedies against you, including an immediate suspension of your account or termination of this agreement.

**16.**      **Investigation.** JuicyAds may investigate any aspect of your account at any time without notice. JuicyAds may restrict your payments or access to the Platform while an investigation is pending. JuicyAds may run diagnostic tests on impressions or clicks without paying any compensation or other concession to you.

**17.**      **Publicity**

17.1      JuicyAds may use your trade names, trademarks, service marks, or logos in presentations, marketing materials, customer lists, financial reports, website listings of customers, or advertisements without your approval.

17.2      You may use JuicyAds's trade names, trademarks, service marks, logos, domain names, and other distinctive brand features so long as the use complies with this agreement.

**18.**      **Confidentiality**

18.1      Neither party will use or disclose to any third party the other party's Confidential Information except as necessary for the performance of this agreement or to enforce this agreement. The confidentiality obligations will not restrict either party from disclosing Confidential Information of the other party in accordance with a court order from a court of competent jurisdiction, on condition that the party required to make the disclosure gives reasonable advance written notice to the other party so that it may contest the order and if that disclosure is required, only discloses the part of the Confidential Information that its legal counsel advises is legally required.

18.2      "Confidential Information" consists of (a) any technical information or plans concerning the Platform or any software or other technology of JuicyAds; (b) any financial information of the other party; (c) other information disclosed by one party to the other party that is marked as confidential

or should reasonably be assumed to be confidential under the circumstances; and (d) the content of this agreement. "Confidential Information" does not include information that (a) is or becomes generally known to the public through no fault of or breach of the receiving party; (b) is rightfully known by the receiving party at the time of disclosure without an obligation of confidentiality; (c) is independently developed by the receiving party without use of the disclosing party's Confidential Information; or (d) is obtained by the receiving party rightfully from a third party who has no duty of confidentiality to the disclosing party.

**19.      Data Protection; Information Rights**

19.1      You will include conspicuously on your websites a privacy policy that

(a)           describes how you collect, use, store, and disclose end user personal data;

(b)           discloses the use of, as applicable, cookies, web beacons, and similar tracking technologies on your websites or online advertising campaigns;

(c)           offers an easy to use "opt-out" method for the end user to opt-out of data collection and targeting;

(d)           complies with all applicable laws (including the European General Data Protection Regulation (GDPR) if you are collecting personal data from data subjects in the European Economic Area) and best practice standards; and

(e)           contains language materially similar to the following:

We use third-party companies to serve ads and collect nonpersonally identifiable information (e.g., the pages you visit, and which links you click, which ads you see and click on, and the categories of search terms you enter) when you visit our website. These companies may use the information outlined above (which does not include your name, address, email address, or telephone number) about your visits to this and other websites to provide advertisements about goods and services of interest to you. These companies often use a cookie or third-party web beacon to collect this information.

19.2      For information about how JuicyAds collects, uses, and shares your information, please review the JuicyAds Privacy Policy. You acknowledge that by using the Site you consent to the collection, use, and sharing (as set out in the privacy policy) of this information, including the transfer of this information to Canada or other countries for storage, processing, and use by JuicyAds.

19.3      JuicyAds may retain and use, subject to its privacy policy, all information you provide, including website demographics and contact and billing information. JuicyAds may transfer and disclose to nonparties personally identifiable information about you to approve your participation in the Platform, including to nonparties that reside in jurisdictions with less restrictive data protection laws than your own. JuicyAds may also provide information in response to valid legal process, including subpoenas, search warrants, and court orders, or to establish or exercise its legal rights or defend against legal claims. JuicyAds will not be liable to you for any disclose of that information by any nonparty. JuicyAds may share nonpersonally identifiable information about you, including website URLs, website-specific statistics, and similar information collected by JuicyAds, with advertisers, business partners, sponsors, and other nonparties. In addition, you grant JuicyAds the right to access, index, and cache the Websites, or any part of them, including by automated means including Web spiders or crawlers.

