UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILL CO LTD.,

             Plaintiff,

v.

DOES 1-20, FELLOW SHINE GROUP LIMITED, KAM KEUNG FUNG,

             Defendants.

CASE NO. 3:20-CV-5666-DGE

REPORT AND RECOMMENDATION

Noting Date: September 2, 2022

    This matter comes before the Court on "Defendants' Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction." Dkt. 23-1. On July 19, 2022, after considering the Motion to Dismiss, the Honorable Robert S. Lasnik found Plaintiff Will Co. Ltd. failed to establish personal jurisdiction. Dkt. 43.[1] The Court took the Motion to Dismiss under advisement, provided Plaintiff an opportunity to take jurisdictional discovery from Defendants' Fellow Shine Group Limited ("FSG") and Kam Keung Fung, and stated the Motion to Dismiss would be granted if Plaintiff failed to file a supplemental response. *Id*. at pp. 11-12. Plaintiff, after multiple extensions of time, has now filed a supplemental response to the Motion to Dismiss. The Court has reviewed the relevant record and finds Plaintiff has still not sufficiently

---

[1] The case was reassigned to the Honorable David G. Estudillo on October 18, 2021. Judge Estudillo referred the motion to dismiss to the undersigned on June 27, 2022. Dkt. 64.

REPORT AND RECOMMENDATION - 1

shown this Court has personal jurisdiction over Defendants. Therefore, the Court recommends the Motion to Dismiss (Dkt. 23) be granted and this case be closed.

I.  Background[2]

Plaintiff Will Co. Ltd., a Japanese limited liability company, manages a library of over 50,000 adult entertainment movies, which it offers to the public for viewing for a fee. Defendant FSG is a British Virgin Islands limited liability company that operates out of Taiwan, and Defendant Fung is a resident of Hong Kong. Plaintiff alleges Defendants jointly own and/or operate the website Avgle.com, which allows users to upload and view adult videos. Will Co. discovered its copyrighted works were being displayed on Avgle.com and filed this lawsuit seeking injunctive relief, damages, disgorgement of profits, and the costs of suit. Defendants have moved to dismiss all claims based on a lack of personal jurisdiction.[3]

Defendant FSG hired a Hong Kong company, Awesapp Ltd., to provide general software development services related to the creation and maintenance of Avgle.com. Defendant Fung is a director of Awesapp and, working from Hong Kong, performed or oversaw almost every aspect of Avgle.com's development. Awesapp purchased the domain name Avgle.com and adapted an existing website template and source code to fit the new website's needs.[4] It then took steps to make sure the website was universally accessible. Since its inception, Avgle.com has been hosted on servers in the Netherlands; all of the files that have been uploaded to and displayed on

---

[2] Judge Lasnik previously provided the evidentiary background in this case. Dkt. 43. As a matter of judicial efficiency, the undersigned restates the background from the Court's July 19, 2021 Order (Dkt. 43).
[3] Defendants' request for oral argument was previously denied by Judge Lasnik as he found this matter can be decided on the papers submitted. *See* Dkt. 43.
[4] Mr. Fung states that Awesapp "was hired by FSG to adapt source code from adultvideoscript.com ("AVS") for the needs of Avgle.com" and that he "used the English language version of the template because it was the only language available." Dkt. 23-2 at ¶ 7. FSG asserts that it was Mr. Fung who obtained the AVS template and that it contained the references and links to U.S. law that are found at the bottom of the Avgle.com site. Dkt. 23-3 at ¶ 31.

the website are stored on origin servers in that country. To increase access speeds, Awesapp entered into a relationship with Cloudflare, Inc., a U.S. company, to gain access to Cloudflare's content delivery network ("CDN"). A CDN is a network of servers that are strategically placed around the globe to bring content physically closer to the user and reduce delays. The network caches content in edge servers to facilitate transfers, take the load off of origin servers, and avoid bottlenecks in the network. According to its website, Cloudflare has servers in over 200 cities around the world, spanning over 100 countries. Awesapp uses histats.com to track website traffic and obtain visitor analytics.

In addition to his website development and maintenance tasks, Mr. Fung also oversaw Avgle.com's advertising program. Under his direction, FSG contracted with Tiger Media, Inc., d/b/a JuicyAds, a Canadian advertising broker. FSG makes pop-up space on Avgle.com available to JuicyAds, which in turn sells that space to companies or individuals wanting to advertise to Avgle.com users. JuicyAds contracts with the advertisers, negotiating the terms on which the pop-ups will be seen. FSG is not involved in those negotiations, but it surmises that some of the advertisers choose to specify the countries in which their advertisements will appear and/or the type of user at which their advertisements will be targeted. It is unclear whether FSG is paid a flat fee per advertisement or has a profit-sharing arrangement with JuicyAds, but it has earned approximately $300,000 from advertisements placed by JuicyAds. In addition, Avgle.com provides an avenue for direct advertisement inquiries which has, to date, resulted in two advertising agreements with Chinese companies.

## II. Discussion

It is Plaintiff's burden to establish that this Court can properly exercise jurisdiction over Defendants' persons. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir.

