1

2

3

4

5

6

7

8

The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

WILL CO. LTD. a limited liability company
organized under the laws of Japan,

                Plaintiff,

        vs.

KAM KEUNG FUNG, aka 馮 錦 強, aka
FUNG KAM KEUNG, aka FUNG KAM-
KEUNG, aka KUENG FUNG, aka KEUNG
KAM FUNG, aka KAM-KEUNG FUNG, aka
KEVIN FUNG, an individual; FELLOW
SHINE GROUP LIMITED, a foreign company,
and DOES 1-20, d/b/a AVGLE.COM,

            Defendants.

Case No.:  **3:20-cv-05666-DGE**

**PLAINTIFF'S OBJECTIONS TO
REPORT AND RECOMMENDATION
DKT. NO. 76**

19

20

21

      COMES NOW, Plaintiff Will Co. Ltd. ("Will Co."), by and through its undersigned

counsel, and files these Objections to Report and Recommendation, Dkt. No. 76.

22

23

24

25

## I.    <u>OBJECTIONS AND ARGUMENT</u>

     Plaintiff Will Co. asserts the following objections to the Report and Recommendation,

Dkt. No. 76.

26

**A. The Report and Recommendation erred by failing to properly apply the 9th Circuit Ruling in *Will Co., Ltd. v. Lee,* 47 F.4th 917 (9th Cir. 2022) to the entirety of the instant case in determining "express aiming."**

Report and Recommendation, Dkt. No. 76 (hereinafter "R&R") fails to properly apply the rule and reasoning from *Will Co., Ltd. v. Lee,* 47 F. 4th 917 (9th Cir. 2022) to the entirety of the instant matter. The R&R explicitly states (p 9) that only the new facts raised by Plaintiff after jurisdictional discovery was the subject of the R&R because, in part, Plaintiff failed to argue for reconsideration of Judge Lasnik's original Order, Dkt. No. 43 (which granted jurisdictional discovery and supplemental briefing). Plaintiff, in fact, did argue the entirety of the facts of the instant case in light of the *Lee* ruling. See Dkt. No. 66. This Court's request was to determine the effect of the *Lee* decision on jurisdiction in this case. Dkt. No. 72. Nonetheless, in eleven (11) lines of the twelve (12) page ruling, the R&R summarily and wrongfully distinguishes this case from *Lee.*

The instant case is, in fact, nearly identical to the case in *Lee.* There, the foreign defendants created a web site and purchased a domain for the purpose of displaying adult entertainment videos featuring Japanese actors. They acquired U.S. Hosting videos and a Content Delivery Network services from Cloudflare. The near entirety of the web site was in Japanese, *except* the pages focused on legal compliance which were in English, including Privacy Policy, Terms of Service, DMCA Page (referring to 17 U.S.C. § 512(c)), and 2257 Page (referring to 18 U.S.C. § 2257). *Lee*, 47 F. 4th at 920.

The defendants in *Lee* had a very limited role in operations once the site was set up, as content was posted by users of the site and advertising space (the only revenue generator for the site) was sold to a third party broker, who in turn utilized geo-targeting including ads specific to United States viewers. *Id.*

These facts are virtually identical to the instant case. The only real difference is Defendants here utilized a hosting company in the Netherlands rather than the United States.

However, as is made clear by the analysis of the Ninth Circuit, this difference does not negate express aiming of Avgle.com to the United States.

In *Lee,* the Ninth Circuit reiterated the rule regarding "express aiming" of conduct into the forum in the context of a web site.    The web site operator must have both actively "appeal[ed] to" and profit[ed] from" an audience in that forum.  *Lee*, 47 F. 4th at 922-23, *citing AMA Multimedia, LLC v. Wanat,* 970 F.3d 2102, 1220 (9th Cir. 2020); and  *Mavrix Photo, Inc., v. Brand Technologies, Inc.,* 647 F.3d 1218, 1229 (9th Cir. 2011).    Based upon the enumerated facts, the Ninth Circuit found that the web site appealed to United States audience for two reasons. First, the web site was hosted in the United States *and* the defendants contracted with Cloudflare for Content Delivery Network (CDN) services, which only utilized Cloudflare's Asia and North American servers.   Second, the web pages regarding legal compliance were "relevant almost exclusively to viewers in the United States."  *Lee*, 47 F. 4th at 924-26.

