1

2

The Honorable David G Estudillo

3

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## TACOMA DIVISION

4

5

WILL CO. LTD. a limited liability company
organized under the laws of Japan,
Plaintiff,

vs.

KAM KEUNG FUNG, aka 馮 錦 強, aka
FUNG KAM KEUNG, aka FUNG
KAMKEUNG, aka KUENG FUNG, aka
KEUNG KAM FUNG, aka KAM-KEUNG
FUNG, aka KEVIN FUNG, an individual;
FELLOW SHINE GROUP LIMITED, a
foreign company, and DOES 1-20, d/b/a
AVGLE.COM,

Case No. 3:20-cv-05666-DGE

6

7

8

9

10

11

12

13

## DEFENDANTS' REPLY TO PLAINTIFF'S OBJECTIONS TO
## REPORT AND RECOMMENDATION DKT. NO. 76

14

## Introduction

15

For the second time, Magistrate Judge David Christel has properly recommended the

16

dismissal of the present case for a lack of personal jurisdiction. And, for the second time,

17

Plaintiff has sought to resist that recommendation despite the clear lack of connections between

18

Defendants and the forum. As a last gasp to avoid dismissal, however, Plaintiff cited to the

19

Ninth Circuit's decision in *Will Co., Ltd. v. Lee*, 47 F.4th 917 (9th Cir. 2022), claiming that the

20

decision there should change Magistrate Christel's original recommendation of dismissal.

21

Giving Plaintiff every benefit of the doubt (as it has throughout this litigation), the Court asked

22

Magistrate Christel to determine if the *Lee* decision altered his original recommendation. And,

23

after considering the Parties' arguments, he properly determined that the *Lee* case was

24

sufficiently distinguishable from the present case so as not to change his original

1

1    recommendation.  Magistrate Christel's Recommendation is well-reasoned and should be

2    adopted by this Court.  Additionally, although Magistrate Christel did not proceed to consider

3    the constitutional question of whether an exercise of personal jurisdiction would comport with

4    fundamental fairness, it is clear that it would not and this Court should dismiss the present case

5    for that reason as well.

6                                              **Background**

7         Plaintiff, a private Japanese limited liability company headquartered in Tokyo brought

8    the present this action against a Chinese-born individual (who is a permanent resident of Hong

9    Kong) and a foreign corporation based in the British Virgin Islands, concerning a website that is:

10   managed out of Taiwan; supported by ads placed on the website by a Canadian ad broker (that

11   was engaged from Hong Kong); hosted on servers located in the Netherlands; displaying user-

12   generated videos with Japanese titles that are primarily in the Japanese language. Because

13   Defendants (and Plaintiffs' claims) lack any relevant, continuing, or substantial connection to

14   Washington or to the United States as a whole, Defendants moved for dismissal pursuant to Fed.

15   R. Civ. P. 12(b)(2).

16        On July 19, 2021, after a full briefing by the Parties, this Court found that Plaintiff had

17   failed to make even a *prima facie* showing that the Court could exercise personal jurisdiction

18   over Defendants consistent with the Constitution's due process requirements.  *See* Docket No.

19   43.  Nevertheless, finding that it was *plausible* that Plaintiff might be able meet its burden if

20   provided with the opportunity to jurisdictional discovery, the Court deferred dismissing the

21   action to afford Plaintiff the opportunity to take limited discovery that might bolster its

22   jurisdictional claims.

23        Following the close of jurisdictional discovery, the Court received supplemental briefing

24   from both parties.  Far from bolstering its original case, however, Plaintiff's supplemental

briefing made clear that – even having been afforded jurisdictional discovery – Plaintiff had failed to make any colorable claim that Defendants were subject to personal jurisdiction.  And, on August 17, 2022, Magistrate Christel issued his Report and Recommendation in which he held, *inter alia*, that:

> After conducting jurisdictional discovery and filing a supplemental response, Plaintiff has still not shown the United States was "the focal point" of Avgle.com or of Defendants' conduct in creating and maintaining the site. …Plaintiff has, therefore, not shown express aiming, and the Court lacks jurisdiction over Defendants.

Docket No. 65, p. 9.

On August 31, 2022, Plaintiff filed its Objections to the Magistrate's Report and Recommendation.  On September 23, 2022, Defendants filed their Response to Plaintiff's Objections.  On October 3, 2022, this Court – citing the Ninth Circuit's decision in *Lee* sent the matter back to Magistrate Christel instructing him to determine if the *Lee* case changed his recommendation.  On December 19, 2022, Magistrate Christel issued a second Report and Recommendation in which he wrote that the *Lee* decision did not change his legal analysis: he once again recommended the dismissal of the present action for lack of personal jurisdiction.

