The Honorable David G Estudillo

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### TACOMA DIVISION

| | |
|---|---|
| WILL CO. LTD. a limited liability company organized under the laws of Japan, Plaintiff, <br><br> vs. <br><br> KAM KEUNG FUNG, aka 馮 錦 強, aka FUNG KAM KEUNG, aka FUNG KAMKEUNG, aka KUENG FUNG, aka KEUNG KAM FUNG, aka KAM-KEUNG FUNG, aka KEVIN FUNG, an individual; FELLOW SHINE GROUP LIMITED, a foreign company, and DOES 1-20, d/b/a AVGLE.COM, | Case No. 3:20-cv-05666-DGE |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### Introduction

Different cases with different parties and different facts compel different results.  Despite this seemingly straightforward proposition, Plaintiff nonetheless continues to insist that the decision in a different case pending in this Court (*Will Co., Ltd. v.* Lee) should control here.  Nevertheless, when this Court asked Magistrate Christel's whether the decision in *Lee* altered his original recommendation in favor of dismissal, he held that it would not.  Because the magistrate determined that Plaintiff here failed to carry its burden on even the first of the three prongs of the jurisdictional test, however, he did not proceed to consider the final two prongs.  As the Defendants argued in their Response to Plaintiff's Objections to the Magistrate's Report and Recommendations, this Court can and should adopt the magistrate's recommendations not only because his reasoning was correct on the first prong of the analysis, but also for the independent

1  reason that an exercise of personal jurisdiction would not comport with fundamental fairness (the

2  third prong of the jurisdictional test).  This Court then asked the parties to provide supplemental

3  briefing on the fundamental fairness issue.  Plaintiff filed their supplemental memorandum and

4  Defendants respond herein.  So as not to repeat arguments previously made, Defendants

5  incorporate by reference their prior filings.

6  <u>**ARGUMENT**</u>

7  As discussed in Defendants' prior filings, in determining if an exercise of personal

8  jurisdiction comports with the Constitutional requirement of fundamental fairness, the Court

9  looks to seven factors.  *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487-88 (9th Cir.

10  1993)("In determining whether the exercise of jurisdiction over a nonresident defendant

11  comports with 'fair play and substantial justice,' [the court] must consider seven factors: (1) the

12  extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on

13  the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

14  defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

15  judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

16  convenient and effective relief; and (7) the existence of an alternative forum.").

17  And, although Plaintiff has attempted to cast doubt on Defendants' arguments with

18  respect to each of these factors, its arguments are built on shifting sands that collapse at the

19  slightest touch.

20  1.  <u>**The Extent of Interjection in the Forum**</u>

21  In their attempt to show that Defendants had interjected themselves into the forum,

22  Plaintiff first claims that the Avgle.com website specifically utilized Cloudflare's Content

23  Delivery Network ("CDN") services only for Asia and North America.  Plaintiff's Supplemental

24  Memoranda, p. 4.  Presumably, Plaintiff label this as "noteworthy" because it recognizes that the

use of a CDN *globally* would prove the opposite: that Defendants had *not* interjected themselves into any specific forum.  And, in the *present* case, the evidence before the Court supports precisely Defendants' assertion: that they utilized Cloudflare's CDN globally.  Because this point is so central to Plaintiff's argument, it is worth the time to examine closely the evidence before the Court.

On the one hand, Plaintiffs have provided sworn testimony stating not only that they did not limit their CDN use to Asia and the United States as alleged but that (as far as they are aware), it was not even *possible* for them to have done so.  *See* Declaration of Ming Chung Wu, D.E. 35-9, ¶¶4, 10-11 ("To the best of my knowledge, Cloudflare does not offer the option to make adjustments to CDN functionality on a country-specific basis"; "Not FSG, nor anyone on its behalf, has selected nor directed the location of Cloudflare's servers. …Even when FSG had a paid account with Cloudflare, FSG did not (and could not have) selectively enabled Cloudflare's CDN servers in specific countries as this was not an option provided by Cloudflare"); Declaration of Kam Keung Fung, D.E. 35-10, ¶¶3-5 ("To the best of my knowledge, Cloudflare does not offer the option to make adjustments to CDN functionality on a country-specific basis. I have not selected nor directed the location of Cloudflare's servers in respect to Avgle.com. Even when FSG had a paid account with Cloudflare, I did not on behalf of FSG, (nor could I have) selectively enabled Cloudflare's CDN servers in specific countries as this was not an option provided by Cloudflare.")  Instead, Mr. Fung – acting entirely from his workplace in Hong Kong – used Cloudflare's automated, online, self-service option to sign the website up for worldwide services.  *See* D.E. 23-2, ¶10; D.E. 23-3, ¶15 ("FSG uses Cloudflare's services for Avgle.com's worldwide use (the vast majority of which is related to users outside of the United States.)").  This could possibly serve as the Black's dictionary definition for ***non***-interjection in the forum.