**20.      No-disparaging.** During this agreement and for two years after its termination, you will not take any action that is intended, or would reasonably be expected, to harm JuicyAds or its reputation or that would reasonably be expected to lead to unwanted or unfavorable publicity to JuicyAds. But nothing will prevent you from making any truthful statement in connection with any legal proceeding or investigation by JuicyAds or any government body.

**21.      No Guarantee.** JuicyAds is not making any guarantee about the level of impressions of ads or clicks on any ad, the timing of delivery of impressions or clicks, the completion of referral events, or the amount of any payment to be made to you under this agreement. You acknowledge that past advertisement performance does not guarantee or suggest similar future performance. You further acknowledge that sophisticated click fraud exists, is not preventable, and that new methods may come into existence.

**22.      No Responsibility for Publisher Websites.** JuicyAds does not own, operate, control, or host the content found or displayed on participating publisher websites and is not able to remove participating publisher websites from the Internet. Participating publishers are solely responsible for the development, operation, and maintenance of their publisher websites and all materials that appear on their publisher websites used in connection with the Platform. JuicyAds disclaims any ownership or control of participating publishers' websites or content, and thus any liability arising from participating publishers' websites or content. You acknowledge full responsibility for the Publisher Websites and for your activities in conjunction with the Publisher Websites. You are responsible for making sure materials made available through the Publisher Websites

do not violate any laws, including 18 U.S.C. §§ 2257–2257A, or infringe on the intellectual property or privacy rights of any person, including third party copyrights, patents, and trademarks.

**23.        Disclaimers**

23.1        You acknowledge that JuicyAds has no special relationship with or fiduciary duty to you and that JuicyAds has no control over, and no duty to take any action regarding:

(a)        which users gain access to the Site, services, or the Platform;

(b)        what content you access or receive via the Site or services, including text, images, or links;

(c)        what content other advertisers and publishers may make available, publish, or promote in connection with the Platform;

(d)        what effects any content may have on advertisers or publishers or their users or customers;

(e)        how you or your users or customers may interpret, view, or use the content of the Site;

(f)        what actions you or your users or customers may take as a result of having been exposed to any content; or

(g)        whether the content is being displayed properly in connection with the Platform.

23.2        You acknowledge that JuicyAds has no control over (and is merely a passive conduit with respect to) any content that may be submitted or published by any advertiser, and that you are solely responsible (and assume all liability and risk) for determining whether that content is appropriate or acceptable to you. You acknowledge that JuicyAds has no control over any content that may be available or published on any publisher website (or otherwise), and that you are solely responsible (and assume all liability and risk) for determining whether that content is appropriate or acceptable to you.

23.3        JuicyAds does not control, endorse, or adopt any ad and is not making any warranty about the content of the ads, including about the accuracy or decency of any ad. JuicyAds will not be liable for any ad and is not required to change, update, or review any ad. You will not remove, obscure, hinder, reverse engineer, or otherwise interfere with any ad on the Publisher Websites.

23.4        You hereby release JuicyAds from all liability in any way relating to your acquisition (or failure to acquire), provision, use, or other activity with respect to the content in connection with the Site or services. The Site may contain, or direct you to websites containing, material that some people may find offensive or inappropriate. JuicyAds is not making any representations concerning any content contained in or accessed through the Site or services, and JuicyAds will not be liable for the accuracy, copyright/trademark compliance, legality, or decency of material contained in or accessed through the Site, the services, or the Platform.

23.5        JuicyAds is not making any warranty—express, implied, oral, or otherwise—that

(a)        the use of the Platform, the services, or the Site will be timely, uninterrupted, or error-free (whether as a result of technical failure, acts or omissions of third parties, or other causes) or will operate in combination with any other hardware, software, system, or data;

(b)        the Platform, the services, or the Site will be suitable or meet your requirements or expectations;

(c)        the results of any advertising campaign or the quality or productivity of advertisements or web traffic will meet your requirements or expectations;

(d)        the Platform, the services, or the Site will be available, accurate, or reliable;

(e)        errors or defects in the Platform, the services, or the Site will be corrected; or

(f)        the servers that make the Platform, the services, and the Site available are free of viruses or other harmful components.