2011). Because the motion to dismiss will be decided on the written submissions of the parties rather than an evidentiary hearing, Plaintiff need only make a prima facie showing of jurisdictional facts to withstand dismissal. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). This prima facie standard "is not toothless." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). While the undisputed allegations of the complaint will be taken as true and conflicts in affidavits will be resolved in Plaintiff's favor, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), disputed allegations cannot establish jurisdiction, *Boon Glob.*, 923 F.3d at 650. Rather, Plaintiff must come forward with evidence in support of the jurisdictional facts alleged.

Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). As Judge Lasnik previously stated, the parties agree Plaintiff is asserting Defendants a subject to specific – not general – personal jurisdiction. *See* Dkt. 43; *see also* Dkt. 28 at 9. Therefore, Plaintiff's jurisdictional claim should be evaluated under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2), which authorizes the exercise of personal jurisdiction where (1) the claim arises under federal law, (2) defendant is not subject to the personal jurisdiction of any state court, and (3) the court's exercise of jurisdiction over defendant comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). At issue in this case is the third requirement.

Due process requires a defendant who is not present in the forum to have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "The due process analysis under Rule 4(k)(2) is nearly

identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Wartsila N. Am.*, 485 F.3d at 462. In the context of a copyright infringement claim, a defendant will have sufficient "minimum contacts" with the forum to warrant the exercise of jurisdiction if the defendant (1) "purposefully directed his activities" toward the United States, (2) the claim "arises out of or relates to the defendant's forum-related activities," and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *AMA Multimedia*, 970 F.3d at 1208 (internal citations omitted).

If the plaintiff establishes the first two factors, the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These considerations include the extent of the defendant's purposeful interjection into the forum, the burden on the defendant, conflict of sovereignty with the defendant's state, the forum state's interest, judicial efficiency, the importance of the forum to the plaintiff's interest in convenient and effective relief, and the alternate forums. *Picot*, 780 F.3d at 1211 (citing *Core-Vent v. Novel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993)).

A. *Purposeful Direction*

To show specific personal jurisdiction, Plaintiff must first show Defendants purposefully directed its activities toward the United States. In this context, a defendant purposefully directs its conduct toward a forum when its actions are intended to have an effect within the forum. *Schwarzenegger*, 374 F.3d at 803. This occurs if the defendant: "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

suffered in the forum state." *Morrill v. Scott Fin. Co.*, 873 F.3d 1136, 1142 (9th Cir. 2017) ("commonly referred to as the *Calder* effects test"); *see also Calder v. Jones*, 465 U.S. 783 (1984).

*Intentional Act.* For personal jurisdiction purposes, "a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *AMA Multimedia*, 970 F.3d at 1209 (quoting *Schwarzenegger*, 374 F.3d at 806). FSG acknowledges that its ownership and operation of the Avgle.com website is a jurisdictionally sufficient "intentional act." Dkt. 23-1 at 12. The Court also found Mr. Fung's actions were intentional acts which satisfy the first prong. Dkt. 43 at 5.

*Expressly Aimed at the Forum.* The next issue is whether FSG and/or Mr. Fung "expressly aimed" their intentional acts at the United States. Simply knowing harm might be inflicted on a plaintiff in the United States does not, in and of itself, establish the express aiming element. Rather, the focus of the analysis is "on defendant's intentional conduct that is aimed at, and creates the necessary contacts with, the forum state." *AMA Multimedia*, 970 F.3d at 1209 n. 5 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017), and *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

In the Response, Plaintiff asserted that FSG and Mr. Fung are subject to specific jurisdiction in the United States because they expressly aimed tortious conduct at the forum by: (1) maintaining a globally-accessible website that appeals to and profits from an audience in the U.S.; (2) targeting advertisements based on the user's presence in the United States; (3) engaging a CDN service to enable the faster and more efficient display of Avgle.com content to viewers in the United States; (4) actively managing the Cloudflare account using United States IP addresses; and (5) representing that the site complied with U.S. law, in particular the Digital

Millennium Copyright Act ("DMCA") and 18 U.S.C. § 2257. Dkt. 28. Judge Lasnik considered each argument raised in Plaintiff's response to the motion to dismiss and determined Plaintiff had "not shown the United States was 'the focal point' of Avgle.com or Defendants' conduct in creating and maintaining the site." Dkt. 43 at 11. Judge Lasnik found Plaintiff had, therefore, failed to show express aiming or purposeful direction, and the Court lacked jurisdiction over Defendants' persons. *Id*.

Judge Lasnik allowed Plaintiff to conduct discovery and file a supplemental response. Dkt. 43. In the supplemental response, Plaintiff states it is reasserting arguments in the response to the motion to dismiss Dkt. 61. However, Plaintiff provides no argument for why this Court should reconsider Judge Lasnik's Order. Therefore, the only arguments before the Court are those raised in the supplemental response.