Regarding the first issue, the U.S. based hosting service and U.S. based CDN service, the Ninth Circuit analyzed in-depth the import of these services.   Given the nature of the industry and need to deliver videos without any lag time, the use of these services in the United States illustrated that the defendants chose to ensure faster loads for viewers in the United States and slower in other places around the world.  *Id*.

Here, the CDN services are *exactly the same.*   Contrary to the R&R's statement that Cloudflare uses services in 200 cities throughout 100 countries, Defendants here use Cloudflare CDN servers *only* in Asia and North America.   Dkt. No. 29, p 8, ¶¶ 45-48, Ex. M.   This absolutely ensures faster video delivery to viewers in the United States.   That the original host server is in the Netherlands strengthens the need for use of Cloudflare's North American servers to ensure faster delivery to United States viewers.   The absence of a United States host, compared to *Lee*, does not lessen the appealability of Avgle.com to United States viewers, but rather reinforces that notion.

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1      Regarding the second issue, the web pages almost exclusively appeal to United States

2   viewers, the facts of the instant case are virtually identical to those in *Lee*.  Here, the entirety of

3   Avgle.com is in Japanese, except pages specific to legal compliance.  The Terms of Service are

4   in English (15 pages worth) specifically referring to United States copyright laws (the DMCA);

5   The bottom of the web pages including the notation "Copyright © 2017 Avgle" – a clear

6   reference with United States copyright; Privacy Policy is entirely in English; DMCA Page is

7   entirely in English and exclusively specific to United States Copyright Statutes, 17 U.S.C. §

8   512(c), requires all take-down notifications to be in compliance with this United States statute,

9   and references no other nations laws; and 2257 Page is entirely in English and exclusively

10  specific to United States statutes, 18 U.S.C. § 2257, expressly claiming that the site is

11  compliance with this United States statute and references no other nations laws.  Further, when

12  a user of Avgle.com attempts to upload a video, the user is informed that by uploading they are

13  confirming they have records in compliance with 18 U.S.C. § 2257 *and* are advised that their IP

14  address is being tracked via Avgle.com and will be disclosed to the United States Federal

15  Bureau of Investigation upon request.  Exhibit A, attached hereto.  No other nations laws or

16  agencies are cited.

17      In *Lee,* the Ninth Circuit found that these facts established the web site appealed to

18  United States viewers to the exclusion of other viewers.  *Lee*, 47 F. 4th at 926.  This Court

19  should find the same here.

20      In *Lee*, the Ninth Circuit found that the web site profited from United States viewers as

21  evidenced by the geo-targeted ads specific to the United States and 1.3 million United States

22  viewers in the relevant time frame.  *Lee*, 47 F. 4th at 924.  Here, there are advertisements which

23  are targeted specifically to United States viewers and 2.8 million United States viewers visited

24  Avgle.com, including 1.3 million new viewers, during the relevant time frame (First Amended

25  Complaint Dkt. No. 8, ¶ 15), earning at least $300,000.  There is no question here Defendants

26  profited from United States viewers.

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION - 4  [NO. 3:20-cv-05666 DGE]

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1
2
3
4
5
6
7
8
9

In *Lee,* the combination of the clear intent to decrease video latency for United States viewers combined with legal compliance procedures specific only to the United States meant that the web site was prepared for United States viewers to the exclusion of others.  Such was sufficient for the Ninth Circuit to determine the web site appealed to United States viewers and the defendants profited from United States viewers – thus satisfying the requirement of "express aiming" in the forum.   Here, the Court should also determine, for the same reasons, Avgle.com appeals to United States viewers and profits from United States viewers.  Thus, Avgle.com is expressly aimed at the United States forum.  The R&R erred in not performing this analysis and not finding express aiming.

10

**B.  The Report and Recommendation fails to apply the clear law.**

11
12
13
14
15
16
17

The R&R correctly defines purposeful direction in the context of specific jurisdiction and copyright claims, stating that purposeful direction exists if the defendant (1) commits an intentional act, (2) expressly aimed at the forum state, (3) causing hard that the defendant knows is likely to be suffered in the forum state.  Dkt No. 76, p 6, *citing Morrill v. Scott Fin. Co.,* 873 F.3d 1136, 1142 (9th Cir. 2017).  However, in analyzing "expressly aimed" at the forum, the R&R fails to acknowledge the Ninth Circuit's clear recitation of the law specific to this determination.

18
19
20
21
22

In *Lee,* the Ninth Circuit reiterated that accessibility of a web site in a forum is insufficient alone to establish express aiming of that web site to a forum, but "something more" must be established.  That "something more" must show the operators actively appealed to and profited from the audience in the forum.  *Lee,* 47 F. 4th at 922-23.  The Ninth Circuit relied upon and cited *Mavrix,* a landmark case on this exact issue.

23

The R&R fails to reference or analyze this standard.  This is in error.

24

\\

25

\

26

**C. The Report and Recommendation erred in determining the facts presented after jurisdictional discovery to be jurisdictionally irrelevant.**

In supplemental briefing, Dkt No. 66, Will Co. presented facts obtained in jurisdictional discovery which supported a finding of jurisdiction.   The R&R determined these facts to be jurisdictionally meaningless.  This determination is in error.

Specifically, Will Co. presented evidence regarding Defendants' contractual relationship with the advertiser broker, Tiger Media, which showed Defendants contractual commitments specifically relate to the United States market and Defendants have total control over the advertisements on their sites.

First, Defendants are contractually committed to Avgle.com's compliance with United States law (18 U.S.C. § 2257 and 28 C.F.R. Part 75).  The R&R brushed this contractual requirement off as "boilerplate terms of service used by JuicyAds with all publishers.  However, there is no case law the supports the conclusion that because a contractual term is "boilerplate," it is meaningless.  To the contrary, *that* it is boilerplate means that the ad broker will be selling advertising space to United States advertisers and will be directing those ads into the United States market.  Selling advertisements for use in the United States market is by far the most profitable in the world.  Not only were Defendants *aware* that the ad broker would be directing ads in the United States, they clearly *chose* an ad broker that would be directing advertisements in the United States market.  (Such is made clear since advertising revenue is by far most valuable in the United States market. There is a reason why there are no geo-targeted ads in countries like Australia, Canada, France, Germany or Taiwan.  Dkt. No. 29, p 11, ¶ 68.)

Second, the ad broker contract requires Defendants to review and approve advertisements placed on Avgle.com.  Therefore, United States targeted advertisements were reviewed and approved by Defendants *per the terms of the ad broker contract* before the advertisements were placed on Avgle.com.  The R&R is simply wrong in concluding there is no indication Defendants is selecting advertisements that target the United States or has any knowledge regarding what advertisements are placed on Avgle.com.   Defendants are

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION - 6  [NO. 3:20-cv-05666 DGE]

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

contractually required to know of and approve of the advertisements on Avgle.com.  To find that the advertisements sold and placed on Avgle.com are happenstance without knowledge by or intention of Defendants flies in the face of the duties of an owner of a business whose sole source of income is the sale of those advertisements.  Of course, Defendants know of and intend United States advertising (it is the most valuable web site user traffic in the world).

That the contract with the ad broker requires Defendants' approval of all advertising sold on Avgle.com *and* requires Defendants to commit to compliance with United States laws is most certainly jurisdictionally relevant.  Such ensures the appealability of Avgle.com to the United States audience.

### D. The Report and Recommendation erred in viewing the United States CDN as jurisdictionally meaningless.

The R&R limits the relevance of the use of Cloudflare for CDN services by reciting Defendants presentation of Cloudflare's *potential* services, which includes servers in over 200 cities throughout 100 countries.  Reliance on these facts is a material error as it wholly ignores the uncontroverted evidence that the services *actually* used by Defendants for Avgle.com is limited to Cloudflare's Asia and North America servers (*exactly* as was the case in *Lee*).

The R&R improperly and mistakenly distinguishes the facts regarding a CDN in this case from *Lee* when in fact they are exactly the same.

## II.   CONCLUSION

If a court decides to rule on personal jurisdiction without an evidentiary hearing, a plaintiff must make only a *prima facie* showing of jurisdictional facts to survive the motion.  *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 919 (9th Cir. 2011).  Here, consistent with *Will Co., Ltd. v. Lee,* 47 F.4th 917 (9th Cir. 2022), Will Co. has established that the Defendants appealed to and profited from the United States market.

\

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION - 7  [NO. 3:20-cv-05666 DGE]

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1  DATED this 9th day of January 2023.

2  FREEMAN LAW FIRM, INC.

3  _____*s/ Spencer D. Freeman*_____

4  Spencer D. Freeman, WSBA # 25069
   FREEMAN LAW FIRM, INC.

5  sfreeman@freemanlawfirm.org

6  Attorney for Plaintiff Will Co.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION - 8  [NO. 3:20-cv-05666 DGE]

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

# EXHIBIT A

# Avgle.com Upload Page