## **ARGUMENT**

I.   The Present Case is Not Factually "Identical" to the Ninth Circuit's Recent Decision in *Will Co., Ltd v. Ka Yeung Lee, et al.*

In its Objections, Plaintiff argues that the facts of *this* case are "nearly identical" to the facts in *Lee*.  This is simply not the case.

Preliminarily, it is worth noting that – unlike the case in *Lee* – Plaintiff here requested and was provided the opportunity to conduct jurisdictional discovery, which yielded no new facts with which to support a finding of personal jurisdiction.  Courts within this circuit have recognized that, once a party has been afforded jurisdictional discovery, it should no longer be permitted to simply rely on the unsupported allegations of its complaint.  *See, e.g., AMA*

*Multimedia LLV v. Wanat*, 2017 U.S. Dist. LEXIS 228078, *8 (D. Az. 2017)("it makes little sense to allow early discovery because jurisdictional facts are disputed if the court is then required to accept the plaintiff's version of facts when assessing jurisdiction").

Moreover (and despite the fact that Defendants disagree with the holding in *Lee* and believe that it conflicts with the Ninth Circuit's holding in *AMA Multimedia LLV v. Wanat*, 970 F.3d 1201 (9th Cir. 2020)), the facts of this case are not, in truth, "nearly identical" to the facts in *Lee.* Indeed, none of the factors that the Ninth Circuit found to be crucial to its finding of personal jurisdiction in *Lee* are present here.

First, in *Lee*, the Ninth Circuit found the defendants to be subject to personal jurisdiction – despite declaring the question a "close case" – in large part because the Defendants' website was hosted on servers within the United States.  *See, Lee* , pp. 15-17 ("Defendants chose to host the website in Utah…   There are a few ways sites can make their pages load faster. For one, the site's operators can choose to host their site on servers near their desired audience. The closer a viewer is located physically or geographically to the host server, the faster that page will load for the viewer.").  Not only is that factual assertion absent in this case, it is undisputed that the Defendants' website is (and at all relevant times has been) hosted on servers located in the Netherlands.  *See* Declaration of Ming Chung, D.E. 23-3, p. 3, ¶13 ("The hosting company that presently hosts the Avgle.com website is Novogara BV, which is located in Amsterdam, Netherlands. Novogara BV has hosted Avgle.com since July 2018, and before that, another company in the Netherlands was the hosting company for Avgle.com since Avgle.com launched.")

Next, in *Lee*, the Ninth Circuit credited Plaintiff's allegation that the Defendants had utilized a Content Delivery Network ("CDN") that had been configured *only* to speed the loading of the website in the United States and Asia.  *See, Lee* at p. 17, 18 ("In this case, by

4

choosing to host ThisAV.com in Utah and to purchase CDN services for North America, Defendants chose to have the site load faster for viewers in the United States and slower for viewers in other places around the world. … Defendants' counterarguments are unavailing. First, they object to two of Will Co.'s factual assertions. They object to Will Co.'s assertion that the CDN they purchased only decreases latency in North America and Asia, arguing that it actually decreases latency all around the world. However, at this stage, we resolve factual disputes in favor of the plaintiff, so we must assume that the CDN Defendants purchased decreased load times in North America and Asia only."). Once again, no such allegation appears in Plaintiff's Amended Complaint in *this* case. *See* D.E. 9, Plaintiff's Complaint. To the contrary, Ming Chung's Declaration makes clear that Defendants engaged Cloudflare from Hong Kong to provide services for the website worldwide. *See* Declaration of Ming Chung, D.E. 23-3, p. 4, ¶15 ("FSG uses Cloudflare's services for Avgle.com's worldwide use (the vast majority of which is related to users outside of the United States).")[1]

---

[1] In its Objections, Plaintiff cites to a declaration provided by its consultant, Jason Tucker, in which Mr. Tucker opines – based on his research on a now-defunct private website called whatsmycdn.com, that the Avgle.com website was also configured to prioritize web traffic from the United States and Asia. It should first be noted that, although Plaintiff was given leave to – and did – take discovery directly from the CDN provider, Cloudflare, it did not request, receive, or produce *any* evidence from Cloudflare to support this allegation, even though Cloudflare could easily have confirmed or refuted Mr. Tucker's assertion (an assertion which is directly contradicted by the two declarations provided by Defendants, who have actual first-hand knowledge of what they did and did not do).

It appears also that, when the whatsmycdn.com website was operational, some complained that its results showed "many discrepancies" and that the website was "not that accurate." *See, e.g.,* https://github.com/mayankmtg/whatsmycdn. See, also "PYTHIA: a Framework for the Automated Analysis of Web Hosting Environments" located at https://www.researchgate.net/publication/331857755_PYTHIA_a_Framework_for_the_Automated_Analysis_of_Web_Hosting_Environments, discussing the accuracy (or lack thereof) of various different CDN locator websites including whatsmycdn.com

This would not be the first time a Federal District Court found that Mr. Tucker had gotten too far out over his skis. In a similar case in the Southern District of Florida, Judge Ursula Ungaro rejected Mr. Tucker's proffered sworn testimony as being outside his area of expertise and without evidentiary support. *Hydentra HLP Int., Ltd. v. Luchian,* Case No. 1:15-cv-22134-

Finally, the Ninth Circuit in *Lee* pointed to language contained on Defendants' website claiming that the website was available "from its location in the United States of America," and that its use was warranted *only* within the United States, even though Defendants argued that the language was included by mistake, because, again, it resolved factual disputes in the Plaintiff's favor.  *See Lee* at 18, 19 ("Again, at this stage we resolve factual disputes in favor of the plaintiff, so for the purposes of resolving this motion, we must assume that Defendants intended to post the content that appears on the compliance pages, and thus that it is evidence of their subjective intent to target the U.S. market.")  Plaintiffs make no allegation of similar language appearing on Defendants' website in *this* case.

In short, the factors that led the Ninth Circuit to find the Defendants subject to personal jurisdiction in *Lee* – a decision that even the Ninth Circuit panel categorized as a "close call" – are simply not present here.  *This* case is not a close call, and the Magistrate properly recommended the dismissal of the present action.

II.    The Magistrate Properly Found That References to U.S. Law Contained In a Terms of Service Agreement Provided to Defendants By a Canadian <u>Ad Broker Did Not Support a Finding of Personal Jurisdiction Over Defendants.</u>

In his original Report and Recommendation, the Magistrate held that references to U.S. law made by **JuicyAds**, a Canadian ad broker utilized by Defendants, in its Terms of Service

UU, Doc. 138, Omnibus Order (June 2, 2016)("In this case, the testimony of Jason Tucker is plainly offered to support the broad claim that Defendants themselves uploaded some of the copyright videos onto their websites based upon his review of the 111 IP addresses. This proposition is an inference well beyond what witnesses perceive in their day-to-day lives; rather, it is a conclusion that would require "specialized knowledge," Fed. R. Civ. P. 701, and must be proved by an appropriately credentialed expert witness to be properly admitted. ...Other than being in the 'business of legal adult entertainment production, marketing, and management,' and serving as a consultant for 'the rollout of several versions of Windows Media,' there are no credentials within the Declaration pertaining to Mr. Tucker's 'knowledge, skill, experience, training, or education,'  …which would allow him to testify on these grounds. Mr. Tucker's anecdotal observations cannot support the sweeping claim for which they are being offered.")

1   Agreement did not establish personal jurisdiction over Defendants in the U.S.:

> The Court has already determined Defendants' reference to U.S. laws on its website was not sufficient to show express aiming. Dkt. 43 at 10-11. Plaintiff now seeks to draw a connection through a more opaque reference to U.S. laws in JuicyAds' terms of service agreement. The terms of service agreement appears to be a boilerplate terms of service agreement used by JuicyAds with all publishers. See Dkt. 62 at 25-42. References to United States' law in JuicyAds' boilerplate terms of service agreement is not sufficient to show an effort by Defendants to target the U.S. market. It is more likely these statements were included because JuicyAds is aware that some publishers it works with would target or have at least some U.S.- based traffic. *See AMA Multimedia*, 970 F.3d at 1212. References to United States' laws in JuicyAds' terms of service agreement is not sufficient to show Defendants' intentional actions were expressly aimed at this forum.

Report and Recommendation, p. 8.

In its Supplemental Response, and here again, Plaintiff argues that the magistrate erred because: Defendants were utilizing a non-U.S. ad broker who was nonetheless compliant with the laws of the United States.  This is, of course, absurd.  As the Magistrate noted, the Agreement itself was JuicyAds' boilerplate language used with all of its publishers, no matter where in the world they might be located.  Moreover (as Defendants pointed out in their Supplemental Reply, the language on which Plaintiff relied to make its arguments does not even appear in the *actual* agreements between FSG and Tiger Media.  Instead, Plaintiff pointed to language in the agreements that purported to incorporate by reference Terms of Service that appear on the JuicyAds website and which apply to both advertisers and publishers using the JuicyAds website.  As the Magistrate correctly concluded, the most that could said about the JuicyAds Terms of Service is that *JuicyAds* (and not even Defendants) was aware that some of the websites for which it provides services have at least some U.S. based traffic.  This is far from enough to establish that *Defendants* expressly aimed their Japanese-language website at the United States.  *See, e.g., AMA Multimedia, Ltd. Liab. Co. v. Wanat,* 970 F.3d 1201, 1210 (9th Cir. 2020)("Although Wanat may have foreseen that ePorner would attract a substantial number of viewers in the United States, this alone does not support a finding of express aiming.")

1

2

III.    The Court Should Overrule Plaintiff's Objections For The Independent
        Reason That An Exercise of Personal Jurisdiction Would Not Comport
        With Fair Play and Substantial Justice.

3    Although this Court can (and should) adopt the Magistrate's Report and

4    Recommendation for the reasons articulated by the Magistrate, the Court should also dismiss the

5    present case for lack of personal jurisdiction because an exercise of personal jurisdiction would

6    not comport with the constitutional requirements of fair play and substantial justice.

7    In its decision in *Lee*, the Ninth Circuit noted that, because the District Court had there

8    found that that Plaintiff had not demonstrated purposeful direction towards the United States by

9    the Defendants, the Court never proceeded to the final prong of the test for personal jurisdiction,

10    namely whether an exercise of personal jurisdiction would comport with "fair play and

11    substantial justice," *i.e.*, whether an exercise of jurisdiction would be "reasonable."

12    *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004).  *See also Brown*

13    *v. Serv. Grp. of Am., Inc.,* 2022 U.S. App. LEXIS 31611, at *2-3 (9th Cir. Nov. 16, 2022).

14    Because the District Court there had not considered the fairness question, the Ninth Circuit

15    remanded the case back to the District Court for consideration of the relevant factors.  So as to

16    avoid a similar remand in the present case, it would seem to be beneficial for the Court to

17    consider now the final factor in the jurisdictional analysis.  And, as the Court will see,

18    consideration of the fairness question provides the Court with an independent reason to adopt the

19    Magistrate's Recommendation and dismiss the present case for a lack of personal jurisdiction.

20    "In determining whether the exercise of jurisdiction over a nonresident defendant

21    comports with 'fair play and substantial justice,' [the court] must consider seven factors: (1) the

22    extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on

23    the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

24    defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487-88 (9th Cir. 1993).  No one factor is dispositive in itself and, instead, the Court balances all seven factors.  *Id.*

Here, the balancing of these factors quite clearly demonstrates that an exercise of personal jurisdiction over the Defendants would not comport with fair play and substantial justice.

### 1. The Extent of Interjection in the Forum

Even though a Court has, by the time it reaches this stage, typically determined that *some* level of interjection occurred sufficient to meet the earlier stages of the personal jurisdiction test (something not present in this case), the Court nonetheless considers just how extensive such interjection was in deciding if an exercise of jurisdiction would be reasonable.  *See, e.g., Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132 (9th Cir. 2003)("Even though we have already determined that B&C purposefully availed itself of the privilege of doing business in California, the degree of interjection is nonetheless a factor in assessing the overall reasonableness of jurisdiction under this prong"); *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise"); *Rippey v. Smith,* 16 F. App'x 596, 599 (9th Cir. 2001)("The degree of purposeful intervention was not great in this case and the district court correctly concluded that the burden on Willoughby and Herbert Smith of litigating in California would be substantial. …Neither is a resident of the United States, and neither maintains an ongoing or continuous relationship with California. Herbert Smith does not maintain an office in the United States, and its representation of California clients has been limited to foreign proceedings. Similarly, Willoughby has represented California clients in

European and Asian proceedings. Accordingly, litigating this matter in California would impose a significant burden on the defendants. This factor weighs in favor of declining personal jurisdiction over the defendants"); *Perkumpulan Inv'r Crisis Ctr. Dressel - WBG v. Wong,* U.S. Dist. LEXIS 202548, at *18-19 (W.D. Wash. Apr. 6, 2012)("While this factor is similar to the analysis of purposeful direction, the degree of interjection is nonetheless a factor in assessing the overall reasonableness of jurisdiction"); *Qwest Corp. v. Anovian, Inc.,* 2009 U.S. Dist. LEXIS 122636, at *10-11 (W.D. Wash. Dec. 16, 2009)("The *Schwarzenegger* case makes it clear that physical contact with Washington is not a prerequisite to a finding of personal jurisdiction. However, it is relevant to an assessment of the reasonableness factor of minimum contacts with a forum state. …Transcom has no ties to Washington other than its decision to purchase services from a company that used Washington-based circuits to route a portion of its traffic to Qwest. All of the defendant's operations are based in Texas, and none are based in Washington.  If Transcom's contacts with Washington were significantly stronger, it might warrant causing the defendant to incur substantial costs for travel and employee time. However, even if the Court could find that Transcom purposefully directed business at the state of Washington, the extent of its purposeful interjection was very limited. …It would offend "traditional notions of fair play and substantial justice" to require Transcom to defend itself in any given forum around the world in which it has so few business ties and no physical presence.")

In the present case, the extent to which Defendants "interjected" themselves into the forum (the United States as a whole) was minimal.  Neither Defendant was ever physically present in the United States, and neither had substantial continuing contacts with the United States.  The website's servers are not located in the United States and all work performed on the website (and all agreements entered into on behalf of the website) was done from Hong Kong and Taiwan.

1    Because Defendants' "interjection" into the United States was negligible (in truth,

2    nonexistent), the first factor weighs against an exercise of personal jurisdiction.

3            2.        The Burden on the Defendants

4            The Supreme Court has long been clear that: "the unique burdens placed upon one who

5    must defend oneself in a foreign legal system should have significant weight in assessing the

6    reasonableness of stretching the long arm of personal jurisdiction over national borders*." Asahi*

7    *Metal Indus. Co., Ltd. v. California Superior Court*, 480 U.S. 102, 114 (1987)(citation omitted).

8    The Ninth Circuit and District Courts within this circuit have routinely heeded the Supreme

9    Court's admonition, finding that this factor is entitled to significant weight.  *See, e.g., Amoco*

10   *Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 852-53 (9th Cir. 1993); *Core-Vent Corp. v.*

11   *Nobel Indus. AB*, 11 F.3d 1482, 1488-89 (9th Cir. 1993); *Harris Rutsky & Co. Ins. Servs. v. Bell*

12   *& Clements Ltd.,* 328 F.3d 1122, 1132-34 (9th Cir. 2003); *Ins. Co. of N. Am. v. Marina Salina*

13   *Cruz,* 649 F.2d 1266, 1271-74 (9th Cir. 1981); *Perkumpulan Inv'r Crisis Ctr. Dressel - WBG v.*

14   *Wong*, 2012 U.S. Dist. LEXIS 202548, at *19-23 (W.D. Wash. Apr. 6, 2012); *Paradise Cruise,*

15   *Ltd. v. Michael Else & Co.*, 2005 U.S. Dist. LEXIS 10362, at *19-28 (D. Haw. May 17, 2005).

16           Moreover, "the Ninth Circuit notes that such burdens are 'particularly great' when a

17   defendant has 'no ongoing connection to or relationship with the United States.'"  *Perkumpulan,*

18   *supra* at *19, citing *Core-Vent Corp.*  In determining the burden placed on a foreign defendant,

19   Courts have considered a multitude of factors including the location of the defendants' "base of

20   operations"; their "ongoing connection" to the United States; whether the defendants have

21   offices, agents, or employees in the United States; and logistical difficulties in transporting

22   witnesses and evidence to the forum.  *Amoco Egypt Oil Co., supra; Core-Vent Corp., supra;*

23   *Harris Rutsky & Co. Ins. Servs., supra; Ins. Co. of N. Am., supra; Perkumpulan Inv'r Crisis Ctr.*

24   *Dressel, supra; Paradise Cruise, Ltd., supra.*

1    In the present case, there is no question but that each of these factors points to the

2  inherent unfairness in an exercise of personal jurisdiction in this case: the Defendants are a

3  British Virgin Islands corporation and a Hong Kong based individual; they have no ongoing

4  connection to the United States.  The Defendants have never had offices, agents, nor employees

5  in the United States; and the logistical difficulties in litigating this case here are evident – none

6  of the parties are located in the United States; none of the witnesses would be located here; none

7  of the exhibits are here; and Mr. Fung does not even hold a visa that would allow him to travel to

8  the United States.

9    The Ninth Circuit has recognized that its "cases have also been inconsistent in

10  determining whether the corresponding burden on plaintiff in bringing the claims against the

11  defendant in an alternate forum should lessen the impact of this factor on the overall

12  reasonableness determination." *Core-Vent Corp., supra* at 1488-89.  And, while many of the

13  Ninth Circuit's cases have ultimately decided that a Court should not consider the corresponding

14  burden on a U.S. plaintiff who would be forced to litigate a claim in a foreign court,[2] the Court

15  here need not be concerned with this question because, in this case, the burdens do not

16  correspond.  The Plaintiff here is not a U.S. entity, but rather is a Japanese company

17  headquartered in Tokyo and as such, the burdens are not symmetrical.  *See. e.g., Core-Vent*

18  *Corp., supra* at 1489 ("We need not reconcile these standards today, however, because the

19  burdens in this case fall asymmetrically. The burden on the Swedish doctors of defending in

20

21  ───────────────
   [2] *See, e.g., Pacific Atlantic Trading Co. v. M/V Main Exp.,* 758 F.2d 1325, 1330 (9th Cir. 1985) ("the burden on the
   defendant is the primary concern" and thus the possible burden on the plaintiff does not dilute the strength of this

22  factor); *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 852 (9th Cir. 1993) (stating that even if
   plaintiff's burden would be similar to defendant's, the burden on the defendant is not a forum non conveniens
   question, but a function of due process requirements); *Ins. Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266,

23  1271-74 (9th Cir. 1981)("The law of personal jurisdiction, however, is asymmetrical. The primary concern is for the
   burden on a defendant. …If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or,

24  perhaps, to sue elsewhere. A defendant has no such luxury. The burdens on a defendant are of particular
   significance if, as here, the defendant has done little to reach out to the forum state").

California would be substantially greater than the burden on Core-Vent in bringing their claims in Sweden. The doctors are individuals with little or no physical contacts with California. Core-Vent, on the other hand, is a large international corporation with worldwide distribution of its products. Regardless whether the burden on the plaintiff is considered, this factor weighs heavily in favor of the doctors"); *Perkumpulan Inv'r Crisis Ctr., supra* ("The Ninth Circuit has found that the burden on a foreign corporate defendant with little connection to the United States would be 'considerable.' …As an individual, Mr. Ho would presumably be even more encumbered than a corporate defendant. Moreover, as in Core-Vent, 'the burdens in this case fall asymmetrically.' …That is, the burden on Mr. Ho of litigating in Washington would plainly be greater than the burden on Plaintiff of litigating in Indonesia or Hong Kong.").

Because the burden on Defendants of litigating in the United States is substantial, this "significant" factors weighs heavily in favor of finding a lack of personal jurisdiction.

3.     The Extent of Conflict With the Sovereignty of the Defendants' State

The Supreme Court, the Ninth Circuit, and this Court have frequently cautioned that, "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987). *See also Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir. 1988) ("This circuit has also stated that litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist"); *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 852-53 (9th Cir. 1993)("Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction"); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister

state because important sovereignty concerns exist. …Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships. …Here, the Swedish doctors are individuals with no United States-based relationships. Thus, the sovereignty factor also weighs heavily in the Swedish doctors' favor"); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 379 F.3d 1120, 1136-37 (9th Cir. 2004)("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist"); *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 588 (9th Cir. 1993)("We have held that litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state"); *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985)("when the nonresident defendant is from a foreign nation, rather than from another state in our federal system, the sovereignty barrier is higher, undermining the reasonableness of personal jurisdiction"); *Rippey v. Smith*, 16 F. App'x 596, 599-600 (9th Cir. 2001)("The district court also correctly concluded that Great Britain has a strong interest in adjudicating a dispute involving British parties and concerning events that occurred in Britain. …We find the district court's analysis persuasive, and conclude that the potential for conflict with British sovereignty weighs heavily in favor of the defendants"); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132-34 (9th Cir. 2003) ("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist"); *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271-74 (9th Cir. 1981)("We do not minimize the sovereignty of the states within our federal system when we conclude that foreign nations present a higher sovereignty barrier than that between two states within our union. This is only a recognition of what is obvious. That the shipyard is in a foreign country is therefore a factor bearing negatively on the reasonableness of personal jurisdiction"); *Instasol, LLC v. EM Dig.*

*Ltd.,* 2018 U.S. Dist. LEXIS 136526, at *10-11 (W.D. Wash. Aug. 13, 2018)("Since EM Digital

is incorporated and registered in England and Perera is a Sri Lankan or English citizen and

resident, this Court's exercise of jurisdiction would necessarily conflict with those countries'

sovereignty"); *Perkumpulan Inv'r Crisis Ctr. Dressel - WBG v. Wong,* 2012 U.S. Dist. LEXIS

202548, at *19-23 (W.D. Wash. Apr. 6, 2012)("In line with *Asahi*, the Ninth Circuit has

cautioned that 'litigation against an alien defendant creates a higher jurisdictional barrier than

litigation against a citizen from a sister state because important sovereignty concerns

exist.' ...Such concerns are heightened where the defendant has no U.S.-based

relationships. ...Here, Mr. Ho is a Chinese national and a resident of Hong Kong with no

enduring connection to the United States. This factor therefore weighs in his favor as well").

In the present case, Defendants are a Hong Kong individual and a British Virgin Islands

corporation whose actions were undertaken entirely from within Hong Kong and Taiwan.

Accordingly, sovereignty issues strongly counsel against the exercise of personal jurisdiction.

### 4.   The Forum's Interest In Adjudicating the Dispute

Given that not a single party – not the Plaintiff and neither of the Defendants – are

actually citizens or even residents of the United States, the United States has little interest in the

present dispute. *See, e.g., Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 114

(1987)("Because the plaintiff is not a California resident, California's legitimate interests in the

dispute have considerably diminished"); *Rippey v. Smith,* 16 F. App'x 596, 599-600 (9th Cir.

2001)("California has a strong interest in providing redress for its citizens. ...As the district court

recognized, however, this interest is weaker where individuals ''seek their fortune away from

home'''); *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 852-53 (9th Cir.

1993)("Although the district court stated that 'it cannot be said that Washington State with its

extensive maritime trade does not have an interest in an allision between a shipping vessel and

an oil platform,' this interest is no greater or more specific than that of any port city around the world. *Asahi* cautions against such an overly broad definition of a state's interest. …Washington has no interest in this claim. The vessel involved in the accident was not sailing from Washington and carried no Washington cargo. Neither the accident nor the lawsuit's outcome has any effect on Washington or its residents. …The absence of a forum state interest weighs heavily against the reasonableness of Washington's assertion of jurisdiction"); *Perkumpulan Inv'r Crisis Ctr. Dressel - WBG v. Wong*, 2012 U.S. Dist. LEXIS 202548, at *19-23 (W.D. Wash. Apr. 6, 2012)("A forum has only a weak interest in a lawsuit when a nonresident sues in its courts"). Once again, then, this factor counsels against an exercise of personal jurisdiction over the Defendants.

### 5. <u>Most Efficient Judicial Resolution Of The Controversy</u>

The fifth factor "concerns the efficiency of the forum. In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located*." Core-Vent Corp., supra* at 1489. *See also Harris Rutsky & Co. Ins. Servs., supra* at 1133 ("To make this determination we focus on the location of the evidence and witnesses"); *Rippey, supra* at 599-600 ("The district court noted that all of the witnesses except Rippey, Rippey's attorney, and McClelland are in England, and that McClelland lives in Montana. The vast majority of relevant documents are located in England. Furthermore, all of the relevant events took place in England. In the interests of efficiency, this case should proceed in Great Britain"); *Perkumpulan, supra* at *21 ("This factor turns on the location of evidence and witnesses").

In the present case, the parties might be able to reasonably argue about whether Japan (where the Plaintiff is located), Hong Kong, Taiwan, or the British Virgin Islands (where the defendants are located) provides the most efficient forum from a judicial perspective. The one thing that is clear, however, is that the United States would be the *least* efficient jurisdiction of

16

the three: the parties are not located here; the witnesses are not located here; the evidence is not located here; and the vast majority of the harm (if any harm actually occurred) did not occur here. The fifth factor also counsels against an exercise of personal jurisdiction over the Defendants.

      6.    <u>Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief.</u>

      That the sixth factor also fails to favor the Plaintiff and points to how absurd Plaintiff's attempt to establish jurisdiction in the United States really is. Because the sixth factor almost invariably favors a plaintiff, "neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff." *Core-Vent Corp, supra* at 1490. Indeed, as the Ninth Circuit has noted, "No doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth v. Garcia Marquez,* 942 F.2d 617, 624 (9th Cir. 1991). *See also Amoco Egypt Oil Co., supra* at 853 ("Surprisingly, Amoco's interest in this litigation also suggests the unreasonableness of Washington jurisdiction. Both plaintiffs have all of their operations in Egypt; the accident on which the claim is based occurred in Egypt; and the bulk of the relevant evidence and witnesses are presumably located in Egypt. Amoco has no involvement with Washington and has given no clear statement of its interest in having the claim litigated there"); *Perkumpulan Inv'r Crisis Ctr. Dressel – WBG, supra* at *23 ("The Ninth Circuit has discounted this factor, holding that 'the plaintiff's convenience is not of paramount importance.' …Here, Plaintiff and its constituents are located in Indonesia, along with a significant portion of the evidence and witnesses. The Court cannot conclude that Washington would be a more convenient forum for Plaintiff").

      In the present case, there is no actual convenience to the Plaintiff in litigating in the United States (other than, perhaps, the improper goal of making litigation *less* convenient for the Defendants). The Plaintiff is a Japanese company headquartered in Tokyo. As noted previously,

1    all of the witnesses and evidence are to be found either in Japan, Taiwan, Hong Kong, or the

2    British Virgin Islands.  There is little question but that Plaintiff has no legitimate ability to claim

3    that litigating in the United States is somehow more convenient.  Accordingly, this factor also

4    weighs against an exercise of personal jurisdiction.

5          7.    Existence of an Alternative Forum

6          Finally, it is the *Plaintiff's* burden to show the absence of an alternative forum for the

7    resolution of the present case.  *See, e.g., Core-Vent Corp., supra* at 1490 ("The plaintiff bears the

8    burden of proving the unavailability of an alternative forum"); *Rippey, supra* at 600 ("The

9    plaintiff bears the burden of proving the unavailability of an alternative forum. ... Rippey has not

10   done so. Nor has Rippey shown that the case must proceed in California in order for him to

11   secure full relief. The inconvenience to the plaintiff of litigating in a foreign forum does not

12   carry great weight. These final factors weigh in the defendants' favor"); *Instasol, LLC v. EM Dig.*

13   *Ltd.,* 2018 U.S. Dist. LEXIS 136526, at *11-13 (W.D. Wash. Aug. 13, 2018)("Plaintiffs 'bear[]

14   the burden of proving the unavailability of an alternative forum.' …An alternative forum for

15   this action is England, where Perera and EM Digital reside and conduct business. …Plaintiff

16   does not specifically address the suitability of England as an alternative forum. ….) It simply

17   asserts that Washington is the most convenient forum, that litigating elsewhere would be

18   burdensome, and that 'there is no evidence another forum would be as effective.' …Therefore,

19   Plaintiff has not met its burden. This factor weights against personal jurisdiction"); *Harris*

20   *Rutsky & Co. Ins. Servs., supra at* 34 ("Finally, we must determine whether an adequate

21   alternative forum exists. The plaintiff bears the burden of proving the unavailability of an

22   alternative forum… and ASR has not met that burden here. British courts provide an obvious

23   alternative forum… This factor therefore favors B&C"); *Perkumpulan Inv'r Crisis Ctr., supra* at

24   *23 ("The plaintiff bears the burden of proving the unavailability of an alternative

forum. ...Plaintiff has made no attempt to show that either Indonesia or Hong Kong is unavailable here").

      In the present case, Plaintiff has made no showing – and can make no showing – that there is no other available forum in which it can litigate the present dispute.  At a minimum, Defendants are located in Hong Kong and the British Virgin Islands and Plaintiff has not shown why these two jurisdictions are unavailable forums within which to bring its claims.  As such, an alternative forum exists and an exercise of personal jurisdiction in the United States would be unreasonable.

## **CONCLUSION**

      For the reasons stated hereinabove, this Court should overrule Plaintiff's Objections, adopt the Magistrate's Report and Recommendations in its entirety, and dismiss the present case for a lack of personal jurisdiction.

**Respectfully submitted,**

/s/ Philip Mann
Philip P. Mann, Esq. (WSBA No. 28860)
Mann Law Group PLLC
403 Madison Ave. N, Ste. 240
Bainbridge Island, WA 98110
Tel: 206-463-0900
Email: phil@mannlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com


*Attorneys for Defendants*


Dated: December January 20, 2023

1

## <u>CERTIFICATE OF SERVICE</u>

2

3       I hereby certify on January 20, 2023, I served the foregoing document on counsel
of record through the ECF filing system.

4

5                                             /s/ Evan Fray-Witzer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24