3

On the other hand, it should first be noted that Plaintiff's contrary assertion does not actually appear anywhere in its complaint in this case. *See* D.E. 9, Plaintiff's Complaint. Additionally, despite this Court having allowed Plaintiff an opportunity to take discovery (something that did not occur in *Lee* and despite the fact that Plaintiff specifically sought and received discovery from Cloudflare, it has produced no evidence whatsoever from Cloudflare to substantiate its baseless assertion. Instead, Plaintiff's assertion is based entirely on assumptions made by Plaintiff's consultant, Jason Tucker, based on his interpretation of information derived from an unverified, now-defunct website. According to Tucker, he visited a random private (and now defunct) website called "What's My CDN," entered "AVGLE.com" into the search box on that website, and received the result shown as an Exhibit to his Declaration, D.E. 29, p. 64, which purports to show that the Avgle.com website utilized Cloudflare's CDN server in Asia and *North America* (which, of course, includes Mexico and Canada). There is no explanation as to how this now-defunct website gathered its information, what its accuracy rates were, or whether it even had the ability to check locations other than Asia and North America. (As noted in Defendants' earlier brief, online articles questioned the accuracy of the Whats My CDN website.) The bottom line, though, is that Tucker does not – and cannot – state how the data was gathered or vouch for its accuracy. In short, his declaration is based on his guesses and assumptions, not actual knowledge.[1] This is consistent with the findings of another federal judge, the Hon. Ursula Ungaro of the Southern District Of Florida, who rejected Mr. Tucker's proffered sworn testimony as being outside his area of expertise and without evidentiary support. *Hydentra HLP Int., Ltd. v. Luchian,* Case No. 1:15-cv-22134-UU, Doc. 138, Omnibus Order

---

[1] The Court should disregard Tucker's declaration in its entirety anyway given how demonstrably misleading it was concerning other conclusions and inferences Tucker drew that proved to be absolutely false. *See.* D.E. 35, pp. 3-8. This Court should consider, too, Tucker's attempts to threaten and extort Defendants when considering his credibility. *Id.* at pp. 7-8.

(June 2, 2016)("In this case, the testimony of Jason Tucker is plainly offered to support the broad claim that Defendants themselves uploaded some of the copyright videos onto their websites based upon his review of the 111 IP addresses. This proposition is an inference well beyond what witnesses perceive in their day-to-day lives; rather, it is a conclusion that would require "specialized knowledge," Fed. R. Civ. P. 701, and must be proved by an appropriately credentialed expert witness to be properly admitted. …Other than being in the 'business of legal adult entertainment production, marketing, and management,' and serving as a consultant for 'the rollout of several versions of Windows Media,' there are no credentials within the Declaration pertaining to Mr. Tucker's 'knowledge, skill, experience, training, or education,' …which would allow him to testify on these grounds. Mr. Tucker's anecdotal observations cannot support the sweeping claim for which they are being offered.")

Not to put too fine a point on it, but the weighing for the Court here is as between the sworn declarations of two people with actual knowledge of operation of the website and the declaration of a consultant who based his supposition on an unreliable defunct website, after previously providing this Court with misleading and flat-out wrong information drawn from other of his suppositions.  The choice seems an easy one to make.

Plaintiffs next argue that Defendants have interjected themselves into the United States because certain parts of the Avgle.com website are in English.  As Defendants noted, however, in their original Memorandum in Support of their Motion to Dismiss, English is also the primary language spoken in: England; the United Kingdom Canada, Australia, New Zealand, Ireland, Jamaica, Trinidad and Tobago, Guyana, The Bahamas, Belize, Grenada, Barbados, the United States Virgin Islands, the Channel Islands, Antigua and Barbuda, Dominica, Bermuda, Saint Vincent and the Grenadines, the Isle of Man, the Turks and Caicos Islands, Saint Kitts and Nevis, the Cayman Islands, Guam, Gibraltar, the British Virgin Islands, Anguilla, the Falkland

Islands, Montserrat, Saint Helena, Ascension and Tristan da Cunha, the British Indian Ocean

Territory, the Pitcairn Islands, and South Georgia and the South Sandwich Islands. *See* D.E. 23-

6, ¶6. This was a silly argument when Plaintiff made it three years ago and it has not improved

with age.

Plaintiff next makes what may be one of its most misleading statements to date (and

given Tucker's declaration that is a high bar to clear), using creative phrasing to suggest that

Defendants made $300,000 "in the United States," from ads placed on their website by the

Canadian ad broker, Tiger Media. Plaintiff compounds this with the suggestion that "at least

$100,000" of that money was paid "through United States based PayPal." Plaintiff's

Supplemental Memo, p. 5. The only support that Plaintiff provides for these assertions is, again,

the Tucker Declaration (¶¶62-68). ***Shockingly, despite Tucker claiming that his assertions***

***were based on the discovery provided by Tiger Media and PayPal, Tucker did not attach either***

***to his declaration, nor has Plaintiff ever provided the same to this Court. There is a reason***

***for that. The discovery received from Tiger Media does not support Plaintiff's assertion and***

***the discovery received from PayPal actively contradicts it.[2]*** The accounting provided by Tiger

Media is attached hereto as Exhibit 1. As the Court will see, the accounting does not in any way,

shape, or form support Plaintiff's assertion that *any* of the payments resulted from ads that Tiger

Media displayed on the Avgle.com website to viewers from the United States (who, again, make

up approximately 6% of the website's audience). It is simply a listing of amounts paid, period.

And, despite Plaintiff's clever wordsmithing to make it appear that Defendants were utilizing

PayPal US, the discovery produced by PayPal indicated that neither Defendant had a US-based

PayPal account, instructing Plaintiff that, if anything, Defendants might have accounts with

---

[2] Plaintiff's case should be dismissed if for no other reason than its repeated lack of candor
before the Court.

1  PayPal Europe and that "A request for any such records would need to be directed to PayPal

2  (Europe) S.à.r.l. et CIE, S.C.A. and served in accordance with the rules governing service on a

3  foreign entity"  PayPal's discovery responses are attached hereto as Exhibit 2.

4      Finally, Plaintiff falls back on its arguments concerning form language that Tiger Media

5  includes in each of *its* agreements, suggesting that Defendants interjected themselves into the

6  United States by entering into a contract with a Canadian company, an argument properly

7  rejected in this case by the magistrate.

8      Ultimately, it is obvious that Defendants' "interjection" into the United States is either

9  nonexistent or as close to nonexistent as it could possibly be.  Accordingly, the first factor favors

10 Defendants.

11      **2.      Burden on the Defendant in Defending in the Forum.**

12      Defendants are a British Virgin Islands corporation and a Hong Kong based individual;

13 with no connections to the United States.  The Defendants have never had offices, agents, nor

14 employees in the United States; and the logistical difficulties in litigating this case here are

15 evident – none of the parties are located in the United States; none of the witnesses would be

16 located here; none of the exhibits are here; and Mr. Fung does not even hold a visa that would

17 allow him to travel to the United States.

18      In its Supplemental Memo, Plaintiff argues that – particularly in the wake of the

19 COVID pandemic – this Court has become adept at utilizing online resources to conduct

20 hearings and even trials.  According to Plaintiff, "there literally is not one aspect of litigation

21 that cannot be handled via electronic transmissions…"  Supplemental Memo, p. 7.

22      It is worth articulating explicitly what Plaintiff hints at in its Supplemental Memo:

23 Plaintiff argues that this Court should declare the extensive precedent of the Ninth Circuit, this

24 Court, and other Courts within this circuit (all of which have emphasized the importance of this

7

factor) to be swept aside because – in Plaintiff's view – any litigation can be conducted anywhere in the world.  Plaintiff is urging that this Court, on its own accord, overrule all existing precedent and declare the second factor of the Ninth Circuit's test to be dead law. Certainly, if the Ninth Circuit believed this to be true, it had ample opportunity over the last three years to declare a new "six factor" test and yet it has not chosen to do so.  Indeed, the present case in which not a single party to this litigation is located within the United States (and all of the parties are located in Asia), seems to be a particularly poor vehicle for such a wholesale revision of Ninth Circuit precedent.  This factor also favors Defendants.

### 3.    The Extent of Conflict With the Sovereignty of the Defendants' State

In their Response to the Objections to the Magistrate's Report and Recommendation, Defendants cited to extensive caselaw standing for the oft-repeated proposition that "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *See, e.g., Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987).  Plaintiff does not dispute this assertion, but responds that sovereignty concerns are less significant when the Defendants have significant connections to the United States.  And, while this statement is correct, it does not advance Plaintiff's argument.  Plaintiff simply falls back on the (discredited and unsupported) assertions it made in connection with the first prong of the test to support the notion that Defendants have significant connections to the United States.  As Defendants have shown, though, those assertions are without merit and are contradicted by the evidence before the Court.  Accordingly, this factor also continues to favor Defendants.

### 4.    The Forum's Interest In Adjudicating the Dispute

Plaintiff fails to counter Defendants' argument that the forum has little interest in adjudicating the present dispute.  As the numerous cases cited in Defendants' Response to the

Objections indicate, a forum has only minimal interests in adjudicating disputes where the Plaintiff is not itself a resident of the forum.  This is not to say that the United States has *no* interest at all in a dispute involving U.S. copyrights, but such interests are minimal where: the plaintiff is a foreign corporation; the defendants are a foreign corporation and a foreign individual; and any actions taken by the defendants were taken in Hong Kong.

**5.**      **Most Efficient Judicial Resolution Of The Controversy**

Plaintiff admits in their Supplemental Memo both that this factor looks primarily at where the witnesses and evidence are likely to be located and that most of the potential witnesses are located outside of the United States. Nevertheless, Plaintiff contends that ***any*** jurisdiction in the world would have its problems since the witnesses and evidence are not all located in a single country.  This argument misses the point.  Plaintiff claims that it has potential witnesses in Japan and Mexico.  Plaintiff also notes that there are potentially third party documents located in the United States.  But the question to be considered is not whether there is a jurisdiction that holds *all* of the witnesses and evidence; the question to be considered in this factor is whether the United States is the *most* efficient jurisdiction.  Indisputably, it is not.  Every action that Defendants took in connection with the website, they undertook from Hong Kong.  Every document in Defendants' possession, is located in Hong Kong.  Of the possible jurisdictions where Defendants might be subject to personal jurisdiction, there is no question but that jurisdiction lies in Hong Kong.  All told, then, the most efficient jurisdiction is clearly Hong Kong (a jurisdiction which, incidentally, is much closer to Plaintiff's headquarter in Tokyo than this court).

### 6.     Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief.

Preliminarily "the Ninth Circuit has discounted this factor, holding that 'the plaintiff's convenience is not of paramount importance.'"  "*Perkumpulan Inv'r Crisis Ctr. Dressel – WBG, supra* at \*23.  Putting that aside, however, the Plaintiff provides no reason why the United States provides Plaintiff – a Japanese company headquartered in Tokyo – more convenient and effective relief than would the Courts of, say, Hong Kong (or Japan for that matter).  Instead, Plaintiff does no more than make conclusory statements that the United States is "crucial" to Plaintiff because, it argues, United States Courts will be better at applying U.S. Copyright law.  But this ignores the simple fact that – just as U.S. Courts routinely apply foreign law where appropriate – foreign courts can and do apply U.S. law when appropriate.  Simply repeating the word "crucial" does not actually mean that the Plaintiff has a legitimate argument as to why the United States would provide it the most convenient and effective relief, it simply reflects the Plaintiff's desire to litigate in the United States.  As the cases cited in Defendants' Opposition to Plaintiff's Objections make clear, such a desire does not satisfy this factor.

### 7.     Existence of an Alternative Forum

Finally, it is the *Plaintiff's* burden to show the absence of an alternative forum for the resolution of the present case.  And, although Plaintiff admits that Japan, Hong Kong, and the British Virgin Islands are all possible alternative forums, it then asserts, without a shred of evidence in support, that none of these jurisdictions can adjudicate Plaintiff's claims because Plaintiff alleges that the alleged infringement took place in the United States (even though Defendants servers are not even located in the United States).  Such unsupported assertions do not meet Plaintiff's burden.  Defendants are located in Hong Kong and the British Virgin Islands, are amenable to service of process in Hong Kong, ran the website from Hong Kong,

made all of the relevant decisions in Hong Kong, and effectuated all acts in connection with the website from Hong Kong.  Clearly, an alternative forum exists.

## **CONCLUSION**

For the reasons stated hereinabove, this Court should overrule Plaintiff's Objections, adopt the Magistrate's Report and Recommendations in its entirety, and dismiss the present case for a lack of personal jurisdiction.

**Respectfully submitted,**

/s/ Philip Mann
Philip P. Mann, Esq. (WSBA No. 28860)
Mann Law Group PLLC
403 Madison Ave. N, Ste. 240
Bainbridge Island, WA 98110
Tel: 206-463-0900
Email: phil@mannlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Defendants*

Dated: December April 21, 2023

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify on April 21, 2023, I served the foregoing document on counsel of

record through the ECF filing system.

4

5                                    /s/ Evan Fray-Witzer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24