23.6        JuicyAds offers the Platform, the services, and the Site "as is." JuicyAds is not making any warranty, either express or implied, including implied warranty of merchantability, fitness for a particular purpose, noninfringement, title, and privacy for the Platform, the services, and the Site. No advice or information, whether oral or written, obtained from JuicyAds, the Site, or elsewhere will create any warranty not expressly stated in this agreement.

### 24. Limitation of Liability

24.1    The Platform, the services, or the Site may be subject to limitations, delays, and other problems inherent in the use of the Internet and electronic communications. JuicyAds will not be liable for any delays, delivery failures, or other damage resulting from these problems.

24.2    JuicyAds will not be liable to you for any of the following:

(a)        Errors, mistakes, or inaccuracies of the Platform, the services, or the Site;

(b)        Content or conduct that is infringing, inaccurate, obscene, indecent, offensive, threatening, harassing, defamatory, libelous, abusive, invasive of privacy, or illegal;

(c)        Unauthorized access to or use of JuicyAds's servers and any personal or financial information stored in them, including unauthorized access or changes to your account, submissions, transmissions, or data;

(d)        Interruption or cessation of transmission to or from the Site;

(e)        Bugs, viruses, Trojan horses, malware, ransomware, distributed denial-of-service attack (DDoS), or other disabling code that may be transmitted to or through the Site by any person or that might infect your computer or affect your access to or use of the Platform, the services, the Site, or your other services, hardware, or software;

(f)        Incompatibility between the Platform, the services, or the Site and your other services, hardware, or software;

(g)        Delays or failures you might experience in starting, conducting, or completing any transmissions to or transactions through or with the Site; or

(h)        Loss or damage incurred because of the use of any content posted, emailed, sent, or otherwise made available through the Site.

24.3    JuicyAds will not be liable to you for breach-of-contract damages that JuicyAds could not reasonably have foreseen on entry into this agreement. Further, JuicyAds will not be liable to you—regardless of theory of liability and even if you advised JuicyAds of the possibility of these damages—for damages for: (a) loss of use; (b) loss of services; (c) loss of profits; (d) loss of revenues; (e) loss of goodwill; (f) loss of contracts; (g) loss of data; (h) loss of privacy; (i) loss of business or opportunity; (j) computer failure related to your access of or your inability to access the Platform, the services, or the Site; or (k) cost of obtaining substitute services related to the Platform, the services, or the Site.

24.4    Except as stated in this agreement, neither party will be liable to the other party for indirect, incidental, special, statutory, exemplary, or punitive damages arising from this agreement, regardless of theory of liability and even if that party has been advised of the possibility of these damages, including loss of revenue or anticipated profits or lost business.

24.5    JuicyAds's total cumulative liability to you will not exceed the greater of the total amount owed to you under this agreement and $500.

### 25. Indemnification

25.1    In General. You will pay JuicyAds for any loss of JuicyAds's that is caused by your (a) use of the Platform or services, (b) advertisements, (c) Publisher Websites, (d) selection and use of targets, (e) breach of this agreement, (f) actual or alleged infringement of third-party intellectual property rights, (g) actual or alleged violation of any other third-party rights, (h) actual or alleged violation of applicable law, (i) actual or alleged fraudulent or deceptive conduct or trade practices, or (j) any other actual or alleged tortious acts or omissions. But you are not required to pay if the loss was caused by JuicyAds's actual intentional misconduct.

25.2    Definitions

(a)        "Loss" means an amount that JuicyAds is legally responsible for or pays in any form. Amounts include, for example, a judgment, a settlement, a fine, damages, injunctive relief, staff compensation, a decrease in property value, and expenses for defending against a claim for a loss (including fees for legal counsel, expert witnesses, and other advisers). A loss can be tangible or intangible; can arise from bodily injury, property damage, or other causes; can be based on tort, breach of contract, or any other theory of recovery; and includes incidental, direct, and consequential damages.

(b)        A loss is "caused by" an event if the loss would not have occurred without the event, even if the event is not a proximate cause of the loss.

25.3    JuicyAds's Duty to Notify. JuicyAds will notify you before the 15th business day after JuicyAds knows or should reasonably have known of a claim for a loss that you might be obligated to pay. JuicyAds's failure to timely notify you does not terminate your obligation, except to the extent that the failure prejudices your ability to defend the claim or mitigate losses.

25.4    Legal Defense of a Claim

(a)    JuicyAds's Control. JuicyAds has control over defending a claim for a loss (including settling it), unless JuicyAds directs you to control the defense.

(b)    Direction to Control. If JuicyAds directs you to control the defense, each of the following applies:

(i)    You may choose and retain legal counsel.

(ii)    JuicyAds may retain its own legal counsel at its expense.

(iii)    You will not settle any litigation without JuicyAds's written consent if the settlement (1) imposes a penalty or limitation on JuicyAds, (2) admits JuicyAds's fault, or (3) does not fully release JuicyAds from liability.

(c)    Good Faith. You and JuicyAds will cooperate with each other in good faith on a claim.

25.5    No Exclusivity. JuicyAds's rights under this section 25 do not affect other rights that JuicyAds might have.

**26.    Dispute Resolution**

26.1    Litigation Election. Either party may elect to litigate the following type of case or controversy: (a) an action seeking equitable relief, (b) a dispute related to claims subject to indemnification under section 25, or (c) a suit to compel compliance with this section 26.

26.2    Negotiation. Each party will give the other a reasonable opportunity to comply before it claims that the other has not met its obligations under this agreement. The parties will first meet and negotiate with each other in good faith to try to resolve all disputes between the parties arising out of, or relating to the subject matter of, this agreement. The party raising a dispute will submit to the other party a written notice and supporting material describing all issues and circumstances related to the dispute (a "dispute notice"). A primary representative designated by each party will try to resolve the dispute.

26.3    Arbitration

(a)    If the parties' primary representatives are unable to resolve the dispute no later than 30 days after receiving the dispute notice, the parties will settle any unresolved dispute arising out of or relating to the subject matter of this agreement, or the breach of it, by arbitration administered by the ADR Institute of Saskatchewan in accordance with the Arbitration Rules of the ADR Institute of Canada, Inc. The arbitrator, and not any court or agency, will have exclusive authority to resolve any dispute arising under or relating to the interpretation, applicability, enforceability, or formation of this agreement, including any claim that any part of this agreement is void or voidable.

(b)    A single arbitrator will preside over the arbitration and issue a final award on all issues submitted to the arbitrator. The arbitrator may grant any relief that would be available in a court, except that the arbitrator must not award punitive or exemplary damages, or damages otherwise limited or excluded in this agreement. The arbitrator's award will bind the parties and any court of competent jurisdiction may enter it as a judgment.

(c)    Arbitration will take place in Regina, Saskatchewan, and the language of the arbitration will be English. Subject to the prevailing party's rights under section 26.6, the parties will bear equally the costs of arbitration, including the fees and expenses of the arbitrator, and each party will bear the costs associated with its case. Unless required by law, neither a party nor an arbitrator will disclose the existence, content, or results of any arbitration under this agreement without the advance written consent of both parties.

26.4    Equitable Remedies. You acknowledge that breach by you of your obligations under this agreement could cause irreparable harm for which damages would be an inadequate remedy. If any breach occurs or is threatened, JuicyAds may seek an injunction, a restraining order, or any other equitable remedy, in each case without posting a bond or other security.

26.5    Jurisdiction and Venue. If a party brings any litigation proceeding authorized under section 26.1, that party will bring that proceeding only in the courts of Regina, Saskatchewan, Canada, and each party hereby submits to the exclusive jurisdiction and venue of those courts for purposes of any proceeding. Each party hereby waives any claim that any proceeding brought in accordance with this section 26.5 has been brought in an inconvenient forum or that the venue of that proceeding is improper.

26.6    Recovery of Expenses. In any proceedings between the parties arising out of, or relating to the subject matter of, this agreement, the prevailing party will be entitled to recover from the other party, in addition to any other relief awarded, all expenses that the prevailing party incurs in those proceedings, including legal fees and expenses. For purposes of this section 26.6, "prevailing party" means, for any proceedings, the party in whose favor an award is rendered, except that if in those proceedings the award finds in favor of one party on one or more claims or counterclaims and in favor of the other party on one or more other claims or counterclaims, neither party will be the prevailing party. If any proceedings are voluntarily dismissed or are dismissed as part of settlement of that dispute, neither party will be the prevailing party in those proceedings.

26.7    Jury Trial Waiver. Each party hereby waives its right to a trial by jury in any proceedings arising out of, or relating to the subject matter of, this agreement. Either party may enforce this waiver up to and including the first day of trial.

26.8    Class Action Waiver. The parties will conduct all proceedings to resolve a dispute in any forum on an individual basis only. Neither you nor JuicyAds will seek to have any dispute heard as a class action or in any other proceeding in which either party acts or proposes to act in a representative capacity. The parties will not combine any proceeding with another without the advanced written consent of all parties to all affected proceedings.

26.9    Limited Time to Bring Claims. A party will not bring a claim arising out of, or related to the subject matter of, this agreement more than one year after the cause of action arose. Any claim brought after one year is barred.

### 27.    Termination; Cancellation

27.1    By JuicyAds. JuicyAds may, at any time, (1) terminate the Platform, (2) suspend your account, (3) terminate this agreement, or (4) cancel one or more ads or your use of any target. JuicyAds will use reasonable efforts to notify you by email of any suspension, termination, or cancellation within a reasonable period.

27.2    By You. You may cancel any ads or terminate this agreement with or without cause at any time by deactivating a campaign in the campaign manager or by removing the ad codes from the Publisher Websites.

27.3    Effect. On termination of this agreement: (a) you will remain liable for any amount due for ads already delivered; and (b) all provisions of this agreement that by their nature should survive termination will survive termination, including disclaimers and limitations of liability.

### 28.    General

28.1    Entire Agreement. This agreement and the acceptable use policy constitute the entire agreement of the parties with respect to the subject matter of this agreement. It supersedes all earlier written or oral discussions, negotiations, proposals, undertakings, understandings, and agreements between the parties concerning the transactions contemplated in this agreement.

28.2    Amendment. JuicyAds may change the terms of this agreement on one or more occasions, on condition that changes will not apply to ongoing disputes or to disputes arising out of events occurring before the posted changes. JuicyAds will notify you through the Site or by email of any changes to this agreement. Changes will become effective when posted on the Site. It is your responsibility to check the Site periodically for changes to this agreement. If you continue to participate in the Platform after any change, JuicyAds will consider your continued participation as acceptance of the change unless you notify JuicyAds in writing of your disagreement no later than 15 days after the change. In your written notice, you must identify each change you disagree with and the reasons for your disagreement. JuicyAds will contact you no later than 15 days after receiving your notice of disagreement to address your notice and try to reach a mutually amicable resolution. If JuicyAds is unable to resolve your disagreement, your sole remedy is to terminate this agreement.

28.3    Assignment and Delegation. You will not assign any of your rights or delegate any performance under this agreement, except with JuicyAds advance written consent. JuicyAds may assign its rights or delegate its performances under this agreement without your consent. Any purported assignment of rights or delegation of performance in breach of this section 28.3 is void.

28.4    Waivers. The parties may waive any provision in this agreement only by a writing signed by the party or parties against whom the waiver is sought to be enforced. No failure or delay in exercising any right or remedy, or in requiring the satisfaction of any condition, under this agreement, and no act, omission, or course of dealing between the parties, operates as a waiver or estoppel of any right, remedy, or condition. A waiver made in writing on one occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver on any future occasion or against any other person.

28.5    Severability. The parties intend as follows:

(a)        that if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b)        that if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c)        that if an unenforceable provision is modified or disregarded in accordance with this section 28.5, then the rest of the agreement will remain in effect as written; and

(d)        that any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

28.6     Notices

(a)        Form. All notices and other communications between the parties will be in writing.

(b)        Method. All notice will be given by (i) personal delivery; (ii) a nationally-recognized, next-day courier service; (iii) first-class registered or certified mail, postage prepaid; or (iv) electronic mail to the following addresses (or any other address either party may specify in writing):

JuicyAds:

Tiger Media Inc.

| | |
|---|---|
| P.O. Box 37204 | **You:** |
| Regina, Saskatchewan | JuicyAds will contact you using the contact information listed in your JuicyAds account. |
| S4S 7K4 | |
| Canada | |

sales@juicyads.com

(c)        Receipt. All notices will be effective on receipt by the party to which notice is given, or on the fifth day after mailing or emailing, whichever occurs first.

28.7     Governing Law. Canadian federal law and the laws of the province of Saskatchewan, without giving effect to its conflicts of law principles, govern all matters arising out of, or relating to the subject matter of, this agreement, including its validity, interpretation, construction, performance, and enforcement.

28.8     Force Majeure

(a)        If a force majeure event prevents a party from complying with any one or more obligations under this agreement, that inability will not constitute a breach if (1) that party uses reasonable efforts to perform those obligations, (2) that party's inability to perform those obligations is not due to its failure to (A) take reasonable measures to protect itself against events or circumstances of the same type as that force majeure event or (B) develop and keep a reasonable contingency plan to respond to events or circumstances of the same type as that force majeure event, and (3) that party complies with its obligations under section 28.8(c).

(b)        For purposes of this agreement, "force majeure event" means, for any party, any event or circumstance, whether or not foreseeable, that was not caused by that party (other than a strike or other labor unrest that affects only that party, an increase in prices or other change in general economic conditions, a change in law, or an event or circumstances that results in that party's not having sufficient funds to comply with an obligation to pay money) and any consequences of that event or circumstance.

(c)        If a force majeure event occurs, the noncomplying party will promptly notify the other party of occurrence of that force majeure event, its effect on performance, and how long the noncomplying party expects it to last. From then on, the noncomplying party will update that information as reasonably necessary. During a force majeure event, the noncomplying party will use reasonable efforts to limit damages to the other party and to resume its performance under this agreement.

28.9     No Third-Party Beneficiaries. This agreement does not, and the parties do not intend it to, confer any rights or remedies on any person

other than the parties to this agreement.

28.10    Relationship of the Parties. The parties intend that their relationship will be that of independent contractors and not business partners. This agreement does not, and the parties do not intend it to, create a partnership, joint venture, agency, franchise, or employment relationship between the parties and the parties expressly disclaim the existence of any of these relationships between them. Neither of the parties is the agent for the other, and neither party has the right to bind the other on any agreement with a third party.

28.11    Successors and Assigns. This agreement binds and inures to the benefit of the parties and their respective successors and assigns. This section 28.11 does not address, directly or indirectly, whether a party may assign its rights or delegate its obligations under this agreement. Section 28.3 addresses these matters.

28.12    Further Assurances. The parties will take any further actions, or sign any further documents, as may be necessary to implement and carry out the intent of this agreement.

28.13    Electronic Signatures. Any affirmation, assent, or agreement you send through the Site in response to a prompt will bind you. You acknowledge that when you click on an "I agree," "I consent," or other similarly worded "button" or entry field using a mouse, keystroke, or other computer device, this action is the legal equivalent of your handwritten signature and binds you in the same way.

28.14    Voluntary Agreement. The parties have signed this agreement voluntarily and for valid reasons. The parties acknowledge that they (i) have carefully read this agreement, (ii) discussed it with their attorneys or other advisors, (iii) understand all of the terms, and (iv) will comply with it. The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement and waive any claim that the terms should be construed against the drafter.

28.15    No Reliance. Each party acknowledges that in signing this agreement, that party does not rely and has not relied on any statement by the other party or its agents, except those statements contained in this agreement.

28.16    Permission to Send Emails to You. You grant JuicyAds permission to email notices, advertisements, and other communications to you, including emails, advertisements, notices, and other communications containing adult oriented material, sexual content and language, and images of nudity unsuitable for minors. Your permission will continue until you ask JuicyAds to remove you from its email list. For more information, please see the privacy policy.

28.17    Electronic Communications Not Private. JuicyAds does not provide facilities for sending or receiving confidential electronic communications. You should consider all messages sent to JuicyAds or from JuicyAds as open communications readily accessible to the public. You should not use the Site to send or receive messages you only intend the sender and named recipients to read. Users or operators of the Site may read all messages you send to the Site regardless of whether they are intended recipients.

28.18    Feedback. JuicyAds encourages you to give feedback about JuicyAds, the Platform, the services, or the Site. But JuicyAds will not treat as confidential any suggestion or idea provided by you, and nothing in this agreement will restrict JuicyAds's right to use, profit from, disclose, publish, or otherwise exploit any feedback, without paying you.

28.19    English Language. JuicyAds has drafted this agreement in the English language. No translation into any other language will be used to interpret or construe this agreement. All services, support, notices, designations, specifications, and communications will be provided in English.

28.20    Definitions. As used in this agreement, the following definitions—irrespective of capitalization or plurality—apply:

(a)        "Advertisers" means persons who buy advertising through the JuicyAds service.

(b)        "Business day" means Monday through Friday, 9:00 a.m. to 5:00 p.m., Central Standard Time (CST), excluding any official public holidays in Canada.

(c)        "Content" means the data contained inside a website, including text, links, software, scripts, graphics, images, sounds, music, videos, audiovisual combinations, interactive features, and any other materials found on a website.

(d)        "Government body" means

(i)        the government of a country or of a political subdivision of a country;

(ii)        an instrumentality of any government;

(iii) any other individual, entity, or organization authorized by law to perform any executive, legislative, judicial, regulatory, administrative, military, or police functions of any government; or

(iv) an intergovernmental organization.

(e) "Intellectual property" means inventions, concepts, techniques, plans, designs, methodologies, procedures, programs, approaches, ideas, know-how, computer software, technology, writings, graphics, other works of authorship, trademarks, service marks, logos, trade names, and (in the case of the last four) the goodwill associated with each.

(f) "Intellectual-property right" means any intellectual-property right or industrial-property right existing by law at the relevant time anywhere in the world, including the right to sue for present or past infringement of it. "Intellectual-property right" includes:

(i) all rights (whether registered or unregistered) in trade secrets; confidential information; inventions, patents; trademarks, service marks, and trade names; Internet domain names; copyrights; designs; rights of publicity; and mask works;

(ii) any application then pending for an intellectual-property right, including an application for a patent or to register a copyright or trademark;

(iii) any right to file an application for an intellectual-property right; and

(iv) any right to claim priority for an application for an intellectual-property right.

(g) "Law" means all provisions of a constitution, statute, regulation, ordinance, rule, judgment, order, or other obligation, requirement, or prohibition having legally binding effect at the relevant time.

(h) "Liability" means liability in or for breach of contract, misrepresentation, restitution, or any other cause of action related to this agreement.

(i) "Person" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other legal entity or organization, or government body.

(j) "Publishers" means persons who sell advertising through the JuicyAds service.

(k) "Representative" means, as to an entity, any of that entity's directors, officers, employees, agents, consultants, advisors, and other representatives.