In the supplemental response, Plaintiff contends Defendants entered into a contract with Tiger Media (JuicyAds) knowing Tiger Media targeted United States viewers. Dkt. 61. In support, Plaintiff submitted the Tiger Media contracts and terms of service agreement. Dkts. 61, 62. Plaintiff relies on the portions of the terms of service agreement that (1) required FSG to state it is complying with United States' law (§§2257-2257A and 28 C.F.R. Part 75); and (2) stated FSG is responsible for both the source of the traffic access to Avgle.com and has ultimate control of the advertisements placed on Avgle.com. *See* Dkt. 61 at 2-3; *see also* Dkt. 62.

Defendants' contract and terms of service agreements with an advertising company based in Canada does not show Defendants expressly aimed intentional acts at the United States. First, courts have held that a website's terms of service involving United States law does not always establish that there is targeting of the United States, but rather that it suggests that the website might have U.S.-based traffic. *See AMA Multimedia*, 970 F.3d at 1212; *Axiom Foods.*, 874 F.3d

at 1069–70. The Court has already determined Defendants' reference to U.S. laws on its website was not sufficient to show express aiming. Dkt. 43 at 10-11. Plaintiff now seeks to draw a connection through a more opaque reference to U.S. laws in JuicyAds' terms of service agreement. The terms of service agreement appears to be a boilerplate terms of service agreement used by JuicyAds with all publishers. *See* Dkt. 62 at 25-42. References to United States' law in JuicyAds' boilerplate terms of service agreement is not sufficient to show an effort by Defendants to target the U.S. market. It is more likely these statements were included because JuicyAds is aware that some publishers it works with would target or have at least some U.S.-based traffic. *See* AMA *Multimedia*, 970 F.3d at 1212. References to United States' laws in JuicyAds' terms of service agreement is not sufficient to show Defendants' intentional actions were expressly aimed at this forum.

      Plaintiff also asserts JuicyAds' terms of service agreement indicates FSG has full control over advertisements and thus actively participates in reviewing and approving advertisements that are specific to and target U.S. viewers. Dkt. 61 at 4. As Judge Lasnik stated, "Tailoring advertisements based on the perceived location of the user simply means that the advertisements are directed at every forum in which users can be found[;] it does not establish the website was expressly aimed at any particular forum." Dkt. 43, p. 9. Moreover, merely operating a universally accessible website does not, standing along, satisfy the express aiming prong: there must be "something more," namely conduct targeting the relevant forum, to constitute express aiming. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002).

      The record reflects JuicyAds' terms of service agreement states that JuicyAds has no control over which users gain access to the JuicyAds site, services, or platform. Dkt. 62 at 35. The terms of service agreement also states that a publisher (FSG) is responsible for determining

whether *content* submitted by an advertiser to be published on a website (Avgle.com) is appropriate and acceptable to the publisher (FSG). Dkt. 62 at 35. There is no indication that FSG is selecting advertisements that target the U.S. or has any knowledge or input regarding what advertisements are placed on Avgle.com. Rather, the terms of service agreement simply indicate FSG is responsible for reviewing advertisements that appear on its website that FSG finds inappropriate. Plaintiff's assertions that language about a publisher's control over advertisements in JuicyAds' terms of service agreement show Defendants took actions that were expressly aimed at the United States are insufficient to meet the second prong.

After conducting jurisdictional discovery and filing a supplemental response, Plaintiff has still not shown the United States was "the focal point" of Avgle.com or of Defendants' conduct in creating and maintaining the site. *Walden*, 571 U.S. at 287 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). Plaintiff has, therefore, not shown express aiming, and the Court lacks jurisdiction over Defendants.

*Harm in the Forum.* The Court finds Plaintiff has not met the second prong of the purposeful direction test; therefore, the Court need not consider the final prong – harm in the forum – of the test. *Dish Network, LLC v. Jadoo TV, Inc.*, 2020 WL 6536659, at *8 (C.D. Cal. Mar. 16, 2020); *see also Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, 2018 WL 6443082, *5 (C.D. Cal. 2018) ("Because Plaintiff has not met the first prong of the Ninth Circuit's specific jurisdiction test, the Court need not consider the remaining prongs.").

B.  *Remaining Elements of Specific Jurisdiction*

Plaintiff has failed to show express aiming. Therefore, Plaintiff has not shown purposeful direction and the Court lacks jurisdiction over Defendants' persons. Because Plaintiff has failed

to establish purposeful direction, an essential element of specific jurisdiction, *Morrill*, 873 F.3d at 1142, the Court will not address the remaining elements of specific jurisdiction.

### III.   Conclusion

For the above stated reasons, Plaintiff has not sufficiently shown this Court has personal jurisdiction over Defendants. As Plaintiff has not named the Doe defendants at this time, the Court also recommends the Doe defendants be dismissed. Accordingly, the Court recommends Defendants' Motion to Dismiss (Dkt. 23-1) be granted and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on September 2, 2022, as noted in the caption.

Dated this 17th day of August, 2022.

　　　　　　　　　　　　　　　　　　　　／s／ David W. Christel  
　　　　　　　　　　　　　　　　　　　　David W. Christel  
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

REPORT AND RECOMMENDATION